# Exhibit A

NJ531995

# HOMEOWNER OPTION AGREEMENT

**Summary:** This option agreement first sets forth Unison's obligation to pay you a lump sum. The agreement then provides that in exchange for that payment, Unison receives an option. The option would allow Unison, at a future date, to purchase a percentage interest in your property by paying you an additional (and greater) amount of money.

On that future date, the value of Unison's option will depend on what your property is worth. If your property's value rises between now and then, the option's value will increase as well, and vice versa. As a result, the value of Unison's option could turn out to be greater than, equal to, or less than what Unison is paying you today, or even zero.

(Note: The wording of this summary is not itself a part of any agreement.)

Unison HomeOwner Agreement ID Number: FRX-231163

# HOMEOWNER OPTION AGREEMENT

## 1. Terms

1.1. This HomeOwner Option Agreement ("Option Agreement") is made between David Santaniello AND Rosanne D. Santaniello ("you") and Unison Agreement Corp., a Delaware corporation, and its successors and assigns ("Investor").

1.2. This Option Agreement is made together with and incorporates: (1) the HomeOwner Covenant Agreement (the "Covenant"); (2) the HomeOwner Security Instrument (the "Security Instrument"); and (3) the HomeOwner Recorded Memorandum (the "Recorded Memorandum"). Together these documents are called the HomeOwner Agreement or the Agreement.

1.3. The meanings of several key, defined terms used in this Option Agreement appear in the following chart. The meaning of every defined term used here or in any of the other contracts making up the HomeOwner Agreement may be found in Schedule A to the Covenant.

| | |
|---|---|
| **Effective Date** | November 6, 2019 |
| **Property**<br>As further described in Exhibit A | 4 Footes Ln, Morristown, NJ, 07960 |
| **Term** | 30 years |
| **Expiration Date** | October 26, 2049 |
| **Original Agreed Value** | $1,000,000.00 |
| **Initial Payment** | $175,000.00 |
| **Balance Payment*** | $525,000.00<br>* The Balance Payment may be subject to adjustment as described in the Covenant. |
| **Investor Percentage** | 70.00 % |
| **Maximum Authorized Debt** | $700,000.00 |



© 2019, Unison 

**2. Initial Payment by Investor**

2.1. On the Effective Date, Investor agrees to provide you the amount of $175,000.00. This amount is called the "Initial Payment."

**3. Granting of Option**

3.1. You hereby grant to Investor an option (the "Option") to purchase, in the future, an undivided 70.00 % interest in and to the Property for an additional dollar amount, equal to $525,000.00, as further described in the Covenant.

3.1.1. That percentage figure is called the "Investor Percentage."

3.1.2. The additional dollar amount required to exercise the Option is called the "Balance Payment," and may be reduced by what the Covenant calls "Unpaid Owner Obligations."

3.2. You are granting the Option in consideration of (1) Investor providing the Initial Payment; (2) Investor's express waiver of all rights to exercise the Option until the occurrence of an Exercise Event; (3) other Investor obligations under the HomeOwner Agreement; and (4) your other rights and benefits under the HomeOwner Agreement.

**4. Term of Option**

4.1. The "Term" of the Option is 30 years. The Term begins on the Effective Date and expires on the Expiration Date, subject to extension under limited circumstances as set forth in the Covenant.

**5. Property Valuation**

5.1. You and Investor agree that the value of the Property as of the Effective Date is $1,000,000.00. This value is called the "Original Agreed Value."

5.2. You agree that the future value of the Property, when calculated at any time during the Term, will be determined according to the Covenant. The Covenant will call this future value the "Ending Agreed Value."

**6. Option Exercise Events**

6.1. Investor may exercise its Option to purchase its undivided percentage interest in the Property in the following four circumstances, called "Exercise Events," as further described in the Covenant:

A. A sale of the Property by you;

B. The end of the Term, which is the day of the Expiration Date;

C. The death of what the Covenant calls the "Last Surviving Signatory" of the HomeOwner Agreement. (When referencing this Exercise Event, the word "you" includes what the Covenant calls the "Your Estate."); and

D. A material "Event of Default" by you do not cure.



© 2019, Unison 

These four Exercise are listed above as "A" through "D" because the first Exercise Event is further defined at Section "5.A" of the Covenant, the second at Section "5.B" of the Covenant, and so on.

6.2. Unless you buy out and thus terminate Investor's right to exercise the Option as described in the next Section (Section 7), then:

6.2.1. In the case of the Exercise Event listed above as "B" (exercise at Term), you and Investor, as co-owners of the Property, will promptly market and sell the Property in order to liquidate each's respective percentage interests; and

6.2.2. In the case of the Exercise Event listed above as "C" (death of Last Surviving Signatory), Your Estate and Investor, as co-owners of the Property, will promptly market and sell the Property for the same purpose.

**7. Buy-Out Upon Exercise Event**

7.1. Upon the occurrence of an Exercise Event (other than an Event of Default), you may buy out, and thus terminate, Investor's right to exercise the Option, as further described in the Covenant. You may do so by paying Investor a dollar amount representing its interest in the Property. That dollar amount is called the "Investor Interest."

7.2. The Investor Interest is calculated first by multiplying the Ending Agreed Value by the Investor Percentage; then subtracting the Balance Payment; then adding any Unpaid Owner Obligations.

7.3. Upon acceptance of the Investor Interest from you, Investor will release you from your obligations under the HomeOwner Agreement.

**8. Special Termination by You After Three Years**

8.1. At any time following the third anniversary of the Effective Date but prior to the occurrence of any Exercise Event, you may request a "Special Termination" of the Option pursuant to Section 6 of the Covenant, by payment of an amount called the "Special Termination Price." That Special Termination Price is equal to the greater of (a) the Investor Interest (defined in Section 7 above), or (b) the sum of the Initial Payment and any Unpaid Owner Obligations.

**9. Maximum Authorized Debt**

9.1. The sum total of loans from third parties secured by liens on the Property (including any unused portion of any line of credit) that you may incur at any one time during the Term of the HomeOwner Agreement is $700,000.00. This amount is called the "Maximum Authorized Debt."

**10. Lien on the Property**

10.1. Your performance under the HomeOwner Agreement will be secured as a recorded lien on the Property by recording both the Security Instrument and the Recorded Memorandum in the county or local jurisdiction where the Property is located.

**11. Event of Default**



© 2019, Unison

11.1. If there is a material and uncured Event of Default by you regarding any terms of the HomeOwner Agreement, then Investor will have the right to demand your performance of those terms, and will be entitled to exercise any of its other rights and remedies set forth in the Agreement and provided for under applicable law.

**12. Nature of Option and Initial Payment**

12.1. The Initial Payment is not a loan to you or indebtedness to Investor, nor is it a principal amount which Investor is entitled to recover at any time. Thus, you will not among other things make any monthly interest or any other periodic payments to Investor based upon the amount of the Initial Payment.

**13. Notice Addresses**

Notice shall be effective when made in writing to the addresses below:

Notice to You:

4 Footes Ln
Morristown, NJ 07960

973-998-5280
davesantaniello1@gmail.com

Notice to Investor:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800
Attn: Asset Administration

During the term, you and Investor will each provide the other with prompt notice regarding any changes to the notice addresses above. Notice to you shall also be effective when delivered to any other individual whom you have designated in writing to Investor as authorized to receive notices under this Agreement. In the case of notice by Investor to you of an Exercise Event, notice must be made both by certified mail and (when provided) by e-mail.

[***Signature Page Follows***]



© 2019, Unison

IN WITNESS, WHEREOF, intending to be legally bound, each of you have executed this **HomeOwner Option Agreement**.

| | |
|---|---|
| **Owner:** | **Co-Owner:** |
| Sign: D Santaniello | Sign: Rosanne D Santaniello |
| David Santaniello | Rosanne D. Santaniello |
| Date: 11/9/19 | Date: 11/9/19 |
| Sign:__________ | Sign:__________ |
| Date:__________ | Date:__________ |
| Sign:__________ | Sign:__________ |
| Date:__________ | Date:__________ |



© 2019, Unison

**Exhibit A**

**PROPERTY DESCRIPTION**

That certain real property situated in the City of Morristown, County of Morris, State of NJ, described as follows:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Morris, County of Morris, State of New Jersey:

BEGINNING at a point in the southeasterly sideline of Foote's Lane where the same is intersected by the division line between lands herein described and lands shown on "Final Plat of Foote's Lane, Subdivision of Block 341, Lots 95 thru 120" filed in the Morris County Clerk's Office on September 11, 1981, as Map No. 4023, said point being distant 333.40 feet measured northwesterly along said sideline from the new sideline of James Street, 33.00 feet from centerline, extended and running; thence

1. Along the sideline of Foote's Lane, south 44 degrees 06 minutes 10 seconds east 142.20 feet to a point; thence
2. Along land, now or formerly of Morgan, being Lot 57.02 shown on "Minor Subdivision of Lands" prepared for Stephen and Diane Morgan by Richard F. Smith, Jr., P.L.S. dated June 28, 1990, south 38 degrees 27 minutes 20 seconds west 338.01 feet to a point in the line of Lot 57.01 as shown. On said map; thence
3. Along lot 57.01, north 48 degrees 05 minutes 36 seconds west 141.26 feet to a point in the aforementioned line of lands shown on "Final Plat of Foote's Lane Subdivision", thence
4. Along said line, north 38 degrees 27 minutes 20 seconds east 347.92 feet to a point in the aforementioned sideline of Foote's Lane and the point of BEGINNING.

FURTHER BOUNDED AND DESCRIBED IN ACCORDANCE WITH A SURVEY MADE BY D. P. SWEENEY & ASSOC., INC. dated 7-19-06 AS FOLLOWS:
BEGINNING At a point on the southwesterly sideline of Footes Lane (50 feet wide), said point being distant southeasterly 217.58 feet from the intersection of said sideline with the southeasterly sideline of Trent Court (50 feet wide), if both were extended and running, thence:

1. Along Footes Lane, south 44 degrees 03 minutes 30 seconds east a distance of 142.20 feet to a capped pin, thence;
2. Leaving Footes Lane, south 38 degrees 30 minutes 00 seconds west a distance of 338.01 feet to a point, thence;
3. North 48 degrees 02 minutes 56 seconds west a distance of 141.26 feet to a point, thence;
4. North 38 degrees 30 minutes 00 seconds east a distance of 347.92 feet to the point and place of BEGINNING.

APN: 6302-3

[End of legal description]

# HOMEOWNER COVENANT AGREEMENT

**Summary:** This covenant agreement sets forth your and Unison's rights and responsibilities under the HomeOwner Agreement. It requires, for example, that you maintain the condition of the property, make mortgage and property tax payments on time, maintain property insurance and keep the property free of liens not approved by Unison.

This agreement also further describes how and under what circumstances Unison can exercise its option or otherwise act to protect the property. In addition, the agreement describes how the HomeOwner Agreement may terminate under other your circumstances.

(Note: The wording of this summary is not itself a part of any agreement.)

HomeOwner Agreement ID Number: FRX-231163

## TABLE OF CONTENTS


| **Section** | | **Page** |
|---|---|---|
| 1 | Intent of Agreement | 1 |
| 2 | Owner's Representations | 1 |
| 3 | Occupancy and Use of Property | 2 |
| 4 | Option Exercise Events | 3 |
| | 4.A Permitted Sale of Property | 3 |
| | 4.B End of the Term | 5 |
| | 4.C Death of the Last Surviving Signatory | 6 |
| | 4.D Material and Uncured Event of Default | 7 |
| 5 | Special Termination by You | 8 |
| 6 | Voluntary Release by Investor | 9 |
| 7 | Investor Rights and Remedies | 9 |
| 8 | Maintenance and Inspection of Property | 10 |
| 9 | Possible Adjustments to Value | 10 |
| | 9.A Remodeling Adjustment | 10 |
| | 9.B Deferred Maintenance Adjustment | 12 |
| 10 | Appraisal and Appraisal Expenses | 12 |
| 11 | Debt Limits, Property Obligations and Loans | 13 |
| 12 | Taxes and Assessments | 14 |
| 13 | Protective Advances | 14 |
| 14 | Insurance Coverage | 15 |
| 15 | Distribution of Insurance Proceeds for Losses | 16 |
| 16 | Condemnation of Property | 17 |
| 17 | Multiple Owners | 17 |
| 18 | Revocable Trusts | 17 |
| 19 | Miscellaneous Provisions | 18 |
| 20 | Arbitration | 20 |

## 1 Intent of Agreement

1.1 This HomeOwner Covenant Agreement ("Covenant") is made between David Santaniello AND Rosanne D. Santaniello ("you") and Unison Agreement Corp., a Delaware corporation, and its successors and assigns ("Investor").

1.2 The Effective Date of this Agreement is November 6, 2019.

1.3 This Covenant is made together with and incorporates: (1) the HomeOwner Option Agreement ("Option Agreement"); (2) the HomeOwner Security Instrument ("Security Instrument"); and (3) the HomeOwner Recorded Memorandum ("Recorded Memorandum"). The term HomeOwner Agreement or Agreement encompasses all four of these documents.

1.4 All defined terms used in this Covenant and elsewhere in the HomeOwner Agreement are capitalized. Further, for ease of reference, Schedule A to this Covenant provides an alphabetized index displaying where you may find the meaning of every defined term.

1.5 This Covenant sets forth the representations, warranties, duties and covenants of you and Investor during the Term of the Option and whenever reasonable or necessary to protect the rights of the parties.

## 2 Owner's Representations

2.1 Good and Marketable Title. As of the Effective Date, all of you, individually and collectively, will appear on the record title to the Property as holding fee simple title to one hundred percent (100%) of the Property; you will have good and marketable title to the Property, which will be free of any license, easement, or other encumbrance or restriction against the title to the Property, other than Permitted Encumbrances and Approved Existing Loans, which are defined in the bullets below.

- "Permitted Encumbrance" means all licenses, easements, or other title restrictions to the Property that exist as of the Effective Date, and are listed in the property report obtained by the mortgage lender in connection with the Property Purchase, plus any additional licenses, easements or title restrictions agreed to in writing by Investor after the Effective Date.
- "Approved Existing Loan" means any loan secured by the Property which originated simultaneously with the HomeOwner Agreement or was approved in writing by Investor as of the Effective Date.

2.2 You are one or more individuals with the legal power and full capacity to enter into and to consummate all transactions contemplated by the HomeOwner Agreement. If the Property is to be held in a revocable trust, revocable living trust, *inter vivos* trust, revocable family trust or similar trust established in accordance with the laws of any state ("Revocable Trust"), then you have executed and delivered to Investor the "Revocable Trust Rider" (a rider to the Security Instrument), warranting the identical legal power, right and authority of the trustee(s) and trustor(s).

2.3 You warrant that there is no litigation or other dispute, pending or threatened, against you or the Property that might adversely affect the value of the Property or your ability to perform your obligations under the HomeOwner Agreement.

2.4 You acknowledge that the HomeOwner Agreement is not offered by Investor as a source of short-term funding or for the funding of investment in residential real estate with the intention of near-term resale of a property, or for trading or price speculation in home prices by real



© 2019, Unison 

property dealers, traders, re-sellers, or otherwise, and instead is offered for the purchase of a residence in an arm's-length, fair market transaction with home buyers who intend to occupy their property for at least 3 years from the Effective Date. Your intent is consistent with this purpose.

2.5 You warrant that the use and occupancy of the Property are fully compliant with all state, federal and local laws, zoning ordinances, and regulations, including environmental prohibitions.

2.6 You warrant there are no material defects or conditions on or affecting the Property or title to the Property undisclosed to Investor which are now known to or could reasonably have been discovered by you, which could affect the use or value of the Property. You acknowledge that evidence of misrepresentation or non-disclosure as to the condition of the Property by you raises a presumption of bad faith and a breach of the HomeOwner Agreement.

2.7 You understand that granting Investor the Option and entering into the HomeOwner Agreement can have significant tax, financial and estate planning consequences. You acknowledge that Investor has urged you to discuss the Agreement with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the Agreement with respect to your particular situation. You are not relying on any information or representation by Investor, its agents, affiliates, officers, or employees regarding: (a) the value of the Property; and (b) the advisability of you purchasing the Property or entering into the HomeOwner Agreement, including but not limited to tax, legal, financial, and estate planning consequences. You warrant you have had the opportunity to seek independent advice regarding such matters.

2.8 With respect to any residents who do or will occupy the Property but who are not signatories to the Agreement ("Non-Owner Occupants"), you and they have executed Exhibit B to this Covenant, which is referred to here as the "Non-Owner Occupant Disclosure and Acknowledgment."

2.9 You have promptly delivered to Investor all reports, disclosures, inspections, estimates and other documents provided to you in connection with the initial purchase of the Property with Investor's payment to you of the Initial Payment (the "Property Purchase"), which pertain to conditions on or affecting the Property or which might otherwise affect the value of the Property. All documentation and information you have provided to Investor fairly and accurately reflects your financial condition and is truthful, complete, and not misleading. All such documentation and information regarding the condition of the Property also is truthful, complete and not misleading to the best of your knowledge.

2.10 You warrant that there has been no material change in your financial condition since your application to Investor.

2.11 You warrant you have a continuing obligation to comply with the representations made in this Section 2 and to notify Investor during the Term if any representation you have made ceases to be materially accurate or true.

**3 Occupancy and Use of Property**

3.1 You will enjoy sole right of occupancy of the Property under the HomeOwner Agreement as an owner and not as a tenant or lessee, whether or not Investor has exercised the Option, subject to limited Investor rights of entry and repair following an Event Of Default.



© 2019, Unison

3.2 You will occupy the Property as your principal residence throughout the Term, unless otherwise agreed to by Investor in writing. Occupying the Property as your principal residence means that you live and sleep sleeping in the Property for no less than 180 days out of any 365-day period. Investor will not unreasonably withhold consent to a temporary lapse in occupancy if you make arrangements satisfactory to Investor to care for the Property while you are gone.

3.3 You will not (i) use the Property in any way other than as a residential property; (ii) permit the use of the Property for any commercial use, except for a "home office" in compliance with applicable U.S. tax regulations; or (iii) rent all of the Property except with Investor's express written consent.

3.4 You may rent part of the Property without Investor's express written consent. In any termination of the HomeOwner Agreement where Investor determines that an existing rental agreement or tenant who is occupying or has rights to occupy the Property is having a negative impact on the Investor Interest, you, at your expense, will be responsible for terminating such rental agreement or removing such tenant from the Property, or otherwise for compensating Investor for the diminution of the Investor Interest.

## 4 Option Exercise Events

### 4.A Permitted Sale of Property

4.A.1 At any time, you may sell the Property through a "Permitted Sale" (defined below in this Section 4.A). At the time of a Permitted Sale, Investor may exercise its Option to purchase an undivided percentage interest in the Property.

4.A.2 As an alternative to Investor exercising its Option at the time of a Permitted Sale, you may elect to terminate the Option and settle the HomeOwner Agreement by tendering to Investor, through escrow for the Permitted Sale, the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder for the Permitted Sale to effect a full release of the Agreement.

4.A.3 A Permitted Sale means a sale or transfer of the Property to a third-party buyer that adheres to the following requirements or that is otherwise consented to in writing by Investor:

4.A.3.1 You notify Investor in writing of your decision to market, sell or transfer the Property, at least 45 days prior to the proposed closing of such sale or transfer.

4.A.3.2 You timely provide Investor with copies of: inspection report(s), listing agreements, staging agreements, preliminary title reports, preliminary escrow instructions, all offers to purchase the Property, Appraisals, escrow instructions, pest reports, and any other documents relating to the proposed sale or transfer of the Property.

4.A.3.3 If the third-party buyer does not obtain a standard pest report and standard contractor's inspection report in connection with the Property, you must obtain such reports (or, alternatively, Investor may obtain such reports at your expense), and deliver these to Investor at least 14 days prior to the proposed closing of the sale. These reports will be used by Investor to review the terms of the sale and, along with other



© 2019, Unison

reports deemed necessary by Investor, for Investor's determination of a Deferred Maintenance Adjustment, if any.

4.A.3.4 The sale is consummated through an appropriate real property escrow account using the services of an escrow holder.

4.A.3.5 Investor has the right to independently appraise the Property before the closing of the sale or transfer.

4.A.3.6 The closing date is scheduled so as to allow Investor sufficient time to: (i) obtain Appraisal(s); and (ii) review relevant documents for a Remodeling Adjustment or Deferred Maintenance Adjustment, if any.

4.A.3.7 The sale or transfer is at arm's length, made on commercially reasonable terms and entered into in good faith.

4.A.3.8 In your sole responsibility, you convey title free and clear of any liens, and satisfy any loans and other obligations secured by liens, including senior liens, on the Property.

4.A.3.9 The sale or transfer does not convey title "subject to" the lien created by the HomeOwner Agreement or any other existing lien or payment obligation on the Property.

4.A.4 If you do not choose to terminate the Option and settle the HomeOwner Agreement, then in furtherance of Investor's exercise of its Option:

4.A.4.1 Investor will deliver to you and to escrow holder a calculation of the Investor Interest, including a statement of any "Unpaid Owner Obligations" (defined in Section 13.8) affecting that calculation.

4.A.4.2 You will deed Investor its percentage interest in the Property through escrow for the Permitted Sale;

4.A.4.3 You and Investor, as co-owners of the Property, will deed the Property to the third-party buyer through escrow; and

4.A.4.4 The escrow holder will close the Permitted Sale, transfer title to the third-party buyer, and liquidate Investor's and your respective percentage interests in the Property.

4.A.5 You will pay all costs in connection with the Permitted Sale of the Property, or in connection with Investor's Option exercise that is followed by a Permitted Sale, in order to liquidate Investor's percentage interest, including "Closing Costs" (defined in the next sentence), but not any closing costs owed by the third-party buyer. "Closing Costs" means costs in connection with any sale of the Property, or in connection with any exercise by Investor of the Option exercise that is followed by a sale of the Property, including, without limitation, recording fees and costs, reconveyance fees, escrow fees, title insurance fees, federal, state, local and documentary transfer taxes and sales commissions.

4.A.6 In the event that there are insufficient amounts in escrow to release all liens senior to Investor's lien, to settle the Investor Interest, and to satisfy Closing Costs and any



© 2019, Unison

other expenses required in order to deliver clear title to the Property, you will be solely responsible for covering any shortfall.

4.A.7 If the closing date scheduled for a Permitted Sale falls after the Expiration Date, the Term and the Expiration Date will automatically extend for such reasonable period of time as will permit the closing of such Permitted Sale.

4.A.8 In any proposed sale or transfer by you where Investor determines that the proposed sale price differs materially from the then-estimated market value of the Property or an Appraised Value, including in any:

- "Sale-By-Owner Transaction," which means a sale of the Property conducted either without a public listing of it on the open market, or where the terms and conditions of the sale have been principally negotiated by you without agency representation, or
- "Intrafamily Transaction," which means a purchase, sale or transfer of the Prop proposed between you and any of your family members by blood or marital relation,

Investor will have the right to take any or all of the following actions: (i) to make an offer in writing to purchase the Property from you on the same terms and conditions as the proposed offer from the other buyer and, if such offer is rejected by you, to obtain a written affidavit under oath from you stating the reasons for the rejection; (ii) to require you and any third-party buyer to execute an affidavit under oath attesting that the relationship between you and the third-party buyer is at arm's length and that the proposed transaction is at a fair market price; and (iii) to require that one or more Appraisals of the Property be conducted in order for the Property value to be established.

4.A.9 Any attempted sale or transfer of the Property that does not comply with the Permitted Sale requirements is an Event of Default and is deemed to imminently prejudice Investor's rights hereunder.

4.A.10 Investor will not be liable to you for any loss relating to any delay or postponement of the closing of a sale resulting from Investor's reasonable inquiries and actions.

**4.B End of the Term**

4.B.1 Investor may exercise its Option to purchase an undivided percentage interest in the Property at the end of the Term, which is the day of the Expiration Date.

4.B.2 Investor will open escrow with an escrow holder selected by Investor at least 90 days but no more than 150 days before the Expiration Date.

4.B.3 Investor and you will conduct a home inspection and Appraisal, at your expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

4.B.4 Investor will deliver to you and to escrow holder a calculation of the Balance Payment, a statement of your "Unpaid Owner Obligations," if any, and a calculation of the Investor Interest.

4.B.5 Investor may exercise the Option on the Expiration Date. You, however, may elect to terminate the Option and settle the HomeOwner Agreement by tendering to



© 2019, Unison

Investor, through escrow, the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the Agreement.

4.B.6 If you do not terminate the Option and settle the HomeOwner Agreement, Investor may exercise its Option and purchase an undivided percentage interest in the Property, and you will deed Investor its percentage interest in the Property; whereupon you and Investor, as co-owners of the Property, will promptly market and sell the Property in order to liquidate your respective percentage interests, and the Term and the Expiration Date will automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

4.B.7 You will pay all Closing Costs owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by the third-party buyer.

4.B.8 You may sell the Property in a Permitted Sale prior to the close of escrow under this Section 4 provided that such sale closes at least five business days prior to the Expiration Date.

**4.C Death of the Last Surviving Signatory**

4.C.1 Investor may exercise its Option to purchase an undivided percentage interest in the Property at the death of the Last Surviving Signatory. "Last Surviving Signatory" means the last surviving individual who appears as a signatory to the HomeOwner Agreement or any mutually executed written addendum thereto.

4.C.2 Investor has the right to exercise the Option and purchase an undivided percentage interest in the Property as of the death of the Last Surviving Signatory.

4.C.3 You must at all times during the Term, have designated at least one living individual out of your administrators, heirs, or representatives to represent your estate. Your estate will notify Investor immediately in writing of the death of the Last Surviving Signatory.

4.C.4 Upon Investor's receipt of notice of the death of the Last Surviving Signatory, Investor will open escrow with an escrow holder selected by Investor. The closing date selected may be no earlier than 180 days following the date of death of the Last Surviving Signatory unless agreed to by your estate in writing. If Investor determines that your estate has commenced good faith efforts to sell the Property in a Permitted Sale within the 180-day period following the date of death, Investor may extend the closing date for a maximum of two consecutive 90-day periods beyond the 180-day period from death of the Last Surviving Signatory to permit your estate to accomplish the Permitted Sale

4.C.5 Investor and your estate will conduct a home inspection and Appraisal, at your estate's expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

4.C.6 Investor will deliver to your estate and to escrow holder a calculation of the Balance Payment, a statement of your Unpaid Owner Obligations, if any, and a calculation of the Investor Interest.



© 2019, Unison

4.C.7 Investor may exercise the Option. Your estate, however, may elect to terminate the Option and settle the HomeOwner Agreement by tendering to Investor the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the Agreement.

4.C.8 If your estate does not terminate the Option and settle the HomeOwner Agreement, Investor may exercise its Option and purchase an undivided percentage interest in the Property, and your estate will deed Investor its percentage interest in the Property. Then Investor and your estate, as co-owners of the Property, will promptly market and sell the Property in order to liquidate their respective percentage interests, and the Term will automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

4.C.9 Your estate will pay all Closing Costs owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by the third-party buyer.

4.C.10 Your estate will administer and protect the Property to preserve Investor's rights following the death of the Last Surviving Signatory, and Investor's rights in the Property under the HomeOwner Agreement will have priority over expenditures by your estate which are not reasonably necessary to administer and protect the Property.

4.C.11 Your estate may sell the Property in a Permitted Sale within the time period described in Section 4.C.4 above.

4.C.12 All time periods specified in this Section 4.C will run from the actual date of the death of the Last Surviving Signatory. Failure of your estate or any other individual or entity to notify Investor of the death of the Last Surviving Signatory will not toll or suspend the running of the time periods.

**4.D Material and Uncured Event of Default**

4.D.1 Investor may exercise its Option to purchase an undivided percentage interest upon the occurrence of a material, uncured Event of Default by you.

4.D.2 The occurrence of any of the following will constitute an "Event of Default."

4.D.2.1 Failure to Perform. You fail to perform in accordance with any provision of the HomeOwner Agreement, or you take any action to impede the exercise of the Option or infringe on Investor's rights.

4.D.2.2 Misrepresentation. You make any representation to Investor that is false or misleading, including with respect to the condition or value of the Property or in connection with the amount or kind of consideration given to you in any sale or transfer of the Property; or you fail to correct a representation that has become untrue within a reasonable time after learning of the new information regarding the representation.

4.D.2.3 Delinquencies. You become delinquent on any obligation regarding the Property, including on any loans secured by, or with respect to any taxes owed on, the Property.



© 2019, Unison

4.D.2.4 Occupancy. You cease to occupy the Property as your principal residence in accordance with Section 3.2. Alternatively, Non-Owner Occupants of the Property change and you fail to provide to Investor an updated Non-Owner Occupant Disclosure and Acknowledgement.

4.D.2.5 Unauthorized Transfers. You transfer or attempt to transfer the Property other than in accordance with the HomeOwner Agreement.

4.D.2.6 Insurance. You fail to maintain insurance on the Property as prescribed in the HomeOwner Agreement.

4.D.2.7 Other Adverse Acts. Any other occurrence, action or inaction by you which may have a material adverse effect on the Property, the legal ownership of the Property, the value of the Property, or Investor's rights.

**5 Special Termination by You**

5.1 Under the terms of the HomeOwner Agreement, you and Investor have agreed that the Option may not be exercised until the occurrence of an Exercise Event. However, Investor agrees that after the third anniversary of the Effective Date, you may request what is called a "Special Termination" of the Option by:

5.1.1 Delivering notice to the Investor at least 45 days prior to the proposed Special Termination.

5.1.2 You will provide to Investor copies of all listings for the sale of the Property and all offers for the purchase of the Property, if any.

5.1.3 You and Investor will conduct a home inspection and Appraisal, at your expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

5.1.4 You will open escrow with an escrow holder selected by Investor.

5.1.5 Investor will deliver to you and to escrow holder a calculation of the "Special Termination Price," which is the greater of: (i) the Investor Interest calculated at the time of the Special Termination; (ii) the Initial Payment plus any of your Unpaid Owner Obligations.

5.1.6 If you receive or have pending a written offer for the purchase of the Property, the Investor Interest will be calculated using a Market Value equal to the greater of the then-current Appraised Value of the Property or the gross amount of such purchase offer ("Solicited Sale Value"). If you fail to disclose a Solicited Sale Value that exceeds the Appraised Value used to calculate the Investor Interest at the time of Special Termination or within 90 days after, you will remain liable to Investor for the loss in Investor Interest.

5.1.7 You will deliver the Special Termination Price into escrow together with all Closing Costs, recording expenses or other expenses in connection with the Special Termination.



© 2019, Unison 

5.1.8 On escrow's delivery and Investor's acceptance of the Special Termination Price from you, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the HomeOwner Agreement.

5.1.9 Investor will retain the right to reject any Special Termination where Investor has not had adequate opportunity to review inspections, pest reports, Appraisals, or other documents, or Investor deems your tender of the Special Termination Price insufficient, inadequate, or untimely.

## 6 Voluntary Release by Investor

6.1 Investor may voluntarily rescind its rights under the HomeOwner Agreement in writing at any time, in which case Investor will effect a full release of the Agreement, and you may keep the Initial Payment and have no further obligation to Investor.

## 7 Investor Rights and Remedies

7.1 In any Event of Default, your rights to cure are those in the Security Instrument and as specified by applicable law.

7.2 In an Event of Default:

7.2.1 Investor may exercise the Option and exercise its rights and remedies under the Security Instrument.

7.2.2 Investor may seek monetary damages against you, including interest, attorney's fees, and costs.

7.2.3 Investor may be irreparably injured and will have the right to specific performance, injunctive relief, or any other equitable relief against you.

7.2.4 Investor may enter the Property to (i) to conduct inspections and Appraisals of the Property; (ii) to prevent waste of the Property; and (iii) for any other purpose reasonable to prevent continuing harm to or diminution in value of the Property.

7.2.5 Investor may make Protective Advances in accordance with Section 13 below.

7.2.6 Investor may demand for you to promptly remedy any material defect or adverse condition on the Property.

7.2.7 If Investor is required to pay money pursuant to a preference claim in a bankruptcy proceeding involving you, then Investor is entitled to assert a claim against you for the same amount.

7.3 Investor is entitled to demand immediate termination of the Agreement, the return of the Initial Payment and any other payments tendered to you, and the payment of the amount, if any, by which the Investor Interest exceeds the Initial Payment, together with any and all attorney's fees and costs incurred by Investor in connection with such termination in an Event of Default related to: (i) fraud, bad faith, or misrepresentation or nondisclosure by you; or (ii) a transfer or sale, or attempted transfer or sale, of the Property by you in violation of the terms of the HomeOwner Agreement.



© 2019, Unison 

7.4 In the event of (i) fraud, bad faith, or misrepresentation or nondisclosure by you; (ii) any transfer or sale, or attempted transfer or sale, of the Property by you in violation of the terms of the HomeOwner Agreement, or (iii) any other prolonged, material and uncured default by you under the terms of the HomeOwner Agreement, Investor may reduce the Balance Payment by an amount equal to ten percent (10%) of the Initial Payment.

7.5 In an Event of Default which has resulted in a foreclosure action by a mortgage lender, tax authority or other lien holder (and provided that you have first reasonably exhausted any loss mitigation remedies offered to you by the holder of a senior lien), Investor may offer to you the remedy of an "Orderly Sale," as defined here and immediately below. The Orderly Sale remedy is designed to take advantage of the natural alignment between you and Investor, to prevent the Property from going to foreclosure and becoming a "distressed" property, to protect yours and Investor's interests in the Property, and to prevent a foreclosure event from impacting your credit.

7.6 If you accept Investor's offer of an Orderly Sale, Investor may cure the default through Protective Advances; in exchange you will give Investor the power to exclusively and unilaterally market and sell the Property by, among other things, executing a notarized "Irrevocable Limited Power of Attorney" substantially in the form of Exhibit A to this Covenant.

7.7 The remedies provided in the Agreement are cumulative. A party who asserts a right or seeks a remedy may also assert other rights or seek other remedies.

## 8 Maintenance and Inspection of Property

8.1 You will maintain the Property in good condition, and no worse than its condition as of the Effective Date, subject to normal wear and tear. You will prevent any waste, deterioration or decrease in value due to the Property's condition. You will periodically perform customary and reasonable repairs.

8.2 You are not entitled to any compensation for ordinary maintenance costs incurred in connection with maintaining the condition and value of the Property.

8.3 During the Term of the HomeOwner Agreement, Investor may:

8.3.1 Conduct reasonable inspections of the interior and exterior of the Property, including inspections conducted with drone photography.

8.3.2 Require you to provide written answers to questions regarding any conditions known to you which may affect the Property or its value.

8.4 You acknowledge that Investor will have no liability to you or to any third party for, and you hold Investor harmless from, any loss or liability in connection with any defect or condition on or affecting the Property, whether known or unknown.

## 9 Possible Adjustments to Value

### 9.A Remodeling Adjustment

9.A.1 You may make modifications to the Property without prior written consent of Investor. All modifications must comply with all applicable laws, including zoning, permitting and the use of licensed tradespeople.



© 2019, Unison

9.A.2 If you believe that any of your modifications materially increased the value of the Property ("Material Modifications"), then you may request that a "Remodeling Adjustment" be made to the Ending Agreed Value of the Property when the HomeOwner Agreement ends.

9.A.3 A modification is a Material Modification under this Agreement only if it affects either the value or the useful life of the Property; in contrast to ordinary and necessary maintenance and repairs, which maintain the condition and value of the Property in its general condition. Costs of ordinary and necessary maintenance and repairs to keep the Property in an efficient operating condition, as more particularly outlined in U.S. Treasury Regulation 1.162-4 (as amended from time to time), are not eligible for a Remodeling Adjustment.

9.A.4 A "Remodeling Adjustment" is subject to these requirements:

9.A.4.1 You must request a Remodeling Adjustment in writing at least 45 days before any Exercise Event or any event that requires a determination of the Ending Agreed Value.

9.A.4.2 As part of the request, you must specify the Material Modifications for which a Remodeling Adjustment is sought and provide Investor with photographic and supporting evidence of the Material Modifications in accordance with Section 9.A.5 below.

9.A.4.3 An appraiser will determine if your Material Modifications have increased the Ending Agreed Value of the Property. Specifically, the appraiser will provide two values for the Property: the actual value of the Property as-is (which is called the "Actual Value"), and a hypothetical figure representing what the value of the Property would be if it had not been materially modified (which is called the "Hypothetical Value"). If the Appraisal is conducted in connection with a Permitted Sale, the appraiser will assume that the agreed sale price between you and third-party buyer in the Permitted Sale is the Actual Value of the Property. The difference between the Actual Value and the Hypothetical Value is the value of the Remodeling Adjustment. The appraiser will be instructed to consider the age, depreciation and potential functional obsolescence of Material Modifications, and not to consider the cost of the Material Modifications.

9.A.5 You will maintain, and provide to appraiser and Investor upon any request for a Remodeling Adjustment, photographic and other physical documentation of the Property before completion of the Material Modifications, which will be sufficient in scope, clarity, number and detail to permit the appraiser to compare the Actual Value to the Hypothetical Value, in appraiser's discretion.

9.A.6 No Remodeling Adjustment will be given to the extent (i) the Material Modifications are determined by Appraisal to have become functionally obsolete; (ii) any modifications result in a violation of this Agreement; or (iii) the photographic and other supporting evidence provided by you is not of sufficient quality to support the appraiser's calculation.

9.A.7 No Remodeling Adjustment will be made if the HomeOwner Agreement is terminated at any time prior to the third anniversary of the Effective Date.



© 2019, Unison 

9.A.8 If the Appraisal valuation process described above determines that the Actual Value minus the Hypothetical Value yields a negative number, Investor may apply any such decrease in value as a "Negative Remodeling Adjustment" when calculating the Ending Agreed Value, at any time during the Term. If Investor believes the process described above would likely result in a Negative Remodeling Adjustment, then Investor may obtain such Appraisal.

9.A.9 Provided all of the conditions of this Section 9.A are met, Investor will apply a Remodeling Adjustment in its calculation of the Investor Interest by reducing the Ending Agreed Value by the amount of the Remodeling Adjustment.

**9.B Deferred Maintenance Adjustment**

9.B.1 If Investor determines that either (i) you have breached your duties of maintaining and repairing the Property; or (ii) the Ending Agreed Value is negatively affected as the direct result of a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term, Investor will have the right in consultation with independent appraisers, third party experts and inspectors to make a commercially reasonable estimate of the dollar amount of such deferred maintenance and to apply such dollar amount as a "Deferred Maintenance Adjustment" when calculating the Ending Agreed Value.

9.B.2 Investor may also apply a Deferred Maintenance Adjustment when determining the Ending Agreed Value of the Property where: (i) as of the Effective Date, Investor identified and expressly reserved for a Deferred Maintenance Adjustment significant material defects or conditions in or on the Property which, if not remedied promptly or within a reasonable time, posed clear and serious risks to the Property improvements or Property value, and you failed to correct such defects or conditions; or (ii) if you knew or had reason to know of such a defect or condition at the time of the Property Purchase or during the Term of the HomeOwner Agreement, but failed or neglected to disclose it to Investor.

**10 Appraisal and Appraisal Expenses**

10.1 An "Appraised Value" is an independent third-party "Appraisal" (as defined in this Section), or valuation, of the Property made in connection with the HomeOwner Agreement. All Appraisals will be conducted by an appraiser approved in advance by Investor and unaffiliated with either you or Investor, and who satisfies the requirements of Fannie Mae, Freddie Mac or FHA and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and related regulations, and any applicable state laws, as of the date of the Appraisal, and in compliance with the Uniform Standards of Professional Appraisal Practice.

10.2 You will cooperate with the appraiser by granting full access to the Property and making available any relevant documents and information in your possession pertaining to the Property.

10.3 If either party concludes that an Appraisal contains a material omission or material error of fact, either party may, no later than 10 days after receipt of the Appraisal, request a reconsideration of the Appraisal, at the party's own cost.

10.4 As allowed by applicable law, you will pay all fees and expenses owed to third parties (but excluding Attorneys' Fees) in connection with an appraisal or other valuation of the Property ("Appraisal Expenses") associated with the first Appraisal obtained in connection with: (i) initial valuation of the Property prior to execution of the HomeOwner Agreement, unless paid



© 2019, Unison

by Investor; (ii) any proposed or actual sale; (iii) any Option exercise by Investor; (iv) any Special Termination; (v) any allocation of insurance or condemnation proceeds; (vi) any determination of an Ending Agreed Value; (vii) any determination of a Remodeling Adjustment or Deferred Maintenance Adjustment ; and (viii) any new loan secured by the Property agreed to in writing by Investor after the Effective Date (an "Approved Subsequent Loan").

10.5 If there is more than one Appraisal of the Property obtained in connection with any of the events described in Section 10.4 above, the Appraisal Expense will be paid by the party who requested the additional Appraisal, or if both parties agree that an additional Appraisal should be obtained, by both parties divided equally. If Appraisal Expenses have not been paid by the party required to bear them, the other party may subtract them out of the party's funds from escrow, as allowed by applicable law.

10.6 All Appraisals must conform to Investor's most current Appraisal requirements.

## 11 Debt Limits, Property Obligations and Loans

11.1 You may not at any time increase the total principal balance of loans secured by liens on the Property (including the unused portion of any committed credit line) to exceed the Maximum Authorized Debt specified in the HomeOwner Option Agreement.

11.2 The Maximum Authorized Debt limitation applies both to Approved Existing Loans and Approved Subsequent Loans.

11.3 You will keep the Property free of any liens, title exceptions, and easements except for: liens securing Approved Existing Loans or Approved Subsequent Loans and Permitted Encumbrances.

11.4 If there is a default under any loan or other obligation secured by a lien on the Property, you will take immediate action necessary to: (i) cure the default, (ii) terminate any foreclosure or enforcement action, (iii) satisfy the secured obligation, and/or (iv) remove or release such lien from the Property.

11.5 If during the Term of the HomeOwner Agreement, you want an Approved Subsequent Loan, you must:

11.5.1 Provide to Investor all loan documentation related to the proposed loan no later than 3 business days prior to the proposed close of the loan.

11.5.2 Cooperate with Investor to obtain an Appraisal of the Property, with such Appraisal to be completed no later than 3 business days prior to the proposed close of the loan.

11.5.3 Ensure that copies of all loan documents and all documents recorded against the Property are delivered to Investor immediately following the closing of the loan.

11.5.4 Obtain Investor's written consent to the loan. Investor will not unreasonably withhold consent if:

(a) The Appraised Value of the Property is greater than or equal to the Original Agreed Value and the then-current principal balance of all loans secured by liens on the Property plus the amount of the proposed loan is less than or equal to the Maximum Authorized Debt.



© 2019, Unison

(b) The Appraised Value of the Property is less than the Original Agreed Value, the proposed loan is being used solely to refinance existing senior debt secured by the Property, and the amount of the proposed loan is less than or equal to the then-current principal balance of all loans secured by the Property, plus actual and reasonable refinancing costs.

11.6 Investor will subordinate the priority of its rights under the HomeOwner Agreement to the lien of any lender that extends to Owner an Approved Subsequent Loan, provided that: (i) the Approved Subsequent Loan satisfies the requirements of this Section 11; and (ii) any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor.

11.7 Investor will not consent to any lien on the Property that could materially impair Investor's rights, including, reverse mortgage loans, shared appreciation mortgage loans, mortgage loans with negative amortization or prepayment penalties, private or non-institutional loans, unrecorded loans secured by the Property, and certain loans with payment reset or other variable payment features.

11.8 Investor is not liable for any loans obtained by you.

11.9 Investor makes no representations regarding the availability or terms of any loan that you may seek during the Term of the HomeOwner Agreement, and will have no liability to you as a result of the unavailability or unfavorable terms of any such loan.

## 12 Taxes and Assessments

12.1 You will promptly pay all taxes and assessments accruing on the Property and will not apply for any deferrals. You will provide Investor proof of payment upon request.

12.2 You are entitled to the full benefit of any tax advantages arising in relation to the Property, including, without limitation, all available deductions for taxes and mortgage interest paid by you. Investor does not provide tax advice and makes no representations as to the tax advantages or disadvantages which may accrue to you in connection with the Property or the HomeOwner Agreement.

## 13 Protective Advances

13.1 If you fail to protect the Property and Investor's rights, Investor may make "Protective Advances," as defined in this Section, as Investor deems appropriate.

13.2 Investor will provide 10 days' written notice to you, to correct your default, such as:

13.2.1 The placement of insurance; the payment of taxes, assessments, levies, liabilities, obligations and other charges of every nature on the Property;

13.2.2 The making of necessary repairs;

13.2.3 The cure of any defaulted loans; or

13.2.4 The removal of a receiver appointed for the Property.



© 2019, Unison

13.3 If, after the 10 days' written notice, you have not cured the default, Investor may make the payments itself. All such payments by Investor (including attorneys' fees incurred in litigation or arbitration with parties other than you) are deemed Protective Advances.

13.4 Prior notice from Investor is not required if the HomeOwner Agreement expressly so provides, or when Investor determines that prompt action is necessary to protect the Property and Investor's rights.

13.5 Investor incurs no liability for its election not to take any action authorized under this Section 13.

13.6 Investor may demand prompt reimbursement for any Protective Advances. You must reimburse Investor no later than 10 days after demand. Protective Advances incur interest at the rate of 1.5% per month, subject to applicable law, from the date of demand until paid in full. These charges are intended to be a reasonable liquidated estimate of those sums which Investor could be obliged to obtain and expend in the event appropriate corrective action(s) are not taken to protect the Property or Investor's rights, which sums and costs are not readily ascertainable, and will be difficult to predict or calculate.

13.7 You consent to Investor's unilateral authority to determine the appropriateness or necessity of any Protective Advances to you.

13.8 "Protective Advances," to the extent they are not reimbursed to Investor by you, become a component of what are called "Unpaid Owner Obligations." "Unpaid Owner Obligations," in total, are the sum of unreimbursed Protective Advances; unpaid interest, fees and other charges associated with Protective Advances; as well as any other amounts expended by Investor to protect its rights or the value of the Property in an Event of Default.

## 14 Insurance Coverage

14.1 You must maintain at your expense:

14.1.1 Insurance on the Property against fire and other hazards included in the special form (HO-3) policy (and any successor forms);

14.1.2 Hazard insurance, including flood hazard, and any other insurance Investor may reasonably require and which is common for similar properties in similar locations, in an amount equal to the current replacement cost of the improvements on the Property, which amount will be increased not less frequently than annually as the replacement cost of the improvements increases.

14.1.3 Liability insurance on the Property against such risks and in such amounts as are reasonable for similar properties in similar locations.

14.2 You authorize Investor to communicate with all insurance companies to ensure the maintenance of policies, the coverage, and the reimbursement of losses.

14.3 Investor must be named as an additional named insured under all hazard and liability insurance policies obtained by you related to the Property.

14.4 You may obtain insurance from any insurance company reasonably acceptable to Investor.

14.5 You must provide to Investor copies of all insurance policies related to the Property when the insurance is obtained. You must provide Investor with proof of coverage upon request.



© 2019, Unison

14.6 If you fail to maintain or obtain the insurance coverage required by this Section 14, Investor may obtain such coverage on the Property. Any such expenses paid by Investor are Protective Advances.

**15 Distribution of Insurance Proceeds for Losses**

15.1 Subject to your obligations and the requirements in connection with any senior lien, insurance for losses will be distributed as described in this Section 15.

15.2 You and Investor will cooperate in the pursuit, settlement, and adjustment of any losses under any insurance policies.

15.3 In the event of damage to the Property where restoration or repair is economically feasible, subject to your obligations in connection with senior liens, the proceeds must promptly be applied to restore or repair the Property to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, further subject to:

15.3.1 Investor has the right to approve any restoration or repair plans, including the contractors or subcontractors used and the costs associated with the restoration or repair.

15.3.2 Investor has the right to release insurance proceeds to the individuals or entities performing the repair and restoration work in one or more progress payments as the work is completed.

15.3.3 Unless required by law, Investor is not required to pay you any interest or earnings on insurance proceeds.

15.3.4 You are responsible for ensuring that any repair or restoration work is completed in a cost-effective manner that in no way impairs the structural integrity, habitability or value of the Property.

15.3.5 You are responsible for obtaining any governmental approvals or permits that are required for such repair or restoration work.

15.3.6 Investor has no obligation to pay any amount of the restoration or repair of the Property even if the insurance proceeds are insufficient to complete the restoration or repair. You are responsible for any shortfall.

15.4 If restoration or repair is not economically feasible, all insurance proceeds will be allocated in the following order:

15.4.1 To payment of reasonable expenses incurred by you or Investor in collecting and contesting with the insurers the payments under the relevant insurance policies, including attorney's fees that have been approved by Investor;

15.4.2 To payment of all senior liens that have priority over the HomeOwner Agreement;

15.4.3 To Investor, in an amount equivalent to the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the destruction or damage occurred; and

15.4.4 To you, the balance of the proceeds.



© 2019, Unison

15.5 In the event you fail to maintain insurance in amounts required by Investor, or any insurance claim is denied due to your action or inaction, resulting damages may be difficult to ascertain. In the event of loss to Investor resulting directly from your failure to maintain insurance or obtain a claim, you and Investor agree that Investor is entitled to what are called "Special damages for Failure to Insure." The Special Damages for Failure to Insure are calculated as the amount of the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the destruction or damage occurred, but without credit of the Balance Payment to you.

## 16 Condemnation of Property

16.1 If the Property is condemned in whole or in part during the Term, all condemnation proceeds will be distributed as follows:

16.1.1 To repay any reasonable costs and expenses incurred by you or Investor in collecting and contesting the condemnation proceeds, including attorney's fees that have been approved by Investor;

16.1.2 To payments for extinguishing all liens that have priority over the HomeOwner Agreement;

16.1.3 To Investor, to the extent of the Investor Interest;

16.1.4 To you, the balance of the proceeds.

16.2 In the case of a partial condemnation: (i) Investor retains its rights with respect to any Property that has not been condemned; and (ii) after distribution of the proceeds of the partial condemnation, for all remaining calculations to be made under the HomeOwner Agreement, the Balance Payment will be reduced by an amount equal to the condemnation proceeds less any amounts paid under Section 16.1.1 and 16.1.2, multiplied by the Investor Percentage.

## 17 Multiple Owners

17.1 If you are more than one individual:

17.1.1 The HomeOwner Agreement must be signed by each of you;

17.1.2 All of you are jointly and severally liable for liabilities and obligations under the HomeOwner Agreement;

17.1.3 Notice required to be given to you is adequate if given to any of you; and

17.1.4 Investor may treat any notice received from any one of you as notice from all of you.

## 18 Revocable Trusts

18.1 If you are the trustee of a Revocable Trust:

18.1.1 All trustees and all trustors must be disclosed to Investor and must sign the HomeOwner Agreement;



© 2019, Unison 

18.1.2 All rights and powers specified for, and all actions required of, you in the Agreement that are exercised by a trustee are deemed approved and exercised by all trustees unanimously;

18.1.3 All trustees and all trustors, in their capacities as individuals, are jointly and severally liable with you for Owner's liabilities and obligations under the Agreement;

18.1.4 All representations and warranties by you in the Agreement are made by all trustees on behalf of the Revocable Trust and by all trustees and all trustors in their capacities as individuals;

18.1.5 Notice required to be given to you is adequate if given to any of the trustees; and

18.1.6 Investor may treat any notice received from any trustee as notice from all trustees and from you.

**19 Miscellaneous Provisions**

19.1 Notices. You will immediately provide Investor with written notice of any event that may have a material effect upon the Property, the value of the Property, or Investor's ability to exercise any of Investor's rights.

19.1.1 All required notices must be in writing and will be considered given when delivered (1) personally, (2) to the mailing address set forth in the Option by overnight delivery by a nationally recognized courier service, or (3) by email to the email address specified for you in the Option.

19.1.2 The following notices are not given by you to Investor until written confirmation of receipt is made by Investor to you: notices of default and notices of sale in connection with secured liens on the Property; notices of delinquency in tax or insurance payments on the Property; notices of your death; and notices of the commencement of legal or other action concerning the Property, or of your bankruptcy proceedings.

19.2 Indemnification. You hereby agree to indemnify and hold Investor harmless from, and against, any and all claims, damages, liabilities, actions and expenses (including, without limitation, attorneys' fees and costs) arising out of or relating to: (i) a breach of any of your covenants, representations or warranties under the HomeOwner Agreement; (ii) any act or omission by you or your agents; or (iii) the Property.

19.3 Right to Disclose Certain Information. Subject to applicable laws, Investor may share certain personal and financial information about the HomeOwner Agreement with affiliates, subsidiaries, investors, assignees and those with which it intends to conduct business. This information includes, without limitation, the address and general location of the Property, Appraisal reports and other valuations of the Property, and the financial terms of the HomeOwner Agreement.

19.4 Right to Obtain Certain Information. Subject to applicable laws, Investor may obtain certain personal and financial information as necessary to maintain the Agreement, including credit report histories, or current balances and payoff amounts of loans secured by the Property.



© 2019, Unison

19.5 Relationship. Investor shall not be deemed a partner, joint venturer, trustee, agent, representative, lender or fiduciary with, or of, you. You expressly waive any claims against any of Investor's agents, assignees, affiliates, employees, directors or funding sources.

19.6 Delegation of Duties. Investor may execute any of its duties under the HomeOwner Agreement by or through agents.

19.7 Successors and Assignees. If the Agreement is properly assigned, then you and Investor agree it will bind and benefit your respective heirs, successors, and assigns.

19.7.1 Investor may assign Investor's right and title to, and interest in, the HomeOwner Agreement at any time and to any individual or entity without prior notice to or consent of you.

19.7.2 You agree to cooperate as necessary upon Investor's request to ensure assignee's interest in the Property.

19.7.3 Absent Investor's prior written consent you may not assign or otherwise transfer the HomeOwner Agreement.

19.8 Survival. The indemnification provisions, obligations to pay any of your Unpaid Obligations, obligations to pay Closing Costs, all covenants, representations and warranties of you, and all other provisions which are required by their terms to be enforceable following expiration or termination, including, without limitation, provisions prescribing monetary remedies, fees, costs and expenses owed by you in connection with any Event of Default, will survive for three years after the end of the HomeOwner Agreement.

19.9 Attorneys' Fees. If a dispute arises out of the HomeOwner Agreement, then the prevailing party will be entitled to reasonable attorney fees and costs.

19.10 Applicable Law and Venue. The HomeOwner Agreement will be governed by NJ law. Any lawsuit or arbitration arising directly or indirectly out of the Agreement will be contested in the venue where the Property is located.

19.11 Correction of Document. The parties agree to correct any error or inaccuracy in the HomeOwner Agreement, to ensure that such documents reflect the true and correct terms upon which the parties agreed to enter into and to replace any missing or misplaced documentation, or to confirm and restate any authorities granted hereunder to the extent such authority is impacted by a change in any law, rule or regulation.

19.12 Severability. Each provision of the HomeOwner Agreement must be interpreted in a way that is valid under applicable law. If any provision is held invalid or unenforceable, such adjudication shall not affect, impair, invalidate, or nullify the remainder of the Agreement, but shall only affect that provision.

19.13 Waivers. A waiver by Investor of a breach of any term in the HomeOwner Agreement by you will not be considered (i) waiver of a further breach of the same term, or (ii) a waiver of a breach of any other term, or (iii) a waiver of Investor's right to declare an immediate or subsequent default.

19.14 Injunction. Notwithstanding anything to the contrary in the HomeOwner Agreement or otherwise, if Investor is stayed or enjoined from enforcing any of Investor's rights under the HomeOwner Agreement, then any deadline or notice period prescribed in that Agreement is automatically stayed for the duration of such stay, injunction or legal prohibition.



© 2019, Unison

19.15 Entire Agreement. The HomeOwner Agreement and its attachments contain the entire understanding between the parties.

19.16 Titles and Summary. The Titles and Summary are inserted in the Agreement for reference purposes only and must not be used to interpret the Agreement.

19.17 Counterparts. The HomeOwner Agreement and its attachments may be executed in counterparts, each of which shall be deemed an original, but all of which together constitute one and the same Agreement.

19.18 Waiver of Jury Trial. To the fullest extent permitted by law, you and Investor hereby voluntarily and irrevocably waive trial by jury in any litigation or proceeding related to the HomeOwner Agreement.

19.19 Covenants To Run With Land. The Option, Covenant, and the other provisions of the HomeOwner Agreement are deemed to be covenants running with the land as reflected in the Recorded Memorandum. The interpretation of the phrase "covenants running with the land" shall be within the meaning of the applicable law of the state where the Property is located so as to give it the broadest possible application.

## 20 Arbitration

20.1 You and Investor agree that either party may, at its sole election, choose to submit to neutral, binding arbitration pursuant to this Section 20 (the "Arbitration Provision") rather than court action the following controversies (which will be called "Claims"):

> any past, present, or future claim, dispute, or controversy (including matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise) whether in contract, tort (intentional or otherwise), constitution, statute, common law, principles of equity, or otherwise, between you and Investor or Investor's employees, directors, agents, successors or assigns, which arises out of or relates to the HomeOwner Agreement, including any dispute regarding an Appraised Value of the Property, Remodeling Adjustment or Deferred Maintenance Adjustment, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)

20.2 IF A DISPUTE IS ARBITRATED, YOU GIVE UP THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST INVESTOR INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND INVESTOR WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

20.3 The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable. The interpretation and scope of this Arbitration Provision, and the arbitrability of any Claim shall be resolved by neutral, binding arbitration and not by a court action. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and enforceable.

20.4 Arbitration shall be initiated with the American Arbitration Association (the "AAA") or the Judicial Arbitration and Mediations Service ("JAMS"). The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the



© 2019, Unison

rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or applicable law. Neither you nor Investor waive the right to arbitrate by using self-help remedies (such as non-judicial foreclosure), or by filing a judicial action to related to the Property (whether to recover a deficiency balance, or for individual injunctive relief).

20.5 The arbitration fees will be shared equally by you and Investor. You and Investor shall each pay their own attorneys' fees incurred in connection with such arbitration, except as otherwise provided by law. If a statute gives the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein. Any award by the arbitrator shall be in writing and will be final and binding on all parties. Any court having jurisdiction may enter or confirm judgment on the arbitrator's award.

20.6 This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act ("FAA"). The arbitrator will apply substantive law consistent with the FAA and the applicable statute of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator shall take steps to reasonably protect confidential information during and after the completion of the arbitration.

(remainder of page intentionally blank)



© 2019, Unison

IN WITNESS, WHEREOF, intending to be legally bound, each of you have executed this HomeOwner Covenant Agreement:

YOU:

| | |
|---|---|
| Owner: | Co-Owner: |
| Sign: D Santaniello | Sign: Rosanne D Santaniello |
| David Santaniello | Rosanne D. Santaniello |
| Date: 11/9/19 | Date: 11/9/19 |
| Sign: ______________________ | Sign: ______________________ |
| Date: ______________________ | Date: ______________________ |
| Sign: ______________________ | Sign: ______________________ |
| Date: ______________________ | Date: ______________________ |



© 2019, Unison

## Schedule A to the Covenant: Index of Defined Terms

This Index identifies where you can find the meaning of every defined term in the HomeOwner Agreement.

**"Actual Value"** is defined in this Covenant § 9.A.4.3.

**"Agreement"** is an abbreviation for the HomeOwner Agreement, which itself is defined in the Option Agreement § 1.2, and which you are executing today.

**"Appraisal"** is defined in this Covenant § 10.1.

**"Appraisal Expenses"** is defined in this Covenant § 10.4

**"Appraised Value"** is defined in this Covenant § 10.1.

**"Approved Existing Loan"** is defined in this Covenant § 2.1.

**"Approved Subsequent Loan"** is defined in this Covenant § 10.4.

**"Arbitration Provision"** is defined in this Covenant § 20.1.

**"Balance Payment"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 3.1 of that contract.

**"Certification of Non-Owner Occupants"** is defined in this Covenant § 2.8.

**"Claim"** is defined in this Covenant § 20.1.

**"Closing Costs"** is defined in this Covenant § 4.A5.

**"Covenant"** is an abbreviation for the "HomeOwner Covenant Agreement" that you are executing today.

**"Deferred Maintenance Adjustment"** is defined in this Covenant § 9.B.1.

**"Effective Date"** is the date specified in the table at the end of the Option Agreement § 1.

**"Effective Sale Price"** is defined in the Table that defines "Market Value" in Schedule B to this Covenant.

**"Ending Agreed Value"** is defined in Schedule B to this Covenant.

**"Event of Default"** is defined in this Covenant § 4.D.2.

**"Exercise Event"** is summarily defined in the Option Agreement § 6, and each particular Exercise Event is defined in this Covenant §§ 4.A, 4.B, 4.C and 4.D, respectively.

**"Expiration Date"** means the date specified in the table at the end of the Option Agreement § 1.

**"Hypothetical Value"** is defined in this Covenant § 9.A.4.3.

**"Initial Payment"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 2.1 of that contract.

**"Intrafamily Transaction"** is defined in this Covenant § 4.A.8.

**"Investor"** is defined in the Option Agreement § 1.1 and in this Covenant § 1.1.

**"Investor Interest"** is defined in the Option Agreement § 7.

**"Investor Percentage"** means the Percentage specified in the table at the end of the Option Agreement § 1, and is further described in § 3.1 of that contract.

**"Irrevocable Limited Power of Attorney"** is defined in this Covenant § 7.6, and may be found as Exhibit A to this Covenant.

**"Last Surviving Signatory"** is defined in this Covenant § 4.C.1.

**"Market Value"** is defined in the table in Schedule B to this Covenant.

**"Material Modification"** is defined in this Covenant §§ 9.A.2 and 9.A.3.

**"Maximum Authorized Debt"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 9.1 of that contract.

**"Negative Remodeling Adjustment"** is defined in this Covenant § 9.A.8.

**"Non-Owner Occupant"** is defined in this Covenant § 2.8.

**"Non-Owner Occupant Disclosure and Acknowledgment"** is defined in this Covenant § 2.8 and may be found as Exhibit B to this Covenant.

**"Option"** is defined in the Option Agreement § 3.1.

**"Option Agreement"** is an abbreviation for the "HomeOwner Option Agreement" that you are executing today.

**"Orderly Sale"** is defined in this Covenant §§ 7.5—7.6.

**"Original Agreed Value"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 5.1 of that contract.

**"Permitted Encumbrance"** is defined in this Covenant § 2.1.

**"Permitted Sale"** is defined in this Covenant § 4.A.

**"Property"** means the Property identified in the table at the end of the Option Agreement § 1, and is further described in Exhibit A to that contract.

**"Property Purchase"** is defined in this Covenant § 2.9.

**"Protective Advances"** is defined in this Covenant § 13.

**"Recorded Memorandum"** is an abbreviation for the "HomeOwner Recorded Memorandum" that you are executing today.

**"Reasonable Value"** is defined in the Table of Market Value at Schedule B to this Covenant, for the "Payment of insurance proceeds" event.

**"Remodeling Adjustment"** is defined this Covenant §§ 9.A.2—9.A.4.

**"Revocable Trust"** is defined in this Covenant § 2.2.

**"Revocable Trust Rider"** is defined in this Covenant § 2.2 and may be found as a rider to the Security Instrument.

**"Sale-By-Owner Transaction"** is defined in this Covenant § 4.A.8.

**"Security Instrument"** is an abbreviation for the "HomeOwner Security Instrument" that you are executing today.

**"Solicited Sale Value"** is defined in this Covenant § 5.1.6.

**"Special Damages For Failure To Insure"** is defined in this Covenant § 15.5.

**"Special Termination"** is defined in the Option Agreement § 8.1 and further defined in this Covenant § 5.1.

**"Special Termination Price"** is defined in the Option Agreement § 8.1 and again in this Covenant § 5.1.5.

**"Term"** means 30 years, as specified in the table at the end of the Option Agreement § 1; it is further described in § 4.1 of that contract.

**"Unpaid Owner Obligations"** are defined in this Covenant § 13.8.

**"You"** is defined in the Option Agreement § 1.1.

**Schedule B to the Covenant: "Ending Agreed Value" and "Market Value"**

This Schedule provides the definitions of **"Ending Agreed Value"** and a term used in that definition: **"Market Value."**

**"Ending Agreed Value"** means:

Market Value (determined per the table below)
*minus* any Remodeling Adjustment*
*plus* any Deferred Maintenance Adjustment.

*If there is a Negative Remodeling Adjustment, then the absolute value of that number is added rather than subtracted.

**"Market Value"** is determined according to the following table, which indicates that Market Value depends on the Event that triggers the need for the valuation. The first column of the table identifies the Section of the Covenant where the Event is described.

| Covenant Section | Event | Market Value Equals |
|---|---|---|
| § 4.A | A Permitted Sale *before* the three-year anniversary of the Effective Date | The greater of (i) the Effective Sale Price or (ii) the Original Agreed Value.<br>The "Effective Sale Price" is the monetary amount for which the Property is to be sold by you or Investor, as applicable, to a third-party buyer, as set forth by the escrow holder. The Effective Sale Price does not include any deduction for any: (a) Closing Costs; (b) payments to extinguish liens on the Property; (c) outstanding taxes; (d) Appraisal Expenses; and/or (e) amounts payable to Investor. |
| § 4.A | A Permitted Sale *after* that three-year period | The Effective Sale Price |
| § 4.A | A Property sale by you that is not a Permitted Sale, including a Sale-By-Owner, and an Intrafamily Sale | In Investor's discretion: either (i) the Effective Sale Price, or (ii) the Appraised Value. |
| § 4.B | End of the Term of the Agreement | The Appraised Value. |
| § 4.C | Death of the Last Surviving Signatory | |
| § 4.D | Following any material and uncured Event of Default | The greatest of: (i) the Original Agreed Value, (ii) the highest Appraised Value after the date of the first Event of Default, or (iii) the Effective Sale Price. |
| § 5 | Special Termination | The greater of: (i) the Appraised Value at the time of Special Termination, or (ii) the Solicited Sale Value. |

| Covenant Section | Event | Market Value Equals |
|---|---|---|
| § 14 | Payment of insurance proceeds | The Appraised Value as it existed immediately prior to the destruction or damage.<br><br>Or, if valuing the Property by Appraisal is not possible due to the destruction or damage, the Property value immediately prior to the destruction or damage as determined by some other reasonable process (the "Reasonable Value") based on an expert third-party opinion obtained by Investor. |
| § 16 | Payment of condemnation proceeds | The greater of (i) the Appraised Value as it existed immediately prior to the condemnation; or (ii) the condemnation proceeds minus payments for reasonable costs and expenses and for extinguishing senior liens as described in Covenant § 16.1.<br><br>Or, if valuing the Property by Appraisal is not possible due to the condemnation, the Reasonable Value (defined in the row above) immediately prior to the condemnation. |

**Prepared by, recording requested by, and when recorded mail to:**

Bob Afable
Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-231163
Parcel Identification Number:
6302-3
Consideration Amount:
$175,000.00

# MEMORANDUM OF UNISON HOMEOWNER AGREEMENT

This **MEMORANDUM OF UNISON HOMEOWNER AGREEMENT** ("**HomeOwner Recorded Memorandum**") is entered into as of November 6, 2019 ("**Effective Date**") by DAVID SANTANIELLO AND ROSANNE D.
SANTANIELLO, HUSBAND AND WIFE, whose address is: 4 Footes Ln, Morristown, NJ 07960 (individually or collectively "**Owner**").

Owner hereby declares that Owner has entered into that certain Unison HomeOwner Agreement ("**Unison HomeOwner Agreement**") with Unison Agreement Corp., a Delaware corporation, and its successors and assignees ("**Benefited Party**"), whose address is 650 California Street, Suite 1800, San Francisco, CA 94108, as of the Effective Date, pursuant to which Owner grants and conveys to Benefited Party the option to purchase an undivided percentage interest in that certain real property (the "**Property**") described in attached **SCHEDULE A** ("**Option**") and pursuant to which Owner has made certain covenants and promises to, or for the benefit of, Benefited Party in connection with the Property, all as more particularly described and on the terms and conditions stated in the Unison HomeOwner Agreement. The percentage interest shall equal the Investor Percentage as specified in the Unison HomeOwner Option Agreement. The Option is irrevocable by Owner. The term of the Option shall commence on the Effective Date and shall expire at 11:59 p.m., Pacific Time, on the day immediately preceding the thirtieth (30th) anniversary of the Effective Date ("**Expiration Date**") (subject to certain extensions as set forth in the Unison HomeOwner Agreement). The terms of the Unison HomeOwner Agreement are hereby incorporated into this HomeOwner Recorded Memorandum by this reference.

## MEMORANDUM OF COVENANTS RUNNING WITH THE LAND

This HomeOwner Recorded Memorandum identifies the covenants and promises set forth in the Unison HomeOwner Agreement that run with the land and will be binding upon any party who acquires Owner's interest in the Property so long as the Unison HomeOwner Agreement has not expired or been terminated. The Unison HomeOwner Agreement covenants are deemed to be covenants running with the land within the meaning of the applicable law of the State of New Jersey so as to give it the broadest possible application, and include, without limitation:

**a.** **Section 8** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain and repair the Property and to ensure that use of the Property complies with all applicable state, federal and local laws and regulations.

**b.** **Section 14** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain insurance on the Property against certain hazards.

c. **Section 12** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to pay all taxes and assessments accruing on the Property.

d. **Section 3** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to occupy the Property as Owner's principal residence and prohibits use of the Property for commercial or other non-residential purposes.

e. **Section 11** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the ability of Owner to increase the amount of debt to third parties secured by liens on the Property beyond the Maximum Authorized Debt specified in the Unison HomeOwner Agreement, and requires Owner to keep the Property free of liens prohibited under the terms of the Unison HomeOwner Agreement or not otherwise approved by Benefited Party.

f. **Section 4A** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the right of Owner to transfer the Property other than as expressly permitted under the terms of the Unison HomeOwner Agreement.

[This space is intentionally left blank.]

## RELEASE

This HomeOwner Recorded Memorandum shall remain in full force and effect until released by a written termination or quitclaim deed executed and notarized by Benefited Party and recorded in the real property records for the county where the Property is located, or until extinguished by operation of law.

[Signatures appear on the following page.]

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS HOMEOWNER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Owner has executed this HomeOwner Recorded Memorandum as of the date set forth above.

**BENEFITED PARTY:**
Unison Agreement Corp., a Delaware corporation
650 California St., Suite 1800, San Francisco, CA 94108

By: ______________________

Name: Ismael Casas, Jr.

Title: Vice President

Date signed: ______________________

**OWNER:**

Sign: [signature]
David Santaniello

Date: 11/9/19

Sign: ______________________

Date: ______________________

Sign: ______________________

Date: ______________________

**CO-OWNER:**

Sign: [signature]
Rosanne D. Santaniello

Date: 11/9/19

Sign: ______________________

Date: ______________________

Sign: ______________________

Date: ______________________

Property Address:
4 Footes Ln, Morristown, NJ 07960

**BENEFITED PARTY'S ACKNOWLEDGMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF CALIFORNIA)
) ss.
COUNTY OF SAN FRANCISCO)

On__________________, 20____, before me ________________________________________, Notary Public, personally appeared __________________________________________________ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

____________________________________ (seal)

**OWNERS' ACKNOWLEDGMENT**

**[Notary Acknowledgment(s) must be attached.]**

Individual Notary Acknowledgment

Pursuant to NJS 46:14-2.1

**STATE OF: NEW JERSEY**

**COUNTY OF:** Morris

I CERTIFY that on this 9 day of Nov, 20 19 by David Santaniello & Rosanne D. Santaniello, personally came before me and acknowledged under oath, to my satisfaction that this person (or if more than one, each person):

(a) Is named in and personally signed this document,
(b) Signed, Sealed and Delivered this document as his or her act and deed.

Notary Public **(SEAL)**

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

**SCHEDULE A**

**LEGAL DESCRIPTION**

That certain real property situated in the City of Morristown, County of Morris, State of NJ, described as follows:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Morris, County of Morris, State of New Jersey:

BEGINNING at a point in the southeasterly sideline of Foote's Lane where the same is intersected by the division line between lands herein described and lands shown on "Final Plat of Foote's Lane, Subdivision of Block 341, Lots 95 thru 120" filed in the Morris County Clerk's Office on September 11, 1981, as Map No.
4023, said point being distant 333.40 feet measured northwesterly along said sideline from the new sideline of James Street, 33.00 feet from centerline, extended and running; thence

1. Along the sideline of Foote's Lane, south 44 degrees 06 minutes 10 seconds east 142.20 feet to a point; thence
2. Along land, now or formerly of Morgan, being Lot 57.02 shown on "Minor Subdivision of Lands" prepared for Stephen and Diane Morgan by Richard F. Smith, Jr., P.L.S. dated June 28, 1990, south 38 degrees 27 minutes 20 seconds west 338.01 feet to a point in the line of Lot 57.01 as shown. On said map; thence
3. Along lot 57.01, north 48 degrees 05 minutes 36 seconds west 141.26 feet to a point in the aforementioned line of lands shown on "Final Plat of Foote's Lane Subdivision", thence
4. Along said line, north 38 degrees 27 minutes 20 seconds east 347.92 feet to a point in the aforementioned sideline of Foote's Lane and the point of BEGINNING.

FURTHER BOUNDED AND DESCRIBED IN ACCORDANCE WITH A SURVEY MADE BY D. P. SWEENEY & ASSOC., INC. dated 7-19-06 AS FOLLOWS:
BEGINNING At a point on the southwesterly sideline of Footes Lane (50 feet wide), said point being distant southeasterly 217.58 feet from the intersection of said sideline with the southeasterly sideline of Trent Court (50 feet wide), if both were extended and running, thence:

1. Along Footes Lane, south 44 degrees 03 minutes 30 seconds east a distance of 142.20 feet to a capped pin, thence;
2. Leaving Footes Lane, south 38 degrees 30 minutes 00 seconds west a distance of 338.01 feet to a point, thence;
3. North 48 degrees 02 minutes 56 seconds west a distance of 141.26 feet to a point, thence;
4. North 38 degrees 30 minutes 00 seconds east a distance of 347.92 feet to the point and place of BEGINNING.

APN/Tax ID Number/Parcel Identification Number: 6302-3

[end of legal description]

**Prepared by,**
**recording requested by, and**
**when recorded mail to:**

Bob Afable
Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-231163
Parcel Identification Number:
6302-3
Consideration Amount:
$175,000.00 NJ531995

## UNISON HOMEOWNER MORTGAGE AND SECURITY AGREEMENT

This **SUBORDINATED UNISON HOMEOWNER MORTGAGE AND SECURITY AGREEMENT** ("**HomeOwner Security Instrument**") is made as of November 6, 2019 ("**Effective Date**"), among DAVID SANTANIELLO AND ROSANNE D.
SANTANIELLO, HUSBAND AND WIFE, whose address is: 4 Footes Ln, Morristown, NJ 07960 (individually or collectively "**Mortgagor**") and Unison Agreement Corp., a Delaware corporation, and its successors and assignees ("**Mortgagee**"), whose address is 650 California Street, Suite 1800, San Francisco, California 94108. Capitalized terms used in this HomeOwner Security Instrument shall have the meanings specified in this HomeOwner Security Instrument or, if not defined herein, in that certain Unison HomeOwner Covenant Agreement ("**Unison HomeOwner Covenant Agreement**"), Unison HomeOwner Option Agreement ("**Unison HomeOwner Option Agreement**") and that certain Memorandum Of Unison HomeOwner Agreement ("**Unison HomeOwner Recorded Memorandum**"), which documents, together with this HomeOwner Security Instrument, are collectively termed the "**Unison HomeOwner Agreement,**" executed by Mortgagor and Mortgagee concurrently herewith.

**1. <u>Grant</u>.**

MORTGAGOR HEREBY mortgages, grants, and conveys to Mortgagee, and its successors and assignees, all of that property ("**Real Property**") located at 4 Footes Ln, Morristown, NJ 07960 as described in **SCHEDULE A,** attached hereto and made a part hereof.

Together with all improvements, replacements and additions now or hereafter erected on the Real Property and all easements, appurtenances and fixtures now or hereafter a part of the Real Property. (The fixtures, improvements and the Real Property are collectively referred to as the "**Property**.")

Together with all rents, issues, profits and proceeds, including without limitation insurance and condemnation proceeds, from the Real Property, subject, however, to the right, power and authority given to and conferred upon Mortgagee below to collect and apply such rents, issues and profits.

MORTGAGOR COVENANTS that Mortgagor is lawfully siesed of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for Permitted Encumbrances and the Permitted Senior Lien. Mortgagee warrants and will defend generally the title to the Property against all claims and demands, subject to Permitted Encumbrances and the Permitted Senior Lien.

**2. <u>Secured Obligations</u>.** Mortgagor makes the grant, transfer and assignment set forth in the "Grant" Section above for the purpose of securing:

Owner's Initials: DS / RS / ____ / ____

**a.** Mortgagor's performance and Mortgagee's rights, under the Unison HomeOwner Agreement;

**b.** the performance and payment of the obligations of Mortgagor under the Unison HomeOwner Agreement, including:

**(i)** payment of all **Protective Advances**, including any unpaid interest and other fees and charges associated with such Protective Advances, owed to Mortgagee under the Unison HomeOwner Covenant Agreement;

**(ii)** payment of all **Asset Administration Fees** owed to Mortgagee under the Unison HomeOwner Covenant Agreement;

**(iii)** payment of all insurance proceeds owed to Mortgagee pursuant to the Unison HomeOwner Covenant Agreement;

**(iv)** payment of all condemnation proceeds owed to Mortgagee pursuant to the Unison HomeOwner Covenant Agreement;

**(v)** performance of those obligations to Mortgagee specified in the Unison HomeOwner Agreement pursuant to the Unison HomeOwner Covenant Agreement, including, without limitation, payment of the Investor Interest under the Unison HomeOwner Agreement; and

**(vi)** performance of the obligations of Mortgagor under the Unison HomeOwner Covenant Agreement regarding Mortgagee's right to sell the Property following exercise of the **Option** and during **Orderly Sale.**

**c.** damages (subject to liquidation as provided below) arising to, or incurred by, Mortgagee from Mortgagor's failure to act or interference with Mortgagee's rights under the Unison HomeOwner Agreement. Mortgagor and Mortgagee agree and acknowledge that the damages that would arise from Mortgagor's failure to act or interference are uncertain, depend on many factors, and would be extremely difficult to ascertain. Therefore, in a good faith effort to determine a method for reasonably estimating and liquidating the damages which would be incurred by Mortgagee arising from Mortgagor's interference or failure to act, Mortgagor and Mortgagee agree to the **Liquidated Damages** specified in **Section 8** below;

**d.** the performance of the obligations of Mortgagor contained in this HomeOwner Security Instrument or incorporated by reference;

**e.** any expenditures made by Mortgagee pursuant to, or under, this HomeOwner Security Instrument;

**f.** payment of all fees and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel (collectively "**Attorneys' Fees**")) incurred by Mortgagee in the enforcement and collection of the obligations listed above and the protection of Mortgagee's rights related thereto, whether such fees are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Attorneys' Fees shall include, without limitation, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this HomeOwner Security Instrument, to the interpretation or enforcement of the parties' rights under this HomeOwner Security Instrument, or to the Property;

The foregoing obligations are collectively referred to herein as the **"Obligations."**

Owner's Initials: DS / BS / ____ / ______

**g.** Mortgagor shall not be obligated to repay any part of the **Initial Payment** (as such term is defined in Schedule A to the Unison HomeOwner Covenant Agreement); and therefore, such items shall not be included within the Obligations. The foregoing shall not, however, in any way limit any payments calculated and agreed by Mortgagee to be paid pursuant to the Unison HomeOwner Agreement, according to the calculation of **Investor Interest** (as defined in the Unison HomeOwner Agreement), including, without limitation, any such calculation in connection with a **Special Termination** as defined in the Unison HomeOwner Covenant Agreement.

**3.** **Uniform Commercial Code Security Agreement and Fixture Filing**. This HomeOwner Security Instrument is intended to be and shall constitute a security agreement under the New Jersey Uniform Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the New Jersey Uniform Commercial Code. Mortgagor hereby grants to Mortgagee a security interest in those items to secure the performance and payment of the Obligations.

**a.** Mortgagor agrees that Mortgagee may file either this HomeOwner Security Instrument, or a copy of it, or a UCC-1 Financing Statement in the real estate records or other appropriate index and/or in the Office of the Secretary of the State of New Jersey, as a financing statement for any of the items specified above as part of the Property.

**b.** Mortgagee may file such extensions, renewals, amendments and releases as are appropriate to reflect the status of its security interest.

**c.** Mortgagor shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Mortgagee may reasonably require.

**d.** On any default hereunder, Mortgagee shall have the remedies of a secured party under the New Jersey Uniform Commercial Code and may also invoke the remedies in **Section 7** below. In exercising any of these remedies, Mortgagee may proceed against the items of Real Property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Mortgagee's remedies under the New Jersey Uniform Commercial Code or the remedies in **Section 7** below.

**4.** **Absolute Assignment Of Leases And Rents**. Mortgagor hereby irrevocably, absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to all existing and future leases, subleases and licenses relating to the use, occupancy or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds and earnings now or hereafter payable with respect to the ownership, use or occupancy of the Property (collectively the "**Rents**"):

**a.** Mortgagor hereby gives to, and confers upon, Mortgagee the right, power and authority, during the continuance of this HomeOwner Security Instrument, to collect the Rents, reserving unto Mortgagor the right, prior to any default by Mortgagor in payment of the Obligations secured hereby or in performance of any agreement hereunder, to collect and retain such Rents, as they become due and payable.

**b.** Upon any such default, Mortgagee may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations secured hereby, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Attorneys' Fees to the Obligations secured hereby, and in such order as Mortgagee may determine.

Owner's Initials: DS / BS / ____ / ____

**c.** The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application of such rents, issues and profits pursuant to this HomeOwner Security Instrument, shall not cure or waive any default or notice of default under this HomeOwner Security Instrument or invalidate any act done pursuant to such notice.

**d.** Nothing in this section shall permit Mortgagor to lease or rent the Property in contravention of any provision of the Unison HomeOwner Agreement; nor shall anything in this section modify any provision in the Unison HomeOwner Agreement relating to the use, lease or occupancy of the Property.

**5.** **<u>Covenants of Mortgagor Regarding the Property</u>**. Mortgagor hereby agrees as follows:

**a.** To appear in and defend any action or proceeding purporting to affect the security of this HomeOwner Security Instrument or the rights or powers of Mortgagee; and to pay all costs and expenses of Mortgagee (including cost of evidence of title and Attorneys' Fees) incurred: **(i)** in any state, federal, appellate, or bankruptcy court, in any action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this HomeOwner Security Instrument or to collect the Obligations or to protect Mortgagee's rights under this HomeOwner Security Instrument; and/or **(ii)** in connection with the enforcement of any provisions of this HomeOwner Security Instrument or in connection with foreclosure upon the collateral granted under this HomeOwner Security Instrument (whether or not suit is filed).

**b.** To pay before delinquent, all taxes and assessments affecting the Property; and all encumbrances, charges and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this HomeOwner Security Instrument, and all costs, fees and expenses of this HomeOwner Security Instrument.

**(i)** If Mortgagor fails to make any payment or to do any act as provided in this HomeOwner Security Instrument, Mortgagee may (but shall not be obligated to) make the payment or do the act in the required manner and to the extent deemed necessary by Mortgagee to protect the security for this HomeOwner Security Instrument, which payments and related expenses (including Attorneys' Fees) shall also be secured by this HomeOwner Security Instrument.

**(ii)** Such performance by Mortgagee shall not require notice to, or demand on, Mortgagor and shall not release Mortgagor from any obligation under this HomeOwner Security Instrument.

**(iii)** Mortgagee shall have the following related rights and powers: **(A)** to enter upon the Property for the foregoing purposes, **(B)** to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Mortgagee under this HomeOwner Security Instrument, **(C)** to pay, purchase, contest or compromise any encumbrance, charge, or lien that in the judgment of Mortgagee appears to be prior or superior to this HomeOwner Security Instrument, and **(D)** to employ counsel, and to pay such counsel necessary expenses and costs, including Attorneys' Fees.

**c.** To pay immediately upon demand all sums expended by Mortgagee pursuant to this HomeOwner Security Instrument; and to pay interest on any of the foregoing amounts demanded by Mortgagee at a rate not to exceed the maximum rate allowed by law at the time of such demand.

**6.** **<u>Power of Attorney</u>**. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact (such agency being coupled with an interest), and as such attorney-in-fact Mortgagee may, after providing notice to Mortgagor pursuant to the Unison HomeOwner Agreement, without the obligation to do so, in Mortgagee's name, or in the name of Mortgagor, prepare, execute and file or record financing statements, continuation statements, applications for registration and like documents necessary to create, perfect or preserve any of Mortgagee's security interests and rights in or to any of the Property, and, upon a default under this HomeOwner

Owner's Initials: DS / RS / ____ / ____

Security Instrument, take any other action required of Mortgagor; provided, however, that Mortgagee as such attorney-in-fact shall be accountable only for such funds as are actually received by Mortgagee.

7. **<u>Default and Foreclosure</u>**. Upon default by Mortgagor in the performance of or upon breach by Mortgagor of any of the rights and obligations that are secured by this HomeOwner Security Instrument as specified above, Mortgagee may declare all performance and obligations secured by this HomeOwner Security Instrument immediately due by delivery to Mortgagor of a written declaration of default. If any default shall have occurred and is continuing on the part of the Mortgagor, the Mortgagee may take any or all of the following actions, at the same or at different times:

a. **<u>Possession</u>.** Mortgagee may enter upon and take possession of the Property; lease and let the Property; and receive all the rents, income, issues and profits thereof which are overdue, due or to become due; and apply the same, after payment of all necessary charges and expenses, on account of the Obligations hereby secured. Mortgagee is given and granted full power and authority to do any act or thing which the Mortgagor or successors or assignees of the Mortgagor who may then own the Property might or could do in connection with the ownership, use and maintenance of the Property. This covenant becomes effective either with or without any action brought to foreclose this HomeOwner Security Instrument and without applying for a receiver of such rents, if any. Should said rents or any part thereof be assigned without the consent of the holder of this HomeOwner Security Instrument, then the Obligations secured by this HomeOwner Security Instrument shall at the option of the holder hereof become due and payable immediately, anything herein contained to the contrary notwithstanding.

b. **<u>Appointment of Receiver</u>.** Mortgagee may have a receiver of the rents, income, issues and profits of the Property appointed without the necessity of proving either the depreciation or the inadequacy of the value of the security or the insolvency of the Mortgagor or any other person who may be legally or equitably liable for the Obligations secured hereby, and the Mortgagor and each such person waive such proof and consent to the appointment of a receiver.

c. **<u>Fair Rental Payments</u>.** If Mortgagor or any subsequent owner is occupying the Property or any part thereof, it is hereby agreed that the said occupants shall pay such reasonable rental monthly in advance as Mortgagee shall demand for the Property or the part so occupied, and for the use of personal property covered by this HomeOwner Security Instrument or any chattel mortgage.

d. **<u>Acceleration; Remedies</u>**. Mortgagee shall give notice to Mortgagor following Mortgagor's breach of any covenant or agreement in this HomeOwner Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Mortgagor, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the Obligations secured by this HomeOwner Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Mortgagor's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Mortgagor to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other applicable law. If the default is not cured on or before the date specified in the notice, Mortgagee at its option may require immediate peformance in full of all Obligations secured by this HomeOwner Security Instrument without further demand and may foreclose this HomeOwner Security Instrument by judicial proceeding. Mortgagee shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**<u>e.</u>** **<u>Remedies at Law or Equity</u>**. Mortgagee may take any of the remedies otherwise available to it as a matter of law or equity.

Owner's Initials: DS / RS / ____ / ____

**8.** **Liquidated Damages.** Liquidated Damages means an amount equal to the sum of:

**a.** the Investor Interest, as calculated according to the Unison HomeOwner Covenant Agreement;

**b.** if Owner failed to make one or more monetary payments, the sum of all monetary obligations (including, without limitation, all **Unpaid Owner Obligations**) owed to Investor by Owner under the Unison HomeOwner Agreement; and

**c.** any and all amounts, properly chargeable to Owner needed to satisfy Owner's obligations under the Unison HomeOwner Agreement with respect to Owner's mortgage, tax and insurance obligations on the Property, including late fees, reinstatement fees and other penalties.

**9.** **Late Performance.** By accepting performance of any Obligation after its due date, Mortgagee does not waive its right either to require prompt performance when due of all other Obligations or to declare default for such failure to perform.

**10.** **Mortgagee's Powers.** At any time or from time to time, without liability therefor and without notice, upon written request of Mortgagor and presentation of this HomeOwner Security Instrument, and without affecting the personal liability of any person for the performance of the Unison HomeOwner Agreement secured hereby, Mortgagee may: **(a)** release any part of the Property; **(b)** consent to the making of any map or plat of the Property; **(c)** join in granting any easement thereon; and **(d)** join in any extension agreement or any agreement subordinating the lien or charge of this HomeOwner Security Instrument.

**11.** **Defeasance.** If Mortgagor shall well and truly satisfy all Obligations secured hereby at the time and in the manner provided in this HomeOwner Security Instrument and in the Unison HomeOwner Agreement, and Mortgagor shall well and truly abide by and comply with each and every covenant and condition set forth in this HomeOwner Security Instrument and in the Unison HomeOwner Agreement, then these presents and the lien and interest hereby transferred and assigned shall cease, terminate and be void. Mortgagee shall release the Property and renounce any other rights granted to it herein and shall execute, at the request of the Mortgagor, a release of this HomeOwner Security Instrument and any other instrument to that effect deemed necessary or desirable, upon performance being made on the Obligations secured hereby. Mortgagor shall pay any recordation costs. Mortgagee may charge Mortgagor a fee for releasing this HomeOwner Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**12.** **Subordination.** This HomeOwner Security Instrument is subordinate to and junior to that certain Unison HomeOwner Recorded Memorandum which affects the Property and is executed by Mortgagor as "**Owner**" as of the same date as this HomeOwner Security Instrument. Upon any foreclosure of this HomeOwner Security Instrument by Mortgagee, despite such foreclosure, the Unison HomeOwner Recorded Memorandum will remain in full force and effect (until released pursuant to its terms) and binding upon any person who now or hereafter obtains an interest in the Property; and the Unison HomeOwner Agreement will remain in full force and effect and binding upon Mortgagor, and any other person who may agree to be bound by such documents.

**13.** **Successors.** This HomeOwner Security Instrument applies to, inures to the benefit of, and binds all parties to this HomeOwner Security Instrument, their heirs, legatees, devisees, administrators, executors, successors, and assignees. The term "**Mortgagee**" shall include any successor or assignee of Mortgagee's rights in the Unison HomeOwner Agreement and in this HomeOwner Security Instrument, whether or not named as Mortgagee in this HomeOwner Security Instrument. In this HomeOwner Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

Owner's Initials: DS / RS / ___ / ___

14. **Joint and Several Liability.** If more than one person signs this HomeOwner Security Instrument as Mortgagor, the obligations of each signatory shall be joint and several.

15. **Multiple Owners**. If there are multiple Mortgagors of the Property:

**a.** this HomeOwner Security Instrument must be signed by each such Mortgagor;

**b.** all rights and powers specified for Mortgagor in this HomeOwner Security Instrument must be approved and exercised unanimously by all such multiple Mortgagors;

**c.** all such multiple Mortgagors shall be jointly and severally liable for all liabilities and obligations specified for Mortgagor under this HomeOwner Security Instrument;

**d.** notice required to be given by, or to, Mortgagor will be deemed adequately given if given by, or to, any of Mortgagors using the contact information set forth in this HomeOwner Security Instrument; and

**e.** Mortgagee may treat any notice received from any one Mortgagor as notice from all Mortgagors.

16. **Revocable Trust.** If all or any portion of the Property is held in a **Revocable Trust** (as defined in the Unison HomeOwner Agreement):

**a.** all trustees of the Revocable Trust must sign this HomeOwner Security Instrument as Mortgagor in their capacities as trustees of the Revocable Trust, and each trustee of the Revocable Trust who signs this HomeOwner Security Instrument hereby represents and warrants that all trustees of the Revocable Trust have been disclosed to Mortgagee;

**b.** all rights and powers specified for, and all actions required of, Mortgagor in this HomeOwner Security Instrument must be approved and exercised unanimously by all trustees of the Revocable Trust;

**c.** all trustees of the Revocable Trust, in their capacities as trustees, shall be jointly and severally liable with any non-trustee Mortgagor for all liabilities and obligations specified for Mortgagor under this HomeOwner Security Instrument;

**d.** all representations and warranties by Mortgagor in this HomeOwner Security Instrument are made by all trustees of the Revocable Trust on behalf of the Revocable Trust;

**e.** notice required to be given by, or to, any Mortgagor will be deemed adequately given if given by, or to, any of the trustees of the Revocable Trust using the contact information set forth in this HomeOwner Security Instrument; and

**f.** Mortgagee may treat any notice received from any one trustee of the Revocable Trust as notice from all trustees of the Revocable Trust and from Mortgagor.

17. **Incorporation by Reference. Schedule A** to this HomeOwner Security Instrument is hereby incorporated by this reference.

18. **Extent of Lien.** The lien granted under this HomeOwner Security Instrument shall encumber Mortgagor's entire interest in the Property, notwithstanding the fact that the Unison HomeOwner Agreement relates to only a fractional interest in the Property.

19. **No Merger.** So long as any of the obligations under the Unison HomeOwner Agreement remains outstanding and undischarged, unless Mortgagee otherwise consents in writing, the fee estate of Mortgagor in the

Owner's Initials: DS / AS / ____ / ____

Property or any part thereof (including the estate of Mortgagee after exercising the Unison HomeOwner Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Mortgagee or in any other Person.

**20. No Claim of Credit for Taxes**. Mortgagor will not make deduction from or claim credit on the principal or interest secured by this HomeOwner Security Instrument by reason of any governmental taxes, assessments or charges. Mortgagor will not claim any deduction from the taxable value of the Property by reason of this HomeOwner Security Instrument.

[Signatures appear on the following page.]

Owner's Initials: DS / RS / ____ / ____

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH MORTGAGEE, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS HOMEOWNER SECURITY INSTRUMENT, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND MORTGAGEE AS OF THE EFFECTIVE DATE.

**MORTGAGOR HEREBY DECLARES THAT MORTGAGOR HAS READ THIS HOMEOWNER SECURITY INSTRUMENT, HAS RECEIVED A COMPLETELY FILLED IN COPY OF IT WITHOUT CHARGE THEREFOR AND HAS SIGNED THIS HOMEOWNER SECURITY INSTRUMENT AS OF THE EFFECTIVE DATE.**

IN WITNESS WHEREOF, each undersigned Mortgagor has executed this HomeOwner Security Instrument under seal as of the date set forth above.

| Signed, sealed and delivered in the Presence of: | MORTGAGOR: |
|---|---|
| By: [signature] Patrice Driggs, Witness | Sign: [signature]<br>David Santaniello<br>Date: |
| By: ____________, Witness | Sign: ____________<br>Date: 11/9/19 |
| By: [signature] Patrice Driggs, Witness | Sign: [signature]<br>Rosanne D. Santaniello<br>Date: |
| By: ____________, Witness | Sign: ____________<br>Date: |
| By: ____________, Witness | Sign: ____________<br>Date: |
| By: ____________, Witness | Sign: ____________<br>Date: |

Owner's Initials: DS / RS / ____ / ____

© 2019, **Unison**

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH MORTGAGEE, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS HOMEOWNER SECURITY INSTRUMENT, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND MORTGAGEE AS OF THE EFFECTIVE DATE.

**MORTGAGOR HEREBY DECLARES THAT MORTGAGOR HAS READ THIS HOMEOWNER SECURITY INSTRUMENT, HAS RECEIVED A COMPLETELY FILLED IN COPY OF IT WITHOUT CHARGE THEREFOR AND HAS SIGNED THIS HOMEOWNER SECURITY INSTRUMENT AS OF THE EFFECTIVE DATE.**

IN WITNESS WHEREOF, each undersigned Mortgagor has executed this HomeOwner Security Instrument under seal as of the date set forth above.

| Signed, sealed and delivered in the Presence of: | MORTGAGOR |
|---|---|
| By: ______________, Witness | Sign: D Santaniello x<br>David Santaniello |
| | Date: 11/9/19 x |
| By: ______________, Witness | Sign: ______________ |
| | Date: R Santaniello |
| By: ______________, Witness | Sign: 11/9/19 x<br>Rosanne D. Santaniello |
| | Date: ______________ x |
| By: ______________, Witness | Sign: ______________ |
| | Date: ______________ |
| By: ______________, Witness | Sign: ______________ |
| | Date: ______________ |
| By: ______________, Witness | Sign: ______________ |
| | Date: ______________ |

Owner's Initials: DS / RS / ____ / ____

**ACKNOWLEDGMENT**

STATE OF NEW JERSEY)
) ss.
COUNTY OF ) Morris

On nov 9th, 20 19, before me Patrice Snuggs, Notary Public, personally appeared David Santaniello & Rosanne Santaniello who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New Jersey that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

Signature ____________________

(seal)

Owner's Initials: DS / RS / ____ / ____

## SCHEDULE A

## LEGAL DESCRIPTION

That certain real property situated in the City of Morristown, County of Morris, State of New Jersey, described as follows:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Morris, County of Morris, State of New Jersey:

BEGINNING at a point in the southeasterly sideline of Foote's Lane where the same is intersected by the division line between lands herein described and lands shown on "Final Plat of Foote's Lane, Subdivision of Block 341, Lots 95 thru 120" filed in the Morris County Clerk's Office on September 11, 1981, as Map No. 4023, said point being distant 333.40 feet measured northwesterly along said sideline from the new sideline of James Street, 33.00 feet from centerline, extended and running; thence

1. Along the sideline of Foote's Lane, south 44 degrees 06 minutes 10 seconds east 142.20 feet to a point; thence
2. Along land, now or formerly of Morgan, being Lot 57.02 shown on "Minor Subdivision of Lands" prepared for Stephen and Diane Morgan by Richard F. Smith, Jr., P.L.S. dated June 28, 1990, south 38 degrees 27 minutes 20 seconds west 338.01 feet to a point in the line of Lot 57.01 as shown. On said map; thence
3. Along lot 57.01, north 48 degrees 05 minutes 36 seconds west 141.26 feet to a point in the aforementioned line of lands shown on "Final Plat of Foote's Lane Subdivision", thence
4. Along said line, north 38 degrees 27 minutes 20 seconds east 347.92 feet to a point in the aforementioned sideline of Foote's Lane and the point of BEGINNING.

FURTHER BOUNDED AND DESCRIBED IN ACCORDANCE WITH A SURVEY MADE BY D. P. SWEENEY & ASSOC., INC. dated 7-19-06 AS FOLLOWS:

BEGINNING At a point on the southwesterly sideline of Footes Lane (50 feet wide), said point being distant southeasterly 217.58 feet from the intersection of said sideline with the southeasterly sideline of Trent Court (50 feet wide), if both were extended and running, thence:

1. Along Footes Lane, south 44 degrees 03 minutes 30 seconds east a distance of 142.20 feet to a capped pin, thence;
2. Leaving Footes Lane, south 38 degrees 30 minutes 00 seconds west a distance of 338.01 feet to a point, thence;
3. North 48 degrees 02 minutes 56 seconds west a distance of 141.26 feet to a point, thence;
4. North 38 degrees 30 minutes 00 seconds east a distance of 347.92 feet to the point and place of BEGINNING.

Parcel Identification Number: 6302-3

[end of legal description]

Street Address:
4 Footes Ln, Morristown, NJ 07960



Owner's Initials: DS / RS / ______ / ______

© 2019, Unison

**MARKET VALUE AND SPECIAL TERMINATION ADDENDUM TO UNISON HOMEOWNER AGREEMENT**

AGREEMENT ID Number: FRX-231163

Reference is made to that certain **Unison HomeOwner Agreement** by and between David Santaniello and Rosanne D. Santaniello ("**Owner**") and Unison Agreement Corp., its successors and assigns ("**Investor**"), in connection with the property at 4 Footes Ln, Morristown, NJ, 07960 ("**Property**"), consisting of (a) the Unison HomeOwner Covenant Agreement; (b) the Unison HomeOwner Option Agreement; (c) a memorandum giving notice of the Option and the Unison HomeOwner Agreement, recorded in the county where the Property is located ("Unison HomeOwner Recorded Memorandum"); and (d) a deed of trust (or mortgage) and security agreement, together with any riders thereto giving notice of the Option as a secured interest, recorded in the county where the Property is located ("Unison HomeOwner Security Instrument").

The "Market Value" applicable under the terms of the Unison HomeOwner Agreement, as reflected in Schedule B of the Unison HomeOwner Covenant Agreement, is amended to read as follows:

| Covenant Section | Event | Market Value Equals |
|---|---|---|
| § 4.A | A Permitted Sale *before* the five-year anniversary of the Effective Date | The greater of (i) the Effective Sale Price or (ii) the Original Agreed Value.<br>The "Effective Sale Price" is the monetary amount for which the Property is to be sold by you or Investor, as applicable, to a third-party buyer, as set forth by the escrow holder. The Effective Sale Price does not include any deduction for any: (a) Closing Costs; (b) payments to extinguish liens on the Property; (c) outstanding taxes; (d) Appraisal Expenses; and/or (e) amounts payable to Investor. |

The "Special Termination By Owner" under the terms of the Unison HomeOwner Agreement, as reflected in Section 8 of the Unison HomeOwner Option Agreement and Section 5 of the Unison HomeOwner Covenant Agreement, are amended, respectively, as follows:

> 8. Special Termination by You After Five Years. At any time following the fifth anniversary of the Effective Date but prior to the occurrence of any Exercise Event, you may request a "Special Termination" of the Option pursuant to Section 6 of the Covenant, by payment of an amount called the "Special Termination Price." That Special Termination Price is equal to the greater of (a) the Investor Interest (defined in Section 7 above), or (b) the sum of the Initial Payment and any Unpaid Owner Obligations.
>
> 5.1 Under the terms of the HomeOwner Agreement, you and Investor have agreed that the Option may not be exercised until the occurrence of an Exercise Event. However, Investor agrees that after the fifth anniversary of the Effective Date, you may request what is called a "Special Termination" of the Option [...]

[signatures on following page]

**INVESTOR:**

By: Unison Agreement Corp.

______________________________
Ismael Casas, Jr.

Title:

Vice President

| | |
|---|---|
| Owner: | Co-Owner: |
| Sign: D Santaniello | Sign: Rosanne D Santaniello |
| David Santaniello | Rosanne D. Santaniello |
| Date: 11/9/19 | Date: 11/9/19 |
| Sign: __________ | Sign: __________ |
| Date: __________ | Date: __________ |

**Morris County Recording Cover Sheet**

**Honorable Ann F. Grossi, Esq.**
**Morris County Clerk**

*Official Use Only - Realty Transfer Fee*

*Official Use Only - Barcode*

| | |
|---|---|
| Date of Document: 09/11/2019 | Type of Document: UCC 3 TERMINATION |
| First Party Name: Dave Santaniello | Second Party Name: SunPower Residential I, LLC |
| Additional Parties: | |

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | |
|---|---|
| Block: | Lot: |
| Municipality: | |
| Consideration: | |
| Mailing Address of Grantee: | |

| THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOK & PAGE INFORMATION FOR AN ASSIGNMENT, RELEASE, OR SATISFACTION OF A MORTGAGE OR AN AGREEMENT RESPECTING A MORTGAGE | |
|---|---|
| Original Book: | Original Page: |

**MORRIS COUNTY RECORDING COVER SHEET**

**Please do not detach this page from the original document as it contains important recording information and is part of the permanent record.**

**WARNING: Information contained on the Recording Cover Sheet must exactly match the information within the attached document or the document will be rejected and returned.**

[redacted]

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: Fax:

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 25900 - SunPower

SunPower Capital, LLC
PO Box 844863
Los Angeles, CA 90084-4863

71624650
NJNJ
FIXTURE

File with: Morris, NJ

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2012100993 12/28/2012 CC NJ Morris

1b. ☒ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☒ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes: This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to: ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c ☐ ADD name: Complete item 7a or 7b, and item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Santaniello | Dave | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
SunPower Residential I, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: Santaniello, Dave
71624650 SunPower Residential I LLC 021-0013565-001



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form
2012100993 12/28/2012 CC NJ Morris

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME
SunPower Residential I, LLC

OR 12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Santaniello | Dave | | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):
Debtor Name and Address:
Santaniello, Dave - 4 Footes Lane , Morristown, NJ 07960

Secured Party Name and Address:
SunPower Residential I, LLC - PO Box 82387 , Austin, TX 78708-2387

15. This FINANCING STATEMENT AMENDMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☒ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:
Being commonly known as 4 Foote's Lane, Morris, New Jersey.

Being the same premises conveyed to the Grantor herein by Deed from Charles H. Green and Renee T. Wingo, husband and wife, dated July 7, 2003 and recorded July 11, 2003 in the Morris County Clerk¿s Office in Deed Book 5883, page 8.

18. MISCELLANEOUS: 71624650-NJ-27 25900 - SunPower Capital, LL SunPower Residential I, LLC File with: Morris, NJ SunPower Residential I LLC 021-0013565-001



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

**This Document Prepared By:**
Robert C. Litwack, Esq.
On behalf of Coast to Coast Document Services, LLC
124 W Freistadt Road, Unit 64
Thiensville, WI 53092

**Return to After Recording:**
Vantage Point Title
25400 US Hwy 19 North
Suite 135
Clearwater, FL 33763
Reference Number: NJ531995

**Mail Tax Statements to:**
David Santaniello and Rosanne D. Santaniello
4 Footes Lane
Morristown, NJ 07960

Tax Map Reference. (N.J.S.A. 46:15-2.1)
Block 6302 Lot 3
Township of Morris
Morris County, New Jersey

---

**QUIT CLAIM DEED**

THIS DEED is made and entered into on this _____ day of ____________, 20____, by and between **DAVID SANTANIELLO AND ROSANNE D. SANTANIELLO, who acquired title as ROSEANNE D'AMICO, husband and wife,** a mailing address of 4 Footes Lane, Morristown, NJ 07960, hereinafter referred to as Grantors, and **DAVID SANTANIELLO AND ROSANNE D. SANTANIELLO, husband and wife**, a mailing address of 4 Footes Lane, Morristown, NJ 07960, hereinafter referred to as Grantees.

WITNESSETH: That the said Grantors, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), cash in hand paid (the receipt of which is hereby acknowledged by both Grantors

and Grantees) do this day remise, release, quitclaim and convey to the said Grantees the following described real estate located in Morris County, New Jersey:

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION.

Also known as: 4 Footes Lane, Morristown, NJ 07960

SUBJECT TO EASEMENTS, COVENANTS, CONDITIONS, RESTRICTIONS, RESERVATIONS, AND LIMITATIONS OF RECORD, IF ANY.

Being all the same Property conveyed to Grantors by virtue of a Deed recorded August 17, 2006 among the Official Property Records of Morris County, New Jersey in Book 20596 at Page 0655.

THIS DEED is a Quit Claim Deed. By use of this deed Grantors make NO PROMISES or representations of fact relating to Grantors' ownership of the Property or relating to the state or quality of title to the Property. Grantors only transfers whatever interest, IF ANY, Grantors have in the Property to the Grantees.

TO HAVE AND TO HOLD the lot or parcel above described together with all and singular the rights, privileges, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said Grantees and unto Grantees' heirs, administrators, successors and assigns, forever in FEE SIMPLE.

And that said conveyance does not render the Grantors insolvent, nor is it for the purpose of defrauding any of the creditors of the Grantors.

IN WITNESS WHEREOF, the said Grantors have signed and sealed this deed, the day and year above written.

D Santaniello

David Santaniello

Rosanne D Santaniello

Rosanne D. Santaniello, who acquired title as Roseanne D'Amico

Rosanne D'Amico

STATE OF NJ
COUNTY OF Morris SS.:

I CERTIFY that on Nov 9th, 2019 David Santaniello and Rosanne D. Santaniello, who acquired title as Roseanne D'Amico personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):
(a) is named in and personally signed this Deed;
(b) signed, sealed and delivered this Deed as his or her act and deed; and
(c) made this Deed for $10.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)

(Print name and title below signature)

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

**EXHIBIT "A"**

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Morris, County of Morris, State of New Jersey:

BEGINNING at a point in the southeasterly sideline of Foote's Lane where the same is intersected by the division line between lands herein described and lands shown on "Final Plat of Foote's Lane, Subdivision of Block 341, Lots 95 thru 120" filed in the Morris County Clerk's Office on September 11, 1981, as Map No. 4023, said point being distant 333.40 feet measured northwesterly along said sideline from the new sideline of James Street, 33.00 feet from centerline, extended and running; thence

1. Along the sideline of Foote's Lane, south 44 degrees 06 minutes 10 seconds east 142.20 feet to a point; thence

2. Along land, now or formerly of Morgan, being Lot 57.02 shown on "Minor Subdivision of Lands" prepared for Stephen and Diane Morgan by Richard F. Smith, Jr., P.L.S. dated June 28, 1990, south 38 degrees 27 minutes 20 seconds west 338.01 feet to a point in the line of Lot 57.01 as shown. On said map; thence

3. Along lot 57.01, north 48 degrees 05 minutes 36 seconds west 141.26 feet to a point in the aforementioned line of lands shown on "Final Plat of Foote's Lane Subdivision", thence

4. Along said line, north 38 degrees 27 minutes 20 seconds east 347.92 feet to a point in the aforementioned sideline of Foote's Lane and the point of BEGINNING.

FURTHER BOUNDED AND DESCRIBED IN ACCORDANCE WITH A SURVEY MADE BY D. P. SWEENEY & ASSOC., INC. dated 7-19-06 AS FOLLOWS:

BEGINNING At a point on the southwesterly sideline of Footes Lane (50 feet wide), said point being distant southeasterly 217.58 feet from the intersection of said sideline with the southeasterly sideline of Trent Court (50 feet wide), if both were extended and running, thence:

1. Along Footes Lane, south 44 degrees 03 minutes 30 seconds east a distance of 142.20 feet to a capped pin, thence;

2. Leaving Footes Lane, south 38 degrees 30 minutes 00 seconds west a distance of 338.01 feet to a point, thence;

3. North 48 degrees 02 minutes 56 seconds west a distance of 141.26 feet to a point, thence;

4. North 38 degrees 30 minutes 00 seconds east a distance of 347.92 feet to the point and place of BEGINNING.

Parcel ID / APN: 6302-3

Date: ____________

Robert C. Litwack, Esq.
817 East Landis Avenue
Vineland, NJ 08360

RE: Request to Prepare Deed for Sale of Property
4 Footes Lane, Morristown, NJ 07960
Tax Map: Block 6302 Lot 3
From: David Santaniello and Rosanne D. Santaniello, who acquired title as Roseanne D'Amico
To: David Santaniello and Rosanne D. Santaniello
For: $10.00
Reference No: NJ531995

Dear Mr. Litwack:

Please accept this letter as your written authorization to prepare a deed for use in the matter referred to above. I will have our realtor or title company (or their agent) deliver this written authorization to you and provide you with the necessary information to prepare the deed or I will do so myself. You may prepare the deed from the title report obtained by the buyer (or an old deed provided by me) and are authorized to have the title company or person conducting the closing attach a readable legal description if necessary or a revised one if that is what is going to be insured.

I understand and agree you are willing to undertake a LIMITED REPRESENTATION of me for the SOLE purpose of preparing a deed with the information I give to you. YOU ARE NOT TO DO ANYTHING ELSE WHATSOEVER. For example, you are NOT to review the title commitment, if any, for conditions, exceptions or limitations of the insurance liability of the title company; prepare an affidavit of title; check to see if I have asked for the correct type of deed; receive or read any title report to the property beyond that which is necessary to complete the Deed; check to see if my instructions make sense; keep a copy of the Deed; check to see if I get the money or other things I am supposed to get for giving this Deed; attend the closing; nor will you check to see if you are representing anyone in any unrelated matter who has a legal position that conflicts with mine. You will NOT do those things.

In relation to transactions like mine the New Jersey Supreme Court has said, "The Court strongly believes that both parties should retain counsel for their own protection and that the savings in lawyer's fees are not worth the risks involved in proceeding without counsel." The limited representation I am requesting is NOT the type of counsel recommended by the New Jersey Supreme Court and it is like I am proceeding without counsel or a lawyer. I am aware that I can have full legal representation in this matter if I was willing to pay for it. I am choosing not to do so.

Very truly yours,

D Santaniello
______________________________
David Santaniello

Rosanne D Santaniello
______________________________
Rosanne D. Santaniello, who acquired title as Roseanne D'Amico
Rosanne D'Amico

<u>Sign & Return **THIS PAGE ONLY** To</u>
Robert C. Litwack, Esq.
On behalf of Coast to Coast Document Services, LLC
124 W Freistadt Road, Unit 64
Thiensville, WI 53092
Fax: (856) 455-5600
E-mail: litwacklaw@aol.com

State of New Jersey

GIT/REP-3 (9-2015)

# SELLER'S RESIDENCY CERTIFICATION/EXEMPTION

(Please Print or Type)

## SELLER'S INFORMATION

Name(s)
DAVID SANTANIELLO AND ROSANNE D. SANTANIELLO, who acquired title as ROSEANNE D'AMICO

Current Street Address
4 Footes Lane

| City, Town, Post Office Box | State | Zip Code |
|---|---|---|
| Morristown | NJ | 07960 |

## PROPERTY INFORMATION

| Block(s) | Lot(s) | Qualifier |
|---|---|---|
| 6302 | 3 | |

Street Address
4 Footes Lane

| City, Town, Post Office Box | State | Zip Code |
|---|---|---|
| Morristown | NJ | 07960 |

| Seller's Percentage of Ownership | Total Consideration | Owner's Share of Consideration | Closing Date |
|---|---|---|---|
| 100 % | $0 | $ | |

## SELLER'S ASSURANCES (Check the Appropriate Box) (Boxes 2 through 14 apply to Residents and Nonresidents)

1. ☒ Seller is a resident taxpayer (individual, estate, or trust) of the State of New Jersey pursuant to the New Jersey Gross Income Tax Act, will file a resident gross income tax return, and will pay any applicable taxes on any gain or income from the disposition of this property.
2. ☐ The real property sold or transferred is used exclusively as a principal residence as defined in 26 U.S. Code section 121.
3. ☐ Seller is a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.
4. ☐ Seller, transferor, or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.
5. ☐ Seller is not an individual, estate, or trust and is not required to make an estimated gross income tax payment.
6. ☐ The total consideration for the property is $1,000 or less so the seller is not required to make an estimated income tax payment.
7. ☐ The gain from the sale is not recognized for federal income tax purposes under 26 U.S. Code section 721, 1031, or 1033 (CIRCLE THE APPLICABLE SECTION). If the indicated section does not ultimately apply to this transaction, the seller acknowledges the obligation to file a New Jersey income tax return for the year of the sale and report the recognized gain.
   ☐ Seller did not receive non-like kind property.
8. ☐ The real property is being transferred by an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this State.
9. ☐ The real property being sold is subject to a short sale instituted by the mortgagee, whereby the seller agreed not to receive any proceeds from the sale and the mortgagee will receive all proceeds paying off an agreed amount of the mortgage.
10. ☐ The deed is dated prior to August 1, 2004, and was not previously recorded.
11. ☐ The real property is being transferred under a relocation company transaction where a trustee of the relocation company buys the property from the seller and then sells the house to a third party buyer for the same price.
12. ☐ The real property is being transferred between spouses or incident to a divorce decree or property settlement agreement under 26 U.S. Code section 1041.
13. ☐ The property transferred is a cemetery plot.
14. ☐ The seller is not receiving net proceeds from the sale. Net proceeds from the sale means the net amount due to the seller on the settlement sheet.

## SELLER'S DECLARATION

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein may be punished by fine, imprisonment, or both. I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete. By checking this box ☐ I certify that a Power of Attorney to represent the seller(s) has been previously recorded or is being recorded simultaneously with the deed to which this form is attached.

11/9/19
Date

D Santaniello
Signature
(Seller) Please indicate if Power of Attorney or Attorney in Fact

11/9/19
Date

Rosanne D Santaniello Rosanne D'Amico
Signature
(Seller) Please indicate if Power of Attorney or Attorney in Fact

## Seller's Residency Certification/Exemption Instructions

Individuals, estates, trusts, or any other entity selling or transferring property in New Jersey must complete this form if they are not subject to the gross income tax estimated payment requirements under N.J.S.A. 54A:8-9. A nonresident seller is required to make an estimated income tax payment if none of the Seller's Assurances apply.

Name(s): Enter the name of the seller. If there is more than one seller, each must complete a separate form unless they are a married/civil union couple that files their income tax returns jointly.

Address: Enter the seller's primary residence or place of business. Do not use the address of the property being sold. The seller is considered to be a nonresident unless a new residence (permanent place of abode, domicile) has been established in New Jersey and the new residence is listed here. Part-year residents are considered nonresidents.

Property Information: Enter the information listed on the deed of the property being sold. Enter the seller's percentage of ownership, the total consideration for the transaction, the seller's share of that consideration, and the closing date.

Consideration: "Consideration" means, in the case of any deed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is assumed and agreed to be paid by the grantee and any other lien or encumbrance not paid, satisfied or removed in connection with the transfer of title. If there is more than one owner, indicate the seller's portion of the total consideration received. If the total consideration for the property is $1,000 or less, the seller must check box 6 under Seller's Assurances.

Seller's Assurances: Check the appropriate box(es). If one or more of the Seller's Assurances applies, the seller is not required to make an estimated income tax payment at this time.

Any seller claiming the principal residence exemption (box 2) must also be claiming an income/gain exclusion for the property being sold on their federal income tax return (26 U.S. Code section 121).

1031 like-kind exchange: A nonresident who completes the GIT/REP-3 and claims exemption for a 1031 transaction (box 7) must show the value of the like-kind property received. If the transaction includes non-like kind property (i.e. money, stocks, etc), the seller must also compete the GIT/REP-1, Nonresident Seller's Tax Declaration, show the greater of the consideration or the fair market value of the non-like kind property received, and remit an estimated tax payment of 2% of that amount. If the transaction is a deferred like-kind exchange and the seller receives non-like kind property, the qualified intermediary (QI) must remit an estimated tax payment of 2% of the greater of the consideration or the fair market value of any non-like kind property when the 1031 transaction is completed. If the deferred exchange is voided, the QI must complete a GIT/REP-1, Nonresident Seller's Tax Declaration, and remit an estimated tax payment of 2% of the total consideration with an NJ-1040-ES Voucher.

Example: Mr. Smith is a nonresident of New Jersey who exchanges rental property A with a fair market value of $1.2 million for rental property B with a fair market value of $1.0 million and receives $200,000 in cash (non-like kind property). An estimated tax payment is required on the $200,000 non-like kind property for nonresidents.

| | |
|---|---|
| PROPERTY A | $1,200,000 |
| PROPERTY B | $1,000,000 |
| CASH $ | $ 200,000 |
| Estimated tax payment for GIT/REP-1 | $ 4,000 |

Signature: The seller must sign and date the Seller's Declaration. If the seller has appointed a representative who is signing the Seller's Declaration on their behalf, either the Power of Attorney executed by the seller must have been previously recorded or recorded with the deed to which this form is attached, or a letter signed by the seller granting authority to the representative to sign this form must be attached.

The seller must give the completed GIT/REP-3 to the settlement agent at closing. The county clerk will attach this form to the deed when recording it. If the form is not completed in its entirety, of if the settlement agent does not submit the original form with the deed, the county clerk will not record the deed.

RTF-1 (Rev. 7/14/10)
MUST SUBMIT IN DUPLICATE

STATE OF NEW JERSEY

**AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER**

(Chapter 49, P.L.1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)

**BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM.**

STATE OF NEW JERSEY
} SS. County Municipal Code
COUNTY Morris 1422

**FOR RECORDER'S USE ONLY**
Consideration $ ______
RTF paid by seller $ ______
Date ______ By ______
*Use symbol "C" to indicate that fee is exclusively for county use.

MUNICIPALITY OF PROPERTY LOCATION Morris

(1) PARTY OR LEGAL REPRESENTATIVE *(Instructions #3 and #4 on reverse side)*

Deponent, DAVID SANTANIELLO (Name), being duly sworn according to law upon his/her oath, deposes and says that he/she is the GRANTOR (Grantor, Legal Representative, Corporate Officer, Officer of Title Company, Lending Institution, etc.) in a deed dated ______ transferring real property identified as Block number 6302 Lot number 3 located at 4 Footes Lane, Morristown, NJ 07960 (Street Address, Town) and annexed thereto.

(2) CONSIDERATION $ 0.00 *(Instructions #1 and #5 on reverse side)* ☐ no prior mortgage to which property is subject.

(3) Property transferred is Class 4A 4B 4C (circle one). If property transferred is Class 4A, calculation in Section 3A below is required.

(3A) **REQUIRED CALCULATION OF EQUALIZED VALUATION FOR ALL CLASS 4A (COMMERCIAL) PROPERTY TRANSACTIONS:**
*(Instructions #5A and #7 on reverse side)*

**Total Assessed Valuation ÷ Director's Ratio = Equalized Assessed Valuation**

$ ______ ÷ ______ % = $ ______

If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed value. If Director's Ratio is equal to or in excess of 100%, the assessed value will be equal to the equalized valuation.

(4) FULL EXEMPTION FROM FEE *(Instruction #8 on reverse side)*
Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L. 1968, as amended through C. 66, P.L. 2004, for the following reason(s). Mere reference to exemption symbol is insufficient. Explain in detail.
(i) Between husband and wife

(5) PARTIAL EXEMPTION FROM FEE *(Instruction #9 on reverse side)*
**NOTE:** All boxes below apply to grantor(s) *only*. **ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED.** Failure to do so will void claim for partial exemption. Deponent claims that this deed transaction is exempt from State portions of the Basic, Supplemental, and General Purpose Fees, as applicable, imposed by C. 176, P.L. 1975, C. 113, P.L. 2004, and C. 66, P.L. 2004 for the following reason(s):

A. **SENIOR CITIZEN** Grantor(s) ☐ 62 years of age or over.* *(Instruction #9 on reverse side for A or B)*
B. **BLIND PERSON** Grantor(s) ☐ legally blind or; *
**DISABLED PERSON** Grantor(s) ☐ permanently and totally disabled ☐ receiving disability payments ☐ not gainfully employed*

Senior citizens, blind persons, or disabled persons must also meet **all of the following** criteria:
☐ Owned and occupied by grantor(s) at time of sale. ☐ Resident of State of New Jersey.
☐ One or two-family residential premises. ☐ Owners as joint tenants must all qualify.

*IN CASE OF HUSBAND AND WIFE, PARTNERS IN A CIVIL UNION COUPLE, ONLY ONE GRANTOR NEED QUALIFY IF TENANTS BY THE ENTIRETY.

C. **LOW AND MODERATE INCOME HOUSING** *(Instruction #9 on reverse side)*
☐ Affordable according to H.U.D. standards. ☐ Reserved for occupancy.
☐ Meets income requirements of region. ☐ Subject to resale controls.

(6) NEW CONSTRUCTION *(Instructions #2, #10, #12 on reverse side)*
☐ Entirely new improvement. ☐ Not previously occupied.
☐ Not previously used for any purpose. ☐ **"NEW CONSTRUCTION"** printed clearly at top of first page of the deed.

(7) RELATED LEGAL ENTITIES TO LEGAL ENTITIES *(Instructions #5, #12, #14 on reverse side)*
☐ No prior mortgage assumed or to which property is subject at time of sale.
☐ No contributions to capital by either grantor or grantee legal entity.
☐ No stock or money exchanged by or between grantor or grantee legal entities.

(8) Deponent makes this Affidavit to induce county clerk or register of deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Subscribed and sworn to before me this 7 day of NOV ~~20~~ 2019 Patrice Snuggs

[signature] Signature of Deponent

DAVID SANTANIELLO
Grantor Name

4 Footes Lane, Morristown, NJ
Deponent Address

4 Footes Lane, Morristown, NJ
Grantor Address at Time of Sale

XXX-XXX- 2 4 7
Last three digits in Grantor's Social Security Number

Vantage Point Title, Inc.
Name/Company of Settlement Officer

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

**FOR OFFICIAL USE ONLY**
Instrument Number ______ County ______
Deed Number ______ Book ______ Page ______
Deed Dated ______ Date Recorded ______

County recording officers shall forward one copy of each RTF-1 form when Section 3A is completed to:

**STATE OF NEW JERSEY**
**PO BOX 251**
**TRENTON, NJ 08695-0251**
**ATTENTION: REALTY TRANSFER FEE UNIT**

The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and it may not be altered or amended without prior approval of the Director. For information on the Realty Transfer Fee or to print a copy of this Affidavit, visit the Division's website at: **www.state.nj.us/treasury/taxation/lpt/localtax.shtml.**

**INSTRUCTIONS FOR FILING FORM RTF-1, AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER**

**1. STATEMENT OF CONSIDERATION AND REALTY TRANSFER FEE PAYMENT ARE PREREQUISITES FOR DEED RECORDING**

No county recording officer shall record any deed evidencing transfer of title to real property unless (a) the consideration is recited in the deed, or (b) an Affidavit by one or more of the parties named in the deed or by their legal representatives declaring the consideration is annexed for recording with the deed, and (c) for conveyances and transfers of property for which the total consideration recited in the deed is not in excess of $350,000, a fee is remitted at the rate of $2.00/$500 of consideration or fractional part thereof not in excess of $150,000; $3.35/$500 of consideration or fractional part thereof in excess of $150,000 but not in excess of $200,000; and $3.90/$500 of consideration or fractional part thereof in excess of $200,000. For transfers of property for which the total consideration recited in the deed is in excess of $350,000, a fee is remitted at the rate of $2.90/$500 of consideration or fractional part not in excess of $150,000; $4.25/$500 of consideration or fractional part thereof in excess of $150,000 but not in excess of $200,000; $4.80/$500 of consideration or fractional part thereof in excess of $200,000; $5.30/$500 of consideration or fractional part thereof in excess of $550,000 but not in excess of $850,000; $5.80/$500 of consideration or fractional part thereof in excess of $850,00 but not in $1,000,000; and $6.05/$500 of consideration or fractional part thereof in excess of $1,000,000, which fee shall be paid in addition to the recording fees imposed by Chapter 123, P.L. 1965, Section 2 (C. 22A:4-4.1) as amended by Chapter 370, P.L. 2001, through Chapter 66, P.L. 2004, which fee shall be paid to the county recording officer at the time the deed is offered for recording/transfer. Of these fees, $.75/$500 of consideration or fractional part in excess of $150,000 paid to the State Treasurer is credited to the Neighborhood Preservation Nonlapsing Revolving Fund.

**2. WHEN AFFIDAVIT MUST BE ANNEXED TO DEED**

This Affidavit must be annexed to and recorded with all deeds when entire consideration is not recited in deed or the acknowledgement or proof of the execution, when the grantor claims a total or partial exemption from the fee, Class 4 property that includes commercial, industrial, or apartment property, and for transfers of "new construction." (See Instructions #10 and #12 below.)

**3. LEGAL REPRESENTATIVE**

*"Legal representative"* is to be interpreted broadly to include any person actively and responsibly participating in the transaction, such as, but not limited to: an attorney representing one of the parties; a closing officer of a title company or lending institution participating in the transaction; a holder of power of attorney from grantor or grantee.

**4. OFFICER OF CORPORATE GRANTOR/OFFICER OF TITLE COMPANY OR LENDING INSTITUTION**

Where a deponent is an officer of corporate grantor, state the name of corporation and officer's title or where a deponent is a closing officer of a title company or lending institution participating in the transaction, state the name of the company or institution and officer's title.

**5. CONSIDERATION**

*"Consideration"* means in the case of any deed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, <u>including the remaining amount of any prior mortgage to which the transfer is subject or which is assumed and agreed to be paid by the grantee and any other lien or encumbrance not paid, satisfied or removed in connection with the transfer of title.</u> (Chapter 49, P.L. 1968, Section 1, as amended.)

**5A. CLASS 4A "COMMERCIAL PROPERTIES" DEFINED**

Class 4A "Commercial properties" as defined in **N.J.A.C.** 18:12-2.2 means *"any other type of income-producing property other than property in classes 1, 2, 3A, 3B, and those properties included in classes 4B and 4C."* A quarterly audit of all Class 4A sales submitted by the municipal assessor through the SR-1A/equalization process will determine whether a Class 4A transaction was recorded without proper documentation and the required Affidavits of Consideration.

**6. DIRECTOR'S RATIO**

*"Director's Ratio"* means the average ratio of assessed to true value of real property for each taxing district as determined by the Director, Division of Taxation, in the Table of Equalized Valuations promulgated annually on or before October 1 in each year pursuant to **N.J.S.A.** 54:1-35.1. The Table is used in the calculation and apportionment of distributions pursuant to the State School Aid Act of 1954.

**7. EQUALIZED VALUE**

*"Equalized Value"* means the assessed value of the property in the year that the transfer is made, divided by the Director's Ratio. The Table of Equalized Valuations is promulgated annually on or before October 1 in each year pursuant to **N.J.S.A.** 54:1-35.1.

**(Example: Assessed Value = $1,000,000; Director's Ratio = 80%. $1,000,000 ÷ .80 = $1,250,000)**

**8. FULL EXEMPTION FROM THE REALTY TRANSFER FEE (GRANTOR/GRANTEE)**

The fee imposed by this Act shall not apply to a deed:

(a) For consideration of less than $100; (b) By or to the United States of America, this State, or any instrumentality, agency or subdivision; (c) Solely in order to provide or release security for a debt or obligation; (d) Which confirms or corrects a deed previously recorded; (e) On a sale for delinquent taxes or assessments; (f) On partition; (g) By a receiver, trustee in bankruptcy or liquidation, or assignee for the benefit of creditors; (h) Eligible to be recorded as an "ancient deed" pursuant to R.S. 46:16-7; (i) Acknowledged or proved on or before July 3, 1968; (j) Between husband and wife/civil union partners, or parent and child; (k) Conveying a cemetery lot or plot; (l) In specific performance of a final judgment; (m) Releasing a right of reversion; (n) Previously recorded in another county and full Realty Transfer Fee paid or accounted for as evidenced by written instrument, attested to by the grantee and acknowledged by the county recording officer of the county of such prior recording, specifying the county, book, page, date of prior recording, and amount of Realty Transfer Fee previously paid; (o) By an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this State; (p) Recorded within 90 days following the entry of a divorce/dissolution decree which dissolves the marriage/civil union partnership between grantor and grantee; (q) Issued by a cooperative corporation, as part of a conversion of all of the assets of the cooperative corporation into a condominium, to a shareholder upon the surrender by the shareholder of all of the shareholder's stock in the cooperative corporation and the proprietary lease entitling the shareholder to exclusive occupancy of a portion of the property owned by the corporation.

**9. PARTIAL EXEMPTION FROM THE REALTY TRANSFER FEE (C. 176, P.L. 1975; C. 113, P.L. 2003; C. 66 P.L. 2004)**

The following transfers of title to real property shall be exempt from State portions of the Basic Fee, Supplemental Fee, and General Purpose Fee, as applicable: 1. The sale of any one or two-family residential premises which are owned and occupied by a senior citizen, blind person, or disabled person who is the seller in such transaction; provided, however, that except in the instance of a husband and wife/partners in a civil union couple, no exemption shall be allowed if the property being sold is owned as joint tenants and one or more of the owners is not a senior citizen, blind person, or disabled person; 2. The sale of Low and Moderate Income Housing conforming to the requirements as established by this Act.

For the purposes of this Act, the following definitions shall apply:

*"Blind person"* means a person whose vision in his better eye with proper correction does not exceed 20/200 as measured by the Snellen chart or a person who has a field defect in his better eye with proper correction in which the peripheral field has contracted to such an extent that the widest diameter of visual field subtends an angular distance no greater than 20°.

*"Disabled person"* means any resident of this State who is permanently and totally disabled, unable to engage in gainful employment, and receiving disability benefits or any other compensation under any federal or State law.

*"Senior citizen"* means any resident of this State of the age of 62 or over.

*"Low and Moderate Income Housing"* means any residential premises, or part thereof, affordable according to Federal Department of Housing and Urban Development or other recognized standards for home ownership and rental costs occupied or reserved for occupancy by households with a gross income equal to 80% or less of the median gross household income for households of the same size within the housing region in which the housing is located, but shall include only those residential premises subject to resale controls pursuant to contractual guarantees.

*"Resident of the State of New Jersey"* means any claimant who is legally domiciled in this State when the transfer of the subject property is made. Domicile is what the claimant regards as the permanent home to which he intends to return after a period of absence. Proofs of domicile include a New Jersey voter registration, motor vehicle registration and driver's license, and resident tax return filing.

**10. TRANSFERS OF NEW CONSTRUCTION**

*"New construction"* means any conveyance or transfer of property upon which there is an entirely new improvement not previously occupied or used for any purpose. On transfers of new construction, the words **"NEW CONSTRUCTION"** shall be printed clearly at the top of the first page of the deed, and an Affidavit by the grantor stating that the transfer is of property upon which there is new construction shall be appended to the deed.

**11. REALTY TRANSFER FEE IS A FEE IN ADDITION TO OTHER RECORDING FEES**

The county recording officer is required to collect the Realty Transfer Fee at the time the deed is offered for recording/transfer.

**12. PENALTY FOR WILLFUL FALSIFICATION OF CONSIDERATION AND TRANSFERS OF NEW CONSTRUCTION**

Any person who knowingly falsifies the consideration recited in a deed or in the proof or acknowledgement of the execution of a deed or in an affidavit annexed to a deed declaring the consideration therefor or a declaration in an affidavit that a transfer is exempt from recording fee is guilty of a crime of the fourth degree (Chapter 308, P.L. 1991, effective June 1, 1992). Grantors conveying title of new construction who fail to subscribe and append to the deed an affidavit to that effect in accordance with the provisions of subsection c. of section 2 of Chapter 49, P.L. 1968 (C.46:15-6) is guilty of a disorderly persons offense. The Division of Taxation is entitled to review the Fees collected pursuant to the State Uniform Procedure Law. The Director of the Division of Taxation is authorized to make deficiency assessments to taxpayers who have, intentionally or mistakenly, underestimated the consideration or sales price of properties on the Affidavit of Consideration attached to deeds and upon which the Realty Transfer Fee is based.

**13. COUNTY/MUNICIPAL CODES**

County/Municipal codes may be found at http://www.state.nj.us/treasury/taxation/pdf/lpt/cntycode.pdf.

**14. LEGAL ENTITIES TRANSFERRING NEW JERSEY REAL ESTATE TO RELATED LEGAL ENTITIES**

Legal entities transferring New Jersey real estate to related legal entities are not exempt from the Realty Transfer Fee if the consideration, as defined in the law, is $100 or more. Such consideration includes the actual amount of money and/or the monetary value of any other thing of value constituting the entire compensation paid or to be paid, such as the dollar value of stock included in the transaction or any enhancement to or contribution to the capital of either legal entity resulting from the transfer, or remaining balances of any prior mortgage to which the property is subject or which is assumed and agreed to be paid by the grantee and any other lien or encumbrance not paid, satisfied or removed in connection with the transfer of title.

**This Document Prepared By:**
Robert C. Litwack, Esq.
On behalf of Coast to Coast Document Services, LLC
124 W Freistadt Road, Unit 64
Thiensville, WI 53092

**Return to After Recording:**
Vantage Point Title
25400 US Hwy 19 North
Suite 135
Clearwater, FL 33763
Reference Number: NJ531995

**Mail Tax Statements to:**
David Santaniello and Rosanne D. Santaniello
4 Footes Lane
Morristown, NJ 07960

Tax Map Reference. (N.J.S.A. 46:15-2.1)
Block 6302 Lot 3
Township of Morris
Morris County, New Jersey

---

# QUIT CLAIM DEED

THIS DEED is made and entered into on this _____ day of ____________, 20____, by and between **DAVID SANTANIELLO AND ROSANNE D. SANTANIELLO, who acquired title as ROSEANNE D'AMICO, husband and wife**, a mailing address of 4 Footes Lane, Morristown, NJ 07960, hereinafter referred to as Grantors, and **DAVID SANTANIELLO AND ROSANNE D. SANTANIELLO, husband and wife**, a mailing address of 4 Footes Lane, Morristown, NJ 07960, hereinafter referred to as Grantees.

WITNESSETH: That the said Grantors, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), cash in hand paid (the receipt of which is hereby acknowledged by both Grantors

and Grantees) do this day remise, release, quitclaim and convey to the said Grantees the following described real estate located in Morris County, New Jersey:

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION.

Also known as: 4 Footes Lane, Morristown, NJ 07960

SUBJECT TO EASEMENTS, COVENANTS, CONDITIONS, RESTRICTIONS, RESERVATIONS, AND LIMITATIONS OF RECORD, IF ANY.

Being all the same Property conveyed to Grantors by virtue of a Deed recorded August 17, 2006 among the Official Property Records of Morris County, New Jersey in Book 20596 at Page 0655.

THIS DEED is a Quit Claim Deed. By use of this deed Grantors make NO PROMISES or representations of fact relating to Grantors' ownership of the Property or relating to the state or quality of title to the Property. Grantors only transfers whatever interest, IF ANY, Grantors have in the Property to the Grantees.

TO HAVE AND TO HOLD the lot or parcel above described together with all and singular the rights, privileges, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said Grantees and unto Grantees' heirs, administrators, successors and assigns, forever in FEE SIMPLE.

And that said conveyance does not render the Grantors insolvent, nor is it for the purpose of defrauding any of the creditors of the Grantors.

IN WITNESS WHEREOF, the said Grantors have signed and sealed this deed, the day and year above written.

D Satanielle
David Santaniello

Rosanne D Santaniello
Rosanne D. Santaniello, who acquired title as Roseanne D'Amico
Rosanne D'Amico

STATE OF NJ
COUNTY OF Morris SS.:

I CERTIFY that on Nov 9th, 2019, David Santaniello and Rosanne D. Santaniello, who acquired title as Roseanne D'Amico personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):
(a) is named in and personally signed this Deed;
(b) signed, sealed and delivered this Deed as his or her act and deed; and
(c) made this Deed for $10.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)

(Print name and title below signature)

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

**EXHIBIT "A"**

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Morris, County of Morris, State of New Jersey:

BEGINNING at a point in the southeasterly sideline of Foote's Lane where the same is intersected by the division line between lands herein described and lands shown on "Final Plat of Foote's Lane, Subdivision of Block 341, Lots 95 thru 120" filed in the Morris County Clerk's Office on September 11, 1981, as Map No. 4023, said point being distant 333.40 feet measured northwesterly along said sideline from the new sideline of James Street, 33.00 feet from centerline, extended and running; thence

1. Along the sideline of Foote's Lane, south 44 degrees 06 minutes 10 seconds east 142.20 feet to a point; thence

2. Along land, now or formerly of Morgan, being Lot 57.02 shown on "Minor Subdivision of Lands" prepared for Stephen and Diane Morgan by Richard F. Smith, Jr., P.L.S. dated June 28, 1990, south 38 degrees 27 minutes 20 seconds west 338.01 feet to a point in the line of Lot 57.01 as shown. On said map; thence

3. Along lot 57.01, north 48 degrees 05 minutes 36 seconds west 141.26 feet to a point in the aforementioned line of lands shown on "Final Plat of Foote's Lane Subdivision", thence

4. Along said line, north 38 degrees 27 minutes 20 seconds east 347.92 feet to a point in the aforementioned sideline of Foote's Lane and the point of BEGINNING.

FURTHER BOUNDED AND DESCRIBED IN ACCORDANCE WITH A SURVEY MADE BY D. P. SWEENEY & ASSOC., INC. dated 7-19-06 AS FOLLOWS:

BEGINNING At a point on the southwesterly sideline of Footes Lane (50 feet wide), said point being distant southeasterly 217.58 feet from the intersection of said sideline with the southeasterly sideline of Trent Court (50 feet wide), if both were extended and running, thence:

1. Along Footes Lane, south 44 degrees 03 minutes 30 seconds east a distance of 142.20 feet to a capped pin, thence;

2. Leaving Footes Lane, south 38 degrees 30 minutes 00 seconds west a distance of 338.01 feet to a point, thence;

3. North 48 degrees 02 minutes 56 seconds west a distance of 141.26 feet to a point, thence;

4. North 38 degrees 30 minutes 00 seconds east a distance of 347.92 feet to the point and place of BEGINNING.

Parcel ID / APN: 6302-3

Date: ______________

Robert C. Litwack, Esq.
817 East Landis Avenue
Vineland, NJ 08360

RE: Request to Prepare Deed for Sale of Property
4 Footes Lane, Morristown, NJ 07960
Tax Map: Block 6302 Lot 3
From: David Santaniello and Rosanne D. Santaniello, who acquired title as Roseanne D'Amico
To: David Santaniello and Rosanne D. Santaniello
For: $10.00
Reference No: NJ531995

Dear Mr. Litwack:

Please accept this letter as your written authorization to prepare a deed for use in the matter referred to above. I will have our realtor or title company (or their agent) deliver this written authorization to you and provide you with the necessary information to prepare the deed or I will do so myself. You may prepare the deed from the title report obtained by the buyer (or an old deed provided by me) and are authorized to have the title company or person conducting the closing attach a readable legal description if necessary or a revised one if that is what is going to be insured.

I understand and agree you are willing to undertake a LIMITED REPRESENTATION of me for the SOLE purpose of preparing a deed with the information I give to you. YOU ARE NOT TO DO ANYTHING ELSE WHATSOEVER. For example, you are NOT to review the title commitment, if any, for conditions, exceptions or limitations of the insurance liability of the title company; prepare an affidavit of title; check to see if I have asked for the correct type of deed; receive or read any title report to the property beyond that which is necessary to complete the Deed; check to see if my instructions make sense; keep a copy of the Deed; check to see if I get the money or other things I am supposed to get for giving this Deed; attend the closing; nor will you check to see if you are representing anyone in any unrelated matter who has a legal position that conflicts with mine. You will NOT do those things.

In relation to transactions like mine the New Jersey Supreme Court has said, "The Court strongly believes that both parties should retain counsel for their own protection and that the savings in lawyer's fees are not worth the risks involved in proceeding without counsel." The limited representation I am requesting is NOT the type of counsel recommended by the New Jersey Supreme Court and it is like I am proceeding without counsel or a lawyer. I am aware that I can have full legal representation in this matter if I was willing to pay for it. I am choosing not to do so.

Very truly yours,

D. Santaniello

David Santaniello

Roseanne D Santaniello

Rosanne D. Santaniello, who acquired title as Roseanne D'Amico

Rosanne D'Amico

<u>Sign & Return **THIS PAGE ONLY** To</u>
Robert C. Litwack, Esq.
On behalf of Coast to Coast Document Services, LLC
124 W Freistadt Road, Unit 64
Thiensville, WI 53092
Fax: (856) 455-5600
E-mail: litwacklaw@aol.com

GIT/REP-3
(9-2015)

State of New Jersey

# SELLER'S RESIDENCY CERTIFICATION/EXEMPTION

(Please Print or Type)

## SELLER'S INFORMATION

Name(s)
DAVID SANTANIELLO AND ROSANNE D. SANTANIELLO, who acquired title as ROSEANNE D'AMICO

Current Street Address
4 Footes Lane

| City, Town, Post Office Box | State | Zip Code |
|---|---|---|
| Morristown | NJ | 07960 |

## PROPERTY INFORMATION

| Block(s) | Lot(s) | Qualifier |
|---|---|---|
| 6302 | 3 | |

Street Address
4 Footes Lane

| City, Town, Post Office Box | State | Zip Code |
|---|---|---|
| Morristown | NJ | 07960 |

| Seller's Percentage of Ownership | Total Consideration | Owner's Share of Consideration | Closing Date |
|---|---|---|---|
| 100 % | $0 | $ | |

## SELLER'S ASSURANCES (Check the Appropriate Box) (Boxes 2 through 14 apply to Residents and Nonresidents)

1. [X] Seller is a resident taxpayer (individual, estate, or trust) of the State of New Jersey pursuant to the New Jersey Gross Income Tax Act, will file a resident gross income tax return, and will pay any applicable taxes on any gain or income from the disposition of this property.
2. [ ] The real property sold or transferred is used exclusively as a principal residence as defined in 26 U.S. Code section 121.
3. [ ] Seller is a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.
4. [ ] Seller, transferor, or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.
5. [ ] Seller is not an individual, estate, or trust and is not required to make an estimated gross income tax payment.
6. [ ] The total consideration for the property is $1,000 or less so the seller is not required to make an estimated income tax payment.
7. [ ] The gain from the sale is not recognized for federal income tax purposes under 26 U.S. Code section 721, 1031, or 1033 (CIRCLE THE APPLICABLE SECTION). If the indicated section does not ultimately apply to this transaction, the seller acknowledges the obligation to file a New Jersey income tax return for the year of the sale and report the recognized gain.
   [ ] Seller did not receive non-like kind property.
8. [ ] The real property is being transferred by an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this State.
9. [ ] The real property being sold is subject to a short sale instituted by the mortgagee, whereby the seller agreed not to receive any proceeds from the sale and the mortgagee will receive all proceeds paying off an agreed amount of the mortgage.
10. [ ] The deed is dated prior to August 1, 2004, and was not previously recorded.
11. [ ] The real property is being transferred under a relocation company transaction where a trustee of the relocation company buys the property from the seller and then sells the house to a third party buyer for the same price.
12. [ ] The real property is being transferred between spouses or incident to a divorce decree or property settlement agreement under 26 U.S. Code section 1041.
13. [ ] The property transferred is a cemetery plot.
14. [ ] The seller is not receiving net proceeds from the sale. Net proceeds from the sale means the net amount due to the seller on the settlement sheet.

## SELLER'S DECLARATION

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein may be punished by fine, imprisonment, or both. I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete. By checking this box [ ] I certify that a Power of Attorney to represent the seller(s) has been previously recorded or is being recorded simultaneously with the deed to which this form is attached.

11/9/19 — Date | D Santaniello — Signature (Seller) Please indicate if Power of Attorney or Attorney in Fact

Date | Rosanne D. Santaniello Rosanne D'Amico — Signature (Seller) Please indicate if Power of Attorney or Attorney in Fact

## Seller's Residency Certification/Exemption Instructions

Individuals, estates, trusts, or any other entity selling or transferring property in New Jersey must complete this form if they are not subject to the gross income tax estimated payment requirements under N.J.S.A. 54A:8-9. A nonresident seller is required to make an estimated income tax payment if none of the Seller's Assurances apply.

Name(s): Enter the name of the seller. If there is more than one seller, each must complete a separate form unless they are a married/civil union couple that files their income tax returns jointly.

Address: Enter the seller's primary residence or place of business. Do not use the address of the property being sold. The seller is considered to be a nonresident unless a new residence (permanent place of abode, domicile) has been established in New Jersey and the new residence is listed here. Part-year residents are considered nonresidents.

Property Information: Enter the information listed on the deed of the property being sold. Enter the seller's percentage of ownership, the total consideration for the transaction, the seller's share of that consideration, and the closing date.

Consideration: "Consideration" means, in the case of any deed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is assumed and agreed to be paid by the grantee and any other lien or encumbrance not paid, satisfied or removed in connection with the transfer of title. If there is more than one owner, indicate the seller's portion of the total consideration received. If the total consideration for the property is $1,000 or less, the seller must check box 6 under Seller's Assurances.

Seller's Assurances: Check the appropriate box(es). If one or more of the Seller's Assurances applies, the seller is not required to make an estimated income tax payment at this time.

Any seller claiming the principal residence exemption (box 2) must also be claiming an income/gain exclusion for the property being sold on their federal income tax return (26 U.S. Code section 121).

1031 like-kind exchange: A nonresident who completes the GIT/REP-3 and claims exemption for a 1031 transaction (box 7) must show the value of the like-kind property received. If the transaction includes non-like kind property (i.e. money, stocks, etc), the seller must also compete the GIT/REP-1, Nonresident Seller's Tax Declaration, show the greater of the consideration or the fair market value of the non-like kind property received, and remit an estimated tax payment of 2% of that amount. If the transaction is a deferred like-kind exchange and the seller receives non-like kind property, the qualified intermediary (QI) must remit an estimated tax payment of 2% of the greater of the consideration or the fair market value of any non-like kind property when the 1031 transaction is completed. If the deferred exchange is voided, the QI must complete a GIT/REP-1, Nonresident Seller's Tax Declaration, and remit an estimated tax payment of 2% of the total consideration with an NJ-1040-ES Voucher.

Example: Mr. Smith is a nonresident of New Jersey who exchanges rental property A with a fair market value of $1.2 million for rental property B with a fair market value of $1.0 million and receives $200,000 in cash (non-like kind property). An estimated tax payment is required on the $200,000 non-like kind property for nonresidents.

| | |
|---|---|
| PROPERTY A | $1,200,000 |
| PROPERTY B | $1,000,000 |
| CASH $ | $ 200,000 |
| Estimated tax payment for GIT/REP-1 | $ 4,000 |

Signature: The seller must sign and date the Seller's Declaration. If the seller has appointed a representative who is signing the Seller's Declaration on their behalf, either the Power of Attorney executed by the seller must have been previously recorded or recorded with the deed to which this form is attached, or a letter signed by the seller granting authority to the representative to sign this form must be attached.

The seller must give the completed GIT/REP-3 to the settlement agent at closing. The county clerk will attach this form to the deed when recording it. If the form is not completed in its entirety, of if the settlement agent does not submit the original form with the deed, the county clerk will not record the deed.

RTF-1 (Rev. 7/14/10)
MUST SUBMIT IN DUPLICATE

STATE OF NEW JERSEY

**AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER**

(Chapter 49, P.L.1968, as amended through Chapter 33, P.L. 2006) (N.J.S.A. 46:15-5 et seq.)

**BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS FORM.**

STATE OF NEW JERSEY
} SS. County Municipal Code 1422
COUNTY Morris

**FOR RECORDER'S USE ONLY**
Consideration $ ______
RTF paid by seller $ ______
Date ______ By ______

MUNICIPALITY OF PROPERTY LOCATION Morris

*Use symbol "C" to indicate that fee is exclusively for county use.

(1) PARTY OR LEGAL REPRESENTATIVE *(Instructions #3 and #4 on reverse side)*

Deponent, DAVID SANTANIELLO (Name), being duly sworn according to law upon his/her oath, deposes and says that he/she is the GRANTOR (Grantor, Legal Representative, Corporate Officer, Officer of Title Company, Lending Institution, etc.) in a deed dated ______ transferring real property identified as Block number 6302 Lot number 3 located at 4 Footes Lane, Morristown, NJ 07960 (Street Address, Town) and annexed thereto.

(2) CONSIDERATION $ 0.00 *(Instructions #1 and #5 on reverse side)* ☐ no prior mortgage to which property is subject.

(3) Property transferred is Class 4A 4B 4C (circle one). If property transferred is Class 4A, calculation in Section 3A below is required.

(3A) **REQUIRED CALCULATION OF EQUALIZED VALUATION FOR ALL CLASS 4A (COMMERCIAL) PROPERTY TRANSACTIONS:**
*(Instructions #5A and #7 on reverse side)*

**Total Assessed Valuation ÷ Director's Ratio = Equalized Assessed Valuation**

$______ ÷ ______% = $______

If Director's Ratio is less than 100%, the equalized valuation will be an amount greater than the assessed value. If Director's Ratio is equal to or in excess of 100%, the assessed value will be equal to the equalized valuation.

(4) FULL EXEMPTION FROM FEE *(Instruction #8 on reverse side)*
Deponent states that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L. 1968, as amended through C. 66, P.L. 2004, for the following reason(s). Mere reference to exemption symbol is insufficient. Explain in detail.
(j) Between husband and wife

(5) PARTIAL EXEMPTION FROM FEE *(Instruction #9 on reverse side)*
**NOTE:** All boxes below apply to grantor(s) *only*. **ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED.** Failure to do so will void claim for partial exemption. Deponent claims that this deed transaction is exempt from State portions of the Basic, Supplemental, and General Purpose Fees, as applicable, imposed by C. 176, P.L. 1975, C. 113, P.L. 2004, and C. 66, P.L. 2004 for the following reason(s):

A. **SENIOR CITIZEN** Grantor(s) ☐ 62 years of age or over.* *(Instruction #9 on reverse side for A or B)*
B. { **BLIND PERSON** Grantor(s) ☐ legally blind or; *
**DISABLED PERSON** Grantor(s) ☐ permanently and totally disabled ☐ receiving disability payments ☐ not gainfully employed*

Senior citizens, blind persons, or disabled persons must also meet **all of the following** criteria:
☐ Owned and occupied by grantor(s) at time of sale. ☐ Resident of State of New Jersey.
☐ One or two-family residential premises. ☐ Owners as joint tenants must all qualify.

*IN CASE OF HUSBAND AND WIFE, PARTNERS IN A CIVIL UNION COUPLE, ONLY ONE GRANTOR NEED QUALIFY IF TENANTS BY THE ENTIRETY.

C. **LOW AND MODERATE INCOME HOUSING** *(Instruction #9 on reverse side)*
☐ Affordable according to H.U.D. standards. ☐ Reserved for occupancy.
☐ Meets income requirements of region. ☐ Subject to resale controls.

(6) NEW CONSTRUCTION *(Instructions #2, #10, #12 on reverse side)*
☐ Entirely new improvement. ☐ Not previously occupied.
☐ Not previously used for any purpose. ☐ "**NEW CONSTRUCTION**" printed clearly at top of first page of the deed.

(7) RELATED LEGAL ENTITIES TO LEGAL ENTITIES *(Instructions #5, #12, #14 on reverse side)*
☐ No prior mortgage assumed or to which property is subject at time of sale.
☐ No contributions to capital by either grantor or grantee legal entity.
☐ No stock or money exchanged by or between grantor or grantee legal entities.

(8) Deponent makes this Affidavit to induce county clerk or register of deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of Chapter 49, P.L. 1968, as amended through Chapter 33, P.L. 2006.

Subscribed and sworn to before me this 9th day of Nov, 2019 *Patrice Snuggs*

*D Santaniello*
Signature of Deponent

DAVID SANTANIELLO
Grantor Name

4 Footes Lane, Morristown, NJ
Deponent Address

4 Footes Lane, Morristown, NJ
Grantor Address at Time of Sale

xxx-xxx- 2 4 7
Last three digits in Grantor's Social Security Number

Vantage Point Title, Inc.
Name/Company of Settlement Officer

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

**FOR OFFICIAL USE ONLY**
Instrument Number ______ County ______
Deed Number ______ Book ______ Page ______
Deed Dated ______ Date Recorded ______

County recording officers shall forward one copy of each RTF-1 form when Section 3A is completed to:

**STATE OF NEW JERSEY**
**PO BOX 251**
**TRENTON, NJ 08695-0251**
**ATTENTION: REALTY TRANSFER FEE UNIT**

The Director of the Division of Taxation in the Department of the Treasury has prescribed this form as required by law, and it may not be altered or amended without prior approval of the Director. For information on the Realty Transfer Fee or to print a copy of this Affidavit, visit the Division's website at: **www.state.nj.us/treasury/taxation/lpt/localtax.shtml.**

**INSTRUCTIONS FOR FILING FORM RTF-1, AFFIDAVIT OF CONSIDERATION FOR USE BY SELLER**

**1. STATEMENT OF CONSIDERATION AND REALTY TRANSFER FEE PAYMENT ARE PREREQUISITES FOR DEED RECORDING**

No county recording officer shall record any deed evidencing transfer of title to real property unless (a) the consideration is recited in the deed, or (b) an Affidavit by one or more of the parties named in the deed or by their legal representatives declaring the consideration is annexed for recording with the deed, and (c) for conveyances and transfers of property for which the total consideration recited in the deed is not in excess of $350,000, a fee is remitted at the rate of $2.00/$500 of consideration or fractional part thereof not in excess of $150,000; $3.35/$500 of consideration or fractional part thereof in excess of $150,000 but not in excess of $200,000; and $3.90/$500 of consideration or fractional part thereof in excess of $200,000. For transfers of property for which the total consideration recited in the deed is in excess of $350,000, a fee is remitted at the rate of $2.90/$500 of consideration or fractional part not in excess of $150,000; $4.25/$500 of consideration or fractional part thereof in excess of $150,000 but not in excess of $200,000; $4.80/$500 of consideration or fractional part thereof in excess of $200,000; $5.30/$500 of consideration or fractional part thereof in excess of $550,000 but not in excess of $850,000; $5.80/$500 of consideration or fractional part thereof in excess of $850,00 but not in $1,000,000; and $6.05/$500 of consideration or fractional part thereof in excess of $1,000,000, which fee shall be paid in addition to the recording fees imposed by Chapter 123, P.L. 1965, Section 2 (C. 22A:4-4.1) as amended by Chapter 370, P.L. 2001, through Chapter 66, P.L. 2004, which fee shall be paid to the county recording officer at the time the deed is offered for recording/transfer. Of these fees, $.75/$500 of consideration or fractional part in excess of $150,000 paid to the State Treasurer is credited to the Neighborhood Preservation Nonlapsing Revolving Fund.

**2. WHEN AFFIDAVIT MUST BE ANNEXED TO DEED**

This Affidavit must be annexed to and recorded with all deeds when entire consideration is not recited in deed or the acknowledgement or proof of the execution, when the grantor claims a total or partial exemption from the fee, Class 4 property that includes commercial, industrial, or apartment property, and for transfers of "new construction." (See Instructions #10 and #12 below.)

**3. LEGAL REPRESENTATIVE**

*"Legal representative"* is to be interpreted broadly to include any person actively and responsibly participating in the transaction, such as, but not limited to: an attorney representing one of the parties; a closing officer of a title company or lending institution participating in the transaction; a holder of power of attorney from grantor or grantee.

**4. OFFICER OF CORPORATE GRANTOR/OFFICER OF TITLE COMPANY OR LENDING INSTITUTION**

Where a deponent is an officer of corporate grantor, state the name of corporation and officer's title or where a deponent is a closing officer of a title company or lending institution participating in the transaction, state the name of the company or institution and officer's title.

**5. CONSIDERATION**

*"Consideration"* means in the case of any deed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is assumed and agreed to be paid by the grantee and any other lien or encumbrance not paid, satisfied or removed in connection with the transfer of title. (Chapter 49, P.L. 1968, Section 1, as amended.)

**5A. CLASS 4A "COMMERCIAL PROPERTIES" DEFINED**

Class 4A "Commercial properties" as defined in **N.J.A.C.** 18:12-2.2 means *"any other type of income-producing property other than property in classes 1, 2, 3A, 3B, and those properties included in classes 4B and 4C."* A quarterly audit of all Class 4A sales submitted by the municipal assessor through the SR-1A/equalization process will determine whether a Class 4A transaction was recorded without proper documentation and the required Affidavits of Consideration.

**6. DIRECTOR'S RATIO**

*"Director's Ratio"* means the average ratio of assessed to true value of real property for each taxing district as determined by the Director, Division of Taxation, in the Table of Equalized Valuations promulgated annually on or before October 1 in each year pursuant to **N.J.S.A.** 54:1-35.1. The Table is used in the calculation and apportionment of distributions pursuant to the State School Aid Act of 1954.

**7. EQUALIZED VALUE**

*"Equalized Value"* means the assessed value of the property in the year that the transfer is made, divided by the Director's Ratio. The Table of Equalized Valuations is promulgated annually on or before October 1 in each year pursuant to **N.J.S.A.** 54:1-35.1.

**(Example: Assessed Value = $1,000,000; Director's Ratio = 80%. $1,000,000 ÷ .80 = $1,250,000)**

**8. FULL EXEMPTION FROM THE REALTY TRANSFER FEE (GRANTOR/GRANTEE)**

The fee imposed by this Act shall not apply to a deed:

(a) For consideration of less than $100; (b) By or to the United States of America, this State, or any instrumentality, agency or subdivision; (c) Solely in order to provide or release security for a debt or obligation; (d) Which confirms or corrects a deed previously recorded; (e) On a sale for delinquent taxes or assessments; (f) On partition; (g) By a receiver, trustee in bankruptcy or liquidation, or assignee for the benefit of creditors; (h) Eligible to be recorded as an "ancient deed" pursuant to R.S. 46:16-7; (i) Acknowledged or proved on or before July 3, 1968; (j) Between husband and wife/civil union partners, or parent and child; (k) Conveying a cemetery lot or plot; (l) In specific performance of a final judgment; (m) Releasing a right of reversion; (n) Previously recorded in another county and full Realty Transfer Fee paid or accounted for as evidenced by written instrument, attested to by the grantee and acknowledged by the county recording officer of the county of such prior recording, specifying the county, book, page, date of prior recording, and amount of Realty Transfer Fee previously paid; (o) By an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this State; (p) Recorded within 90 days following the entry of a divorce/dissolution decree which dissolves the marriage/civil union partnership between grantor and grantee; (q) Issued by a cooperative corporation, as part of a conversion of all of the assets of the cooperative corporation into a condominium, to a shareholder upon the surrender by the shareholder of all of the shareholder's stock in the cooperative corporation and the proprietary lease entitling the shareholder to exclusive occupancy of a portion of the property owned by the corporation.

**9. PARTIAL EXEMPTION FROM THE REALTY TRANSFER FEE (C. 176, P.L. 1975; C. 113, P.L. 2003; C. 66 P.L. 2004)**

The following transfers of title to real property shall be exempt from State portions of the Basic Fee, Supplemental Fee, and General Purpose Fee, as applicable: 1. The sale of any one or two-family residential premises which are owned and occupied by a senior citizen, blind person, or disabled person who is the seller in such transaction; provided, however, that except in the instance of a husband and wife/partners in a civil union couple, no exemption shall be allowed if the property being sold is owned as joint tenants and one or more of the owners is not a senior citizen, blind person, or disabled person; 2. The sale of Low and Moderate Income Housing conforming to the requirements as established by this Act.

For the purposes of this Act, the following definitions shall apply:

*"Blind person"* means a person whose vision in his better eye with proper correction does not exceed 20/200 as measured by the Snellen chart or a person who has a field defect in his better eye with proper correction in which the peripheral field has contracted to such an extent that the widest diameter of visual field subtends an angular distance no greater than 20°.

*"Disabled person"* means any resident of this State who is permanently and totally disabled, unable to engage in gainful employment, and receiving disability benefits or any other compensation under any federal or State law.

*"Senior citizen"* means any resident of this State of the age of 62 or over.

*"Low and Moderate Income Housing"* means any residential premises, or part thereof, affordable according to Federal Department of Housing and Urban Development or other recognized standards for home ownership and rental costs occupied or reserved for occupancy by households with a gross income equal to 80% or less of the median gross household income for households of the same size within the housing region in which the housing is located, but shall include only those residential premises subject to resale controls pursuant to contractual guarantees.

*"Resident of the State of New Jersey"* means any claimant who is legally domiciled in this State when the transfer of the subject property is made. Domicile is what the claimant regards as the permanent home to which he intends to return after a period of absence. Proofs of domicile include a New Jersey voter registration, motor vehicle registration and driver's license, and resident tax return filing.

**10. TRANSFERS OF NEW CONSTRUCTION**

*"New construction"* means any conveyance or transfer of property upon which there is an entirely new improvement not previously occupied or used for any purpose. On transfers of new construction, the words **"NEW CONSTRUCTION"** shall be printed clearly at the top of the first page of the deed, and an Affidavit by the grantor stating that the transfer is of property upon which there is new construction shall be appended to the deed.

**11. REALTY TRANSFER FEE IS A FEE IN ADDITION TO OTHER RECORDING FEES**

The county recording officer is required to collect the Realty Transfer Fee at the time the deed is offered for recording/transfer.

**12. PENALTY FOR WILLFUL FALSIFICATION OF CONSIDERATION AND TRANSFERS OF NEW CONSTRUCTION**

Any person who knowingly falsifies the consideration recited in a deed or in the proof or acknowledgement of the execution of a deed or in an affidavit annexed to a deed declaring the consideration therefor or a declaration in an affidavit that a transfer is exempt from recording fee is guilty of a crime of the fourth degree (Chapter 308, P.L. 1991, effective June 1, 1992). Grantors conveying title of new construction who fail to subscribe and append to the deed an affidavit to that effect in accordance with the provisions of subsection c. of section 2 of Chapter 49, P.L. 1968 (C.46:15-6) is guilty of a disorderly persons offense. The Division of Taxation is entitled to review the Fees collected pursuant to the State Uniform Procedure Law. The Director of the Division of Taxation is authorized to make deficiency assessments to taxpayers who have, intentionally or mistakenly, underestimated the consideration or sales price of properties on the Affidavit of Consideration attached to deeds and upon which the Realty Transfer Fee is based.

**13. COUNTY/MUNICIPAL CODES**

County/Municipal codes may be found at http://www.state.nj.us/treasury/taxation/pdf/lpt/cntycode.pdf.

**14. LEGAL ENTITIES TRANSFERRING NEW JERSEY REAL ESTATE TO RELATED LEGAL ENTITIES**

Legal entities transferring New Jersey real estate to related legal entities are not exempt from the Realty Transfer Fee if the consideration, as defined in the law, is $100 or more. Such consideration includes the actual amount of money and/or the monetary value of any other thing of value constituting the entire compensation paid or to be paid, such as the dollar value of stock Included in the transaction or any enhancement to or contribution to the capital of either legal entity resulting from the transfer, or remaining balances of any prior mortgage to which the property is subject or which is assumed and agreed to be paid by the grantee and any other lien or encumbrance not paid, satisfied or removed in connection with the transfer of title.

unison

# UNISON HOMEOWNER AGREEMENT CLOSING INSTRUCTIONS

## I. Contact Information

| | Unison | Lender | Primary Closing Services Provider* | Additional Closing Services Provider (if any)* |
|---|---|---|---|---|
| Company Name and Address: | Unison Agreement Corp. 650 California St., Suite 1800<br>San Francisco, CA 94108 | FLAGSTAR BANK | Vantage Point Title, Inc. (All Other), 25400 US 19 North, Suite 135, Clearwater, FL, 33763 United States | |
| Contact Phone: | 415.349.5267 | | +17274706982 | |
| Contact Email: | bob.afable@unisonim.com | | closingteam@vptitle.net | |
| Transaction ID Number: | FRX-231163 | | NJ531995 | |
| Contact Person | Bob Afable | | Rachel Cear | |

*Primary Closing Services Provider, Third Party Agent(s) of Primary Closing Services Provider, and Additional Closing Services Provider(s) are individually and collectively referred to as "Closing Services Provider(s)."

## II. Transaction Information

| | |
|---|---|
| Owner Name(s) as they appear on the Unison HomeOwner Agreement documents (singly and collectively, "Owner"): | David Santaniello and Rosanne D. Santaniello |
| Property Address: | 4 Footes Ln<br>Morristown, NJ 07960 |
| Owner Preferred Contact: | Telephone Number: 973-998-5280<br>+19179757778<br>Email Address: davesantaniello1@gmail.com |

## III. Transaction Dates

| | |
|---|---|
| Expected Signing Date: | November 6, 2019 |
| Expected Funding Date: | |
| Expected Recording Date: | |

**IV.** To be completed when any Closing Services Provider named above is a licensed escrow agent:

______________________________, Closing Services Provider, is licensed by the State of NJ, License Number ______________________.

*[The remainder of this page is intentionally left blank.]*

**Owner's Initials:** DS / RS / ____ / ____

© 2019, Unison

## V. Conditions

- If Closing Services Provider is a licensed escrow agent, all requested information on page 1 Section IV of these instructions must be completed.
- Owner(s) and all necessary parties to properly execute Unison HomeOwner Agreement closing documents.
- Owner(s) and all necessary parties to comply with the conditions of approval and/or offer and closing instructions required by Unison.
- Owner(s) to sign copy of the application, Signature/Name Affidavit, and disclosure(s) at closing. Signature/Name Affidavit must be notarized.
- Owner(s) to initial each page of the Closing Instructions.
  - Only the following secured loan(s) may encumber the Property: FLAGSTAR BANK with a principal balance of $611,495.
- Only the following secured loan(s) may encumber the Property: Third Federal Savings & Loan with a principal balance of $76,700.
- Closing Services Provider(s) to provide a copy of unexpired legal documentation required to confirm each owner's identity (i.e., Driver's License, U.S. Passport, etc.).
- Closing Services Provider(s) to provide Unison with certified copies of the Memorandum of Unison HomeOwner Agreement and Unison HomeOwner Security Instrument.
- Closing Services Provider(s) to provide Unison a certified copy of the final Closing Statement within three days of closing.
- *Closing Services Provider(s) to provide Unison conformed copies of the Memorandum of Unison HomeOwner Agreement and Unison HomeOwner Security Instrument within five days of recording.*
- *The accounts listed on the Schedule of Debts attached are to be paid in full at close of escrow. - Mortgage payoffs will be sent directly to the Mortgagor by the closing agent. Revolving and Installment debt payoff checks will be provided to the customer(s) by closing agent. Customers are then responsible for forwarding to the creditor(s). See below if applicable:*
    - *Pay down of 1st Mortgage to FLAGSTAR BANK MTG CO FOR $0.00.*
    - *1st Mortgage and Additional liabilities to be paid in sum of $0.00.*
- *Notice To and Acknowledgment Regarding Spouses, Partners and Co-Occupants - Who Are Not Signatories to the HomeOwner Agreement, executed by all appropriate parties. Spouse who are not on the Agreement must sign and have notarized at closing.*
- *Market Value and Special Termination Addendum to be executed at closing*

Owner's Initials: DS / RS / ____ / ____

## VI. Instructions

Owner(s) and Unison Agreement Corp. ("Unison") agree to deliver documents and deposit funds as set forth herein and will authorize and instruct Closing Services Provider(s) to disburse said items subject to the following conditions:

**1. Execution of Instructions.** Closing Services Provider(s) shall execute and return the original of these Instructions to Unison along with the funding package.

**2. Closing Statements.** Unison shall provide to Closing Services Provider(s) the Unison HomeOwner Agreement Estimated Closing Statement for this transaction (see attached). Closing Services Provider(s) shall then prepare the final Closing Statement. The final Closing Statement will be provided to Unison within three business days of the closing date.

**3. Closing Documents.**

a. Unison shall deliver via overnight courier to Closing Services Provider(s) the following original documents collectively referred to as the "Unison HomeOwner Agreement Closing Documents" (one original unless otherwise noted):

i. Unison HomeOwner Option Agreement*;

ii. Unison HomeOwner Covenant Agreement*;

iii. Memorandum of Unison HomeOwner Agreement (Recorded Memorandum)*;

iv. Unison HomeOwner Security Instrument and any applicable Riders: Subordinated Unison Deed of Trust (or Mortgage) and Security Agreement (the "Security Instrument");

v. Signature/Name Affidavit (one original for each Owner); and

vi. Certification of Trust (if applicable).

***Items above shall be delivered to Closing Services Provider(s) signed and notarized, if applicable, by Unison.**

**4. Signing.**

a. The Unison HomeOwner Agreement Closing Documents must be signed by all Owners. Owner will sign the following original documents (collectively, the "Owner Documents"):

i. Unison HomeOwner Option Agreement;

ii. Unison HomeOwner Covenant Agreement;

iii. Memorandum of Unison HomeOwner Agreement (Recorded Memorandum)*;

iv. Unison Deed of Trust (or Mortgage) and Security Agreement (the "Security Instrument") and any applicable Riders*;

v. Signature/Name Affidavit (one original for each Owner)*;

vi. Certification of Trust (if applicable)*; and vii. These Closing Instructions, initialed on each page where indicated

***These documents require the Closing Services Provider(s) to notarize Owners' execution of and other persons' joinders in.**

b. Closing Services Provider(s) shall ensure that Owner and joining signatories sign his/her name exactly as typed below (or above, as per State requirements) the signature line (including initials and suffixes if applicable) and that all signatures from the same individual are the same on each document he/she signs. Initials and/or suffixes are not to be included in a signature unless included in the typed name.

**5. Document Copies.**

a. On the Signing Date, Closing Services Provider(s) shall provide Owner a copy of each of the **fully executed** Unison HomeOwner Agreement documents as referenced in previous sections.

b. If property is located in an escrow (dry funding) state, Closing Services Provider(s) shall deliver to Unison 48 hours in advance of the requested Funding Date:

i. certified copies of the documents that will be recorded;

ii. the original of all other documents; and

iii. the conditions referenced in **Section V (Conditions)**.

c. If property is located in a non-escrow (wet funding) state, Closing Services Provider(s) shall deliver to Unison within 48 hours of signing the following:

i. conformed copies of the recorded documents;

ii. the original of all other documents; and

iii. the conditions referenced in **Section V (Conditions)**.

Owner's Initials: DS / RS / ______ / ______

**6. Funding.** On or before the Funding Date, provided the Closing Services Provider(s) has/have performed the obligations under Sections 1 through 5 above, Unison will fund the Unison Investment Payment as designated by Closing Settlement Provider(s). Immediately upon delivery of the wire, Closing Settlement Provider(s) shall confirm to Unison its receipt by email to the Unison Contact listed in **Section I**.

**7. Recording**. Provided that Unison has authorized Closing Services Provider(s) in writing to do so, Closing Services Provider(s) shall cause the following documents to be recorded and *in the following order*:

a. Memorandum of Agreement

b. Security Instrument

c. UCC Financing Statement (If Pennsylvania)

**Walk-in or electronic recording of the above referenced documents is required**. Date down is to be completed to ensure lien priority. Mail away recordings are not authorized.

**8. Disbursement.** Unison will issue written authorization via email for the disbursement of its funds. This must be done in strict accordance with the Unison HomeOwner Agreement Closing Statement. **Closing Services Provider(s) shall remit the Unison transaction fee via wire to:**

| | |
|---|---|
| **Bank Name:** | J.P.Morgan Chase Bank, N.A.<br>560 Mission St, 19th Floor San Francisco, CA 94105 |
| **ABA/Routing Number:** | [redacted]0021 |
| **Bank Account Number:** | [redacted]6673 |
| **Beneficiary:** | Unison Agreement Corp. |

**9. Cancellation.** Only if the transaction is cancelled without funding, Closing Services Provider shall refund the entirety of Unison's funds via wire to:

| | |
|---|---|
| **Bank Name:** | J.P.Morgan Chase Bank, N.A.<br>560 Mission St, 19th Floor San Francisco, CA 94105 |
| **ABA/Routing Number:** | [redacted]0021 |
| **Bank Account Number:** | [redacted]6533 |
| **Beneficiary:** | Unison Agreement Corp. |

**10. Conflicts.** In the event of a conflict between these Instructions and the Unison HomeOwner Agreement Closing Statement, these Instructions shall govern. **If for any reason this transaction does not close within 72 hours of receipt of funds by Closing Services Provider(s), the Closing Services Provider(s) is required to contact us immediately for instructions.**

**11. Post-Recording Deliveries.** Within five business days following the Closing Date, Closing Services Provider(s) shall deliver to Unison via email certified copies of the recorded Unison HomeOwner Agreement Closing Documents, conformed by notes on the first page of each document with the name of governmental recording agency or office, the recording date, the instrument number, an attestation by the Closing Services Provider(s) of the accuracy of such recording detail, and signed by the Closing Services Provider(s).

**12. Closing Services Provider(s).** Unison and Owner hereby acknowledge and agree that Closing Services Provider(s) is not a party to any agreement between Unison and Owner, and Closing Services Providers' duties, with respect to both Owner and Unison, are only to fulfill the instructions contained herein. Unison and Owner further acknowledge and agree that Closing Services Provider(s) acts only as Closing Services Provider(s) with respect to this transaction and are not agents of nor act on behalf of either Unison or Owner.

**Owner's Initials:** DS / RS / ____ / ____

© 2019, Unison

**Agreed to and accepted:**

Unison Agreement Corp., a Delaware corporation

By:
Name: Ismael Casas, Jr.
Title: Vice President
Date: November 6, 2019

**Primary Closing Services Provider:**
Vantage Point Title, Inc. (All Other) (company)

By: NM
Name: Nicole McClune
Its: Warehousing
Date: 11/9/19

**Additional Closing Services Provider(s) (if applicable):**
_(company)

By: ______
Name: ______
Its: ______
Date: ______

______ (company)

By: ______
Name: ______
Its: ______
Date: ______

______ (company)

By: ______
Name: ______
Its: ______
Date: ______

**Owner:**
Sign: ______
David Santaniello
Date: 11/9/19

**Co-Owner:**
Sign: ______
Rosanne D. Santaniello
Date: 11/9/19

**Owner:**
Sign: ______
Date: ______

**Co-Owner:**
Sign: ______
Date: ______

unison

**Unison Agreement Corp.**
**Closing Statement**

Unison HomeOwner Agreement Transaction ID: FRX-231163
Homeowner(s): David Santaniello and Rosanne D. Santaniello
Property: 4 Footes Ln Morristown, NJ 07960
Signing Date: November 6, 2019
Escrow Number: NJ531995
Closing Services Provider: Vantage Point Title, Inc. (All Other); Rachel Cear
Closing Services Provider Contact: P +17274706982 / E closingteam@vptitle.net

| Item | Debit | Credit |
|---|---|---|
| Unison Investment Payment to **Homeowner** | | $175,000.00 |
| Transaction Fee to **Unison*** | $6,825.00 | |
| Debts to be paid at closing by | $0.00 | |
| **Totals** | $6,825.00 | $175,000.00 |
| **Funds Due to Homeowner(s): $168,175.00** | | |

* Transaction Fee to Unison: Covers all costs associated with originating the Unison HomeOwner Agreement, including credit reports, appraisals, home inspections, recording fees and taxes, and settlement fees.

Owner:
Sign: [signature]
David Santaniello
Date: 11/9/19

Co-Owner:
Sign: [signature]
Rosanne D. Santaniello
Date: 11/9/19

Owner:
Sign: ______________________
Date: ______________________

Co-Owner:
Sign: ______________________
Date: ______________________

unison

# NOTICE AND ACKNOWLEDGMENT REGARDING SPOUSES, PARTNERS AND CO-OCCUPANTS WHO ARE NOT SIGNATORIES TO THE UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number: FRX-231163

This Notice and Acknowledgement Form (“**Form**”) contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property (“**Property**”) subject to a **Unison HomeOwner Agreement** who are not signatories to the Unison HomeOwner Agreement (collectively referred to as “**Non-Owner Occupant(s)**”). Please READ IT CAREFULLY. This Form must be signed by all homeowners entering into and executing a Unison HomeOwner Agreement (“**Unison Signatory(ies)**”). Any owner executing a Unison HomeOwner Agreement (“**Owner**”) is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. (“**Unison**”) as a prerequisite to entering into the Unison HomeOwner Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeOwner Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeOwner Agreement, may be significantly affected by the operation of the Unison HomeOwner Agreement. This is because the Unison HomeOwner Agreement is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest (“**Investor Percentage**”) in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeOwner Agreement will be required to settle Unison’s option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeOwner Agreement, the amount required to settle Unison’s option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Unison cannot know who occupies the Property as a principal residence if those persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeOwner Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeOwner Agreement, and in the event that any new Non-Owner Occupant not signatory to the Unison HomeOwner Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeOwner Agreement, he or she must execute the complete set of Unison HomeOwner Agreement legal documents and meet all then-current Unison HomeOwner Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeOwner Agreement on future possession and occupancy of the Property.

© 2019, **Unison** 

☑ I represent and warrant that there are no Non-Owner Occupants living in my Property.

Acknowledged and agreed:

| | |
|---|---|
| Owner: | Co-Owner: |
| Sign: D. Santaniello | Sign: Rosanne D. Santaniello |
| David Santaniello | Rosanne D. Santaniello |
| Date: 11/9/19 | Date: 11/9/19 |
| Owner: | Co-Owner: |
| Sign: | Sign: |
| Date: | Date: |

☐ I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed:

| | |
|---|---|
| Owner: | Co-Owner: |
| Sign: | Sign: |
| David Santaniello | Rosanne D. Santaniello |
| Date: | Date: |
| Owner: | Co-Owner: |
| Sign: | Sign: |
| Date: | Date: |
| Non-Owner Occupant 1: | Non-Owner Occupant 2: |
| Print name: | Print name: |
| Relation to Applicant: | Relation to Applicant: |
| Non-Owner Occupant 3: | Non-Owner Occupant 4: |
| Print name: | Print name: |
| Relation to Applicant: | Relation to Applicant: |

unison

**Schedule of Debts To Be Paid At Closing**
**From Unison HomeOwner Agreement Proceeds**

Unison HomeOwner Agreement ID Number: FRX-231163

Total Amount To Be Paid At Closing: $0.00

The Closing Services Provider will be instructed to pay off the accounts indicated with a "true" in the Pay Off column.

The Amount column reflects information from your credit report. If you have provided updated account statements, the balances from those statements will be paid and reflected in the Closing Statement. If you have not provided updated account statements, please do so prior to scheduling your closing. **No oral or handwritten information can be accepted.**

I acknowledge that any debt payoffs that are part of my Unison agreement may come in the form of checks sent to me, and it is my responsibility to add any required identifying information to these checks and then forward them on to the applicable creditors.

**[Signatures on following page.]**

| Owner's Initials: DS | Owner's Initials: RS |
|---|---|

unison

Owner:

Sign: D Santaniello
David Santaniello

Date: 11/9/19

Sign: ______

Date: ______

Sign: ______

Date: ______

Co-Owner:

Sign: Rosanne D. Santaniello
Rosanne D. Santaniello

Date: 11/9/19

Sign: ______

Date: ______

Sign: ______

Date: ______

| Owner's Initials: DS | Owner's Initials: RS |
|---|---|

# iLien Cover Page

Date Printed: 09/11/2019

Debtor:

Dave Santaniello
4 Footes Lane
Morristown, NJ 07960

Financier: SunPower Residential I LLC
Contract #: 021-0013565-001
InfoLease ID - do not delete:
Filing Type: FF
Ref5:
County: Morris
Ref7: PS1002626-Fixture Assignment-1475
Law Firm Bill Code:

iLien File #: 72833050
Order Confirmation #: 71624650

UserID: 252519
UserName: CARLO ESCASINAS
Number of Collateral Pages Attached: 0

Transaction Type: Termination
Jurisdiction: NJ, Morris

# ***Notary Instruction Checklist***

- Homeowner's signature is required on page 22 of the Unison Homeowner Covenant Agreement.
- If a document says EXHIBIT ONLY- DO NOT SIGN, then that page doesn't need to be signed or notarized.
- We need a copy of IDs.
- There is a blank acknowledgment in the package to be used for the Memorandum of Unison Homeowner Agreement. You can use your own if you like instead. **(The Benefited Party Acknowledgment is for the lender's signature, not the borrowers – do not complete that one)**
- Make sure the homeowner adds dates underneath their signature, where applicable.
- FOR CALIFORNIA FILES – Please note that Jurats **CANNOT** be used for the Memorandum of Unison Homeowner Agreement or the Deed of Trust. They can be used for anything else.
- SIGNING IN A TRUST OR WITH POA - Signature needs to match the wording underneath.

I have read and reviewed the above list and called Vantage Point if I had any questions,

[signature] 11/9/19

**NOTARY SIGNATURE** **DATE**

# COMPLIANCE AGREEMENT

Re: Order Number: NJ531995

In consideration of Vantage Point Title, Inc. (hereinafter "title company") closing the transaction under the above order number, the undersigned sellers and/or buyers/borrowers agree, upon request of the company, to fully cooperate with the company to correct any inaccurate term or provision or mistake in, or omission from any document associated with the closing. He/she/they further agree that, subsequent to closing, he/she/they will execute such documents, or take such action as the company may reasonably deem necessary to properly document the transaction.

The undersigned further agree(s) that in the event an error in charges, costs, or payoff amounts is made, he/she/they will, upon request, immediately remit such sums for which he/she/they had initial responsibility for payment as may be necessary to correct such errors. Nothing herein contained shall be construed to impose liability on the parties for charges incurred as a result of the failure of the company to timely remit payment or take actions which the company has agreed in writing to perform.

The undersigned further authorize the company to correct any clerical errors on his/her/their behalf in order to properly complete the title conveyance and/or provide the lender with insurable documentation.

The undersigned further agree to comply with any such requests outlined above and agree that, in the event he/she/they fail to comply with the request, he/she/they will pay, in addition to any amounts owed above, reasonable costs of the company in enforcing this agreement, including but not limited to, reasonable attorney's fees and costs of litigation.

D S [signature] 11/9/19

BORROWER: DATE

Rosanne Santello [signature] 11/9/19

BORROWER: DATE

Sworn to and subscribed, before me, this 9 day of NOV 2019

[signature]

Notary Public

Seal

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

**Vantage Point Title, Inc.**

25400 US 19 North, Suite 135

Clearwater, FL 33763

Phone (866) 374-0646

DAVID SANTANIELLO
ROSANNE SANTANIELLO
4 FOOTES LANE
MORRISTOWN, NJ 07960

55-233/212

117

DATE ____________

PAY TO THE ORDER OF ____________ $ ________

________________ DOLLARS

VOID

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO ____________ MP

[redacted]2337⑆ [redacted]⑈0117

Fi

P

**

C

C

D

W

W
di ... g
financial institution.

**Receiving Institution Name:** Chase

**Financial Institution Routing Number:** [redacted]2337

**Financial Institution Checking Account Number:** [redacted]9272

**Name(s)/Payee(s) of Record with Financial Institution:** ____________

**Are you attaching a voided check? Yes** ✓ **No**** ___

We as the Payee(s) hereby authorize Vantage Point Title, Inc. to wire the amount listed on my lenders, closing disclosure and/or HUD-1 statement to the above financial institutions account notwithstanding the differences in the payee names and the names on the receiving account. By acknowledging the below through signature, the payee(s) also hereby hold Vantage Point Title, Inc. harmless and indemnify them against any and all claims and disputes arising from said delivery of funds to the extent of, but not limited to, actual damages, attorney's fees, penalties and other fees associated with this request.

D Santaniello 11/9/19 R Santaniello 11/9/19

Signature Date Signature Date

____________ ____________

Signature Date Signature Date

**Subscribed and sworn to before me this** 9th **day of** Nov **20**19.

**(seal)**

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

**Notary Public**

# PAYOFF AFFIDAVIT

File No: NJ531995

Property: 4 Footes Lane, Morristown, NJ 07960

WE, the undersigned, do hereby hold Vantage Point Title and Stewart Title Guaranty Company harmless for any addition monies due from any shortages in the payoff amounts of any and all liens on the aforementioned property described above and listed in the title commitment on file number NJ531995. We also understand that if for any reason the payoff is incorrect, we are fully responsible for making up the difference and will take care of the said shortages within five (5) days from notification by Vantage Point Title whether by telephone or by mail. Should there be a remaining escrow balance we hereby authorize any shortages to be covered thru the escrow balance.

That this affidavit is being made to include Unison Home Ownership Investors to grant financing to the borrower(s) of the above described property, and the said parties rely on the statement(s) made by the affiant(s) herein are aware that Vantage Point Title is insuring the title to the property herein and that affiant(s) warrant the above statements to be accurate. In the event of the necessity to enforce the terms of this affidavit, affiant(s) shall be responsible personally and/or as a corporation for any losses, including but not limited to, attorney's fees and court costs.

**Revolving Line of Credit Instructions**

**If this is a revolving credit/equity line of credit account, I/we, the undersigned borrower (s), hereby authorize you to close this account. We hereby acknowledge that there are no outstanding draws or checks against this line of credit and understand that we will be held responsible for any draws or checks still outstanding as of the date of payoff.**

AFFIANT(S) FURTHER SAYETH NAUGHT.

David Santaniello

Rosanne D Santaniello

PATRICE A SNUGGS
Notary Public - State of New Jersey
My Commission Expires Oct 12, 2021

STATE OF NJ

COUNTY OF Morris

Subscribed and sworn to (or affirmed) before me on by, David Santaniello who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Notary Signature)

(SEAL)

VantagePoint

# IMPORTANT ***PLEASE READ***

If there are any creditors to be paid on the schedule of debts, Vantage Point Title will send those checks directly to the homeowner who will then be responsible to mail out to each creditor. If we are paying off a mortgage in full, we will send those funds directly to the lien holder.

D Satumello

Homeowner's signature