# Exhibit B

unison

HomeOwner AGREEMENT CLOSING instructions

## I. Contact Information

| | Unison | Lender | Primary Closing Services Provider* | Additional Closing Services Provider (if any)* |
|---|---|---|---|---|
| Company Name and Address: | Unison Agreement Corp., 650 California St., Suite 1800 San Francisco, CA 94108 | | Doma Insurance Agency, Inc. 101 Mission St, Suite 740 San Francisco, CA 94105 | |
| Contact Phone: | | | (949) 267-7272 | |
| Contact Email: | justin.tanimoto@unisonim.com | | unison@doma.com | |
| Transaction ID Number: | FRX-436170 | | UH-304227 | |
| Contact Person | Justin Tanimoto | | Marc Litner | |
| *Primary Closing Services Provider, T d Party Agent(s) Primary Closing Services Provider, and Additional Closing Services Provider(s) are individuall nd collectively refe d to as “Closing Services Provider(s).” | | | | |

## II. Transaction Information

| | |
|---|---|
| Owner Name(s) as they appear on the Unison HomeOwner Agreement documents (singly and collectively, “Owner”): | Luis M neses |
| Property Address: | 229 Palisade R<br>Linden, NJ 07036 |
| Owner Preferred Contact: | Telephone Number: + 2019123 8<br>Email Address: lrmeneses@ ail.com |

## III. Transaction Dates

| | |
|---|---|
| Expected Signing Date: | July 7, 2022 |
| Expected Funding Date: | |
| Expected Recording Date: | |

**IV.** To be completed when any Closing Services Provider named above is a licensed escrow agent:

________________________________________________________, Closing Services Provider, is licensed by the State of New Jersey, License of Number ______________________________.

[*The remainder of this page is intentionally left blank.*]

Draft

**Owner’s Initials:** __________/__________/__________/__________

## V. <u>Conditions</u>

- If Closing Services Provider is a licensed escrow agent, all requested information on page 1 Section IV of these instructions must be completed.
- Owner(s) and all necessary parties to properly execute Unison HomeOwner Agreement closing documents.
- Owner(s) and all necessary parties to comply with the conditions of approval and/or offer and closing instructions required by Unison.
- Owner(s) to sign copy of the application, Signature/Name Affidavit, and disclosure(s) at closing. Signature/Name Affidavit must be notarized.
- Owner(s) to initial each page of the Closing Instructions.
    - Only the following secured loan(s) may encumber the Property: LOANCARE with a principal balance of $300,512.
    - • Only the following secured loan(s) may encumber the Property: with a principal balance of $25,062.
- Closing Services Provider(s) to provide a copy of unexpired legal documentation required to confirm each owner's identity (i.e., Driver's License, U.S. Passport, etc.).
- Closing Services Provider(s) to prov e U ison with certified copies of the Memorandum of Unison HomeOwner Agreement, Unison HomeOwner Se ity Instru ent, and Assignment of Unison HomeOwner Agreement.
- Closing Services Provider(s) to vide Unison a c tified copy of the final Closing Statement within three days of closing.
- *Closing Services Provider(s o provide Unison nformed copies of the Memorandum of Unison HomeOwner Agreement, Unison HomeOwner Security I trument, and A gnment of Unison HomeOwner Agreement within five days of recording.*
- *The accounts listed on the Schedul f D attach are to be paid in full at close of escrow. - Mortgage payoffs will be sent directly to the Mortgagor by the closing ag Revo ing and Installment debt payoff checks will be provided to the customer(s) by closing agent. Customers are th esponsible for forwarding to the creditor(s). See below if applicable:*
    - *Pay down of 1st Mortgage to LOANCARE MTG CO F R $22,494.90.*
    - *1st Mortgage and Additional liabilities t e pa d in sum f $29,933.90.*
- *Notice To and Acknowledgment Regarding Spouses, artners a Co-Oc ants - Who Are Not Signatories to the Unison HomeOwner Agreement, executed by all appropriate pa ti pouse w a e not on the Agreement must sign and have notarized at closing.*

Draft

**Owner's Initials:** ___________/___________/___________/___________

## VI. Instructions

Owner(s) and Unison Agreement Corp. ("Unison") agree to deliver documents and deposit funds as set forth herein and will authorize and instruct Closing Services Provider(s) to disburse said items subject to the following conditions:

**1. Execution of Instructions.** Closing Services Provider(s) shall execute and return the original of these Instructions to Unison along with the funding package.

**2. Closing Statements.** Unison shall provide to Closing Services Provider(s) the Unison HomeOwner Agreement Estimated Closing Statement for this transaction (see attached). Closing Services Provider(s) shall then prepare the final Closing Statement. The final Closing Statement will be provided to Unison within three business days of the closing date.

**3. Closing Documents.**

a. Unison shall deliver via overnight courier to Closing Services Provider(s) the following original documents collectively referred to as the "Unison HomeOwner Agreement Closing Documents" (one original unless otherwise noted):

i. Unison HomeOwner Option Agreement*;

ii. Unison HomeOwner Covenant Agreement*;

iii. Memorandum of Unison HomeOwner Agreement (Recorded Memorandum)*;

iv. Unison HomeOwner Security Instrument and any applicable Riders: Subordinated Unison Deed of Trust (or Mortgage) and Security Agreement (the "Security Instrument");

v. Assignment of Unison HomeOwner Agreement*;

vi. Signature/Name Affidavit (one original for each Owner); and

vii. Certification of Trust (if applicable).

***Items above shall be delivered to Closing Services Provider(s) signed and notarized, if applicable, by Unison.**

**4. Signing.**

a. The Unison HomeOwner Agreement Closing Documents must be signed by all Owners. Owner will sign the following original documents (collectively, the "Owner Documents")

i. Unison HomeOwner Option Agreement;

ii. Unison HomeOwner Covenant Agreement;

iii. Memorandum of Unison HomeOwner Agreement (Recorded Memorandum)*;

iv. Unison Deed of Trust (or Mortgage) and Security Agreement (the "Security Instrument") and any applicable Riders*;

v. Signature/Name Affidavit (one original for each Owner)*;

vi. Certification of Trust (if applicable)*; and vii. The Closing Instructions, initialed on each page where indicated

***These documents require the Closing Services Provider(s) to notarize Owners' execution of and other persons' joinders in.**

b. Closing Services Provider(s) shall ensure that Owner and joining signatories sign his/her name exactly as typed below (or above, as per State requirements) the signature line (including initials and suffixes if applicable) and that all signatures from the same individual are the same on each document he/she signs. Initials and/or suffixes are not to be included in a signature unless included in the typed name.

**5. Document Copies.**

a. On the Signing Date, Closing Services Provider(s) shall provide Owner a copy of each of the **fully executed** Unison HomeOwner Agreement documents as referenced in previous sections.

b. If property is located in an escrow (dry funding) state, Closing Services Provider(s) shall deliver to Unison 48 hours in advance of the requested Funding Date:

i. certified copies of the documents that will be recorded;

ii. the original of all other documents; and

iii. the conditions referenced in **Section V** (**Conditions**).

c. If property is located in a non-escrow (wet funding) state, Closing Services Provider(s) shall deliver to Unison within 48 hours of signing the following:

i. conformed copies of the recorded documents;

ii. the original of all other documents; and

iii. the conditions referenced in **Section V** (**Conditions**).

**Owner's Initials:** ___________/___________/___________/___________

Draft

**6. Funding.** On or before the Funding Date, provided the Closing Services Provider(s) has/have performed the obligations under Sections 1 through 5 above, Unison will fund the Unison Investment Payment as designated by Closing Settlement Provider(s). Immediately upon delivery of the wire, Closing Settlement Provider(s) shall confirm to Unison its receipt by email to the Unison Contact listed in **Section I**.

**7. Recording**. Provided that Unison has authorized Closing Services Provider(s) in writing to do so, Closing Services Provider(s) shall cause the following documents to be recorded and *in the following order*:

a. Memorandum of Agreement

b. Security Instrument

c. Assignment of Unison HomeOwner Agreement.

d. UCC Financing Statement (If Pennsylvania)

**Walk-in or electronic recording of the above referenced documents is required**. Date down is to be completed to ensure lien priority. Mail away recordings are not authorized.

**8. Disbursement.** Unison will issue written authorization via email for the disbursement of its funds. This must be done in strict accordance with the Unison HomeOwner Agreement Closing Statement. **Closing Services Provider(s) shall remit the Unison transaction fee via wire to:**

**Bank Name:** J.P.Morgan Chas Ba N.A.
560 Mission S 19th Flo San Francisco, CA 94105
**ABA/Routing Number:** [redacted]0021
**Bank Account Number:** [redacted]66

**Beneficiary:** Uniso Agreement Corp

**9. Cancellation.** Only if the transaction lled wit out funding, Closing Services Provider shall refund the entirety of Unison's funds via wire to:

**Bank Name:** J.P.Morgan Chase Ban N.A.
560 Mission St, 19th Floor San Francisco, C 94105
**ABA/Routing Number:** [redacted]0021
**Bank Account Number:** [redacted]5533

**Beneficiary:** Unison Agreement Corp.

Draft

**10. Conflicts.** In the event of a conflict between these Instructions and the Uniso HomeOwner Agreement Closing Statement, these Instructions shall govern**. If for any reason this transaction does not close withi 72 hours of receipt of funds by Closing Services Provider(s), the Closing Services Provider(s) is required to contact us immediately for instructions.**

**11. Post-Recording Deliveries.** Within five business days following the Closing Date, Closing Services Provider(s) shall deliver to Unison via email certified copies of the recorded Unison HomeOwner Agreement Closing Documents, conformed by notes on the first page of each document with the name of governmental recording agency or office, the recording date, the instrument number, an attestation by the Closing Services Provider(s) of the accuracy of such recording detail, and signed by the Closing Services Provider(s).

**12. Closing Services Provider(s).** Unison and Owner hereby acknowledge and agree that Closing Services Provider(s) is not a party to any agreement between Unison and Owner, and Closing Services Providers' duties, with respect to both Owner and Unison, are only to fulfill the instructions contained herein. Unison and Owner further acknowledge and agree that Closing Services Provider(s) acts only as Closing Services Provider(s) with respect to this transaction and are not agents of nor act on behalf of either Unison or Owner.

**Owner's Initials:** ___________/___________/___________/___________

**Agreed to and accepted:**

Unison Agreement Corp.,
a Delaware corporation

By:

Name: Lily Kwong
Title: Authorized Signatory
Date: July 7, 2022

**Primary Closing Services Provider:**
Doma Insurance Agency, Inc. (company)

By:________________________________________

Name: ______________________________________

Its: ________________________________________

Date: ______________________________________

______________________________________
(company)

By: ________________________________________

Name: ______________________________________

Its: ________________________________________

Date: ______________________________________

**Additional Closing Services Provider(s) (if applicable):**
______________________________________ (company)

By: ________________________________________

Name: ______________________________________

Its: ________________________________________

Date: ______________________________________

______________________________________
(company)

By: ________________________________________

Name: ______________________________________

Its: ________________________________________

Date: ______________________________________

Draft

**Owner(s):**

Sign: ______________________________________
Luis Meneses

Date: ______________________________________

**Unison Agreement Corp.**
**Closing Statement**

Unison HomeOwner Agreement Transaction ID: FRX-436170
Homeowner(s): Luis Meneses
Property: 229 Palisade Rd Linden, NJ 07036
Signing Date: July 7, 2022
Escrow Number: UH-304227
Closing Services Provider: Doma Insurance Agency, Inc., Marc Litner
Closing Services Provider Contact: P (949) 267-7272 / E unison@doma.com

| Item | Debit | Credit |
|---|---|---|
| Unison Investment Payment to **Homeowner** | | $78,575 |
| Transaction Fee to **Unison** | $2,357.25 | |
| Appraisal Fee to **Unison** | $0.00 | |
| Settlement Fees | $1,386.00 | |
| Debts to be paid at closing | $29,933.90 | |
| **Totals** | $33,677.15 | $78,575 |
| **Funds Due to Homeowner(s): $44,897.85** | | |

**Owner(s):**

Sign: ________________________________________
Luis Meneses

Date: ________________________________________

unison

**Schedule of Debts To Be Paid At Closing**
**From Unison HomeOwner Agreement Proceeds**

Unison HomeOwner Agreement ID Number: FRX-436170

Total Amount To Be Paid At Closing: $29,933.90

The Closing Services Provider will be instructed to pay off the accounts indicated with a “true” in the Pay Off column.

The Amount column reflects information from your credit report. If you have provided updated account statements, the balances from those statements will be paid and reflected in the Closing Statement. If you have not provided updated account statements, please do so prior to scheduling your closing. **No oral or handwritten information can be accepted.**

| CREDITOR | ACCOUNT NUMBER | AMOUNT | TO BE PAID |
|---|---|---|---|
| LOANCARE | [redacted]0568 | $22,494.90 | true |
| MARINER FINANCE | [redacted]9120 | $2,971.00 | true |
| CBNA | [redacted]*****6941 | $2,268.00 | true |
| SYNCB/NTWK | [redacted]**** | $2,200.00 | true |

Draft

I acknowledge that any debt payoffs that are part of my Unison agreement may come in the form of checks sent to me, and it is my responsibility to add any required identifying information to these checks and then forward them on to the applicable creditors.

**[Signature on following page.]**

**Owner’s Initials:** ___________/___________/___________/___________

**Owner(s):**

Sign: _________________________________________
Luis Meneses

Date: _________________________________________

Draft

## NOTICE AND ACKNOWLEDGMENT REGARDING SPOUSES, PARTNERS AND CO-OCCUPANTS WHO ARE NOT SIGNATORIES TO THE UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number: FRX-436170

This Notice and Acknowledgement Form ("**Form**") contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property ("**Property**") subject to a **Unison HomeOwner Agreement** who are not signatories to the Unison HomeOwner Agreement (collectively referred to as "**Non-Owner Occupant(s)**"). Please READ IT CAREFULLY. This Form must be signed by all HomeOwners entering into and executing a Unison HomeOwner Agreement ("**Unison Signatory(ies)**"). Any owner executing a Unison HomeOwner Agreement ("**Owner"**) is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. ("**Unison"**) as a prerequisite to entering into the Unison HomeOwner Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeOwner Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeOwner Agreement may be significantly affected by the operation of the Unison HomeOwner Agreement. This is because the Unison HomeOwner Agreement is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest ("**Investor Percentage**") in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeOwner Agreement will be required to settle Unison's option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeOwner Agreement, the amount required to settle Unison's option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Draft

Unison cannot know who occupies the Property as a principal residence if these persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeOwner Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeOwner Agreement, and in the event that a new Non-Owner Occupant not signatory to the Unison HomeOwner Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeOwner Agreement, he or she must execute the complete set of Unison HomeOwner Agreement legal documents and meet all then-current Unison HomeOwner Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeOwner Agreement on future possession and occupancy of the Property.

☐ I represent and warrant that there are no Non-Owner Occupants living in my Property.

Acknowledged and agreed:

**Owner(s):**

Sign: ________________________________________
Luis Meneses

Date: ________________________________________

☐ I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed:

**Owner(s):**

Sign: ________________________________________
Luis Meneses

Date:
________________________________________

Draft

Non-Owner Occupant 1:

Print name:__________________________________

Relation to Applicant:_________________________

Non-Owner Occupant 2:

Print name:__________________________________

Relation to Applicant:_________________________

Non-Owner Occupant 3:

Print name:__________________________________

Relation to Applicant:_________________________

Non-Owner Occupant [illegible]:

Print name:__________________________________

Relation to Applicant:_________________________

© 2021, **Unison**

**UNISON HOMEOWNER OPTION AGREEMENT**

**Summary:** This option agreement first sets forth Unison's obligation to pay you a lump sum. The agreement then provides that in exchange for that payment, Unison receives an option. The option would allow Unison, at a future date, to purchase a percentage interest in your property by paying you an additional (and greater) amount of money.

On that future date, the value of Unison's option will depend on what your property is worth. If your property's value rises between now and then, the option's value will increase as well, and vice versa. As a result, the value of Unison's option could turn out to be greater than, equal to, or less than what Unison is paying you today, or even zero.

(Note: The wording of this summary is not itself a part of any agreement.)

Unison HomeOwner Agreement ID Number: FRX-436170

Draft

# UNISON HOMEOWNER OPTION AGREEMENT

## 1. Terms

1.1. This Unison HomeOwner Option Agreement ("Option Agreement") is made between LUIS MENESES. A SINGLE MAN ("you") and Unison Agreement Corp., a Delaware corporation, and its successors and assigns ("Investor").

1.2. This Option Agreement is made together with and incorporates: (1) the Unison HomeOwner Covenant Agreement (the "Covenant"); (2) the Unison HomeOwner Security Instrument (the "Security Instrument"); and (3) the Unison HomeOwner Recorded Memorandum (the "Recorded Memorandum"). Together these documents are called the Unison HomeOwner Agreement or the Agreement.

1.3. The meanings of several k y, defined terms used in this Option Agreement appear in the following chart. The meaning of ery defined term used here or in any of the other contracts making up the Unison HomeOwne Agreemen may be found in Schedule A to the Covenant.

Draft

| | |
|---|---|
| **Effective Date** | July 7 22 |
| **Property**<br>As further described in Exhibit A | 229 Palisa Rd, Li den, NJ, 07036 |
| **Term** | 30 years |
| **Expiration Date** | July 6, 2052 |
| **Original Agreed Value** | $437,775 |
| **Initial Payment** | $78,575 |
| **Balance Payment*** | $227,868<br>* The Balance Payment may be subject to adjustment as described in the Covenant. |
| **Investor Percentage** | 70.00 % |
| | |
| **Maximum Authorized Debt** | $303,075.00 |



©2021, Unison

**2. Initial Payment by Investor**

2.1. On the Effective Date, Investor agrees to provide you the amount of $78,575. This amount is called the “Initial Payment.”

**3. Granting of Option**

You hereby grant to Investor an option (the “Option”) to purchase, in the future, an undivided 70.00 % interest in and to the Property for an additional dollar amount, equal to $227,868, as further described in the Covenant.

3.1.1. That percentage figure is called the “Investor Percentage.”

3.1.2. The additional dollar amount required to exercise the Option is called the “Balance Payment,” and may be reduced by what the Covenant calls "Unpaid Owner Obligations."

3.2. You are granting the Option in consideration of (1) Investor providing the Initial Payment; (2) Investor’s express waiver of all rights to exercise the Option until the occurrence of an Exercise Event; (3) other Investor obligations under the Unison HomeOwner Agreement; and (4) your other rights and benefits under the Unison HomeOwner Agreement.

**4. Term of Option**

4.1. The “Term” of the Option is 30 years. The Term begins on the Effective Date and expires on the Expiration Date, subject to extension under limited circumstances as set forth in the Covenant.

**5. Property Valuation**

5.1. You and Investor agree that the value of the Property as of the Effective Date is $437,775. This value is called the “Original Agreed Value.”

5.2. You agree that the future value of the Property, when calculated at any time during the Term, will be determined according to the Covenant. The Covenant will call this future value the “Ending Agreed Value.”

**6. Option Exercise Events**

6.1. Investor may exercise its Option to purchase its undivided percentage interest in the Property in the following four circumstances, called “Exercise Events,” as further described in the Covenant:

A. A sale of the Property by you;

B. The end of the Term, which is the day of the Expiration Date;

C. The death of what the Covenant calls the “Last Surviving Signatory” of the Unison HomeOwner Agreement. (When referencing this Exercise Event, the word “you” includes what the Covenant calls the “Your Estate.”); and

D. A material “Event of Default” by you do not cure.

These four Exercise are listed above as “A” through “D” because the first Exercise Event is further defined at Section “5.A” of the Covenant, the second at Section “5.B” of the Covenant, and so on.

Draft

6.2. Unless you buy out and thus terminate Investor's right to exercise the Option as described in the next Section (Section 7), then:

6.2.1. In the case of the Exercise Event listed above as "B" (exercise at Term), you and Investor, as co-owners of the Property, will promptly market and sell the Property in order to liquidate each's respective percentage interests; and

6.2.2. In the case of the Exercise Event listed above as "C" (death of Last Surviving Signatory), Your Estate and Investor, as co-owners of the Property, will promptly market and sell the Property for the same purpose.

**7. Buy-Out Upon Exercise Event**

7.1. Upon the occurrence of an Exercise Event (other than an Event of Default), you may buy out, and thus terminate, Investor's right to exercise the Option, as further described in the Covenant. You may do so by paying Investor a dollar amount representing its interest in the Property. That dollar amount is called the "Investor Interest."

7.2. The Investor Interest is calculated first by multiplying the Ending Agreed Value by the Investor Percentage; then subtracting the Balance Payment; then adding any Unpaid Owner Obligations.

7.3. Upon acceptance of the Investor Interest from you, Investor will release you from your obligations under the Unison HomeOwner Agreement.

**8. Special Termination by You After Five Years**

8.1. At any time following the fifth anniversary of the Effective Date but prior to the occurrence of any Exercise Event, you may request a "Special Termination" of the Option pursuant to Section 6 of the Covenant, by payment of an amount called the "Special Termination Price." That Special Termination Price is equal to the greater of (a) the Investor Interest (defined in Section 7 above), or (b) the sum of the Initial Payment and any Unpaid Owner Obligations.

**9. Maximum Authorized Debt**

9.1. The sum total of loans from third parties secured by liens on the Property (including any unused portion of any line of credit) that you may incur at any one time during the Term of the Unison HomeOwner Agreement is $303,075.00. This amount is called the "Maximum Authorized Debt."

**10. Lien on the Property**

10.1. Your performance under the Unison HomeOwner Agreement will be secured as a recorded lien on the Property by recording both the Security Instrument and the Recorded Memorandum in the county or local jurisdiction where the Property is located.

**11. Event of Default**

11.1. If there is a material and uncured Event of Default by you regarding any terms of the Unison HomeOwner Agreement, then Investor will have the right to demand your performance of those terms, and will be entitled to exercise any of its other rights and remedies set forth in the Agreement and provided for under applicable law.

Draft

**12. Nature of Option and Initial Payment**

12.1. The Initial Payment is not a loan to you or indebtedness to Investor, nor is it a principal amount which Investor is entitled to recover at any time. Thus, you will not among other things make any monthly interest or any other periodic payments to Investor based upon the amount of the Initial Payment.

**13. Notice Addresses**

Notice shall be effective when made in writing to the addresses below:

| Notice to You: | Notice to Investor: |
|---|---|
| 229 Palisade Rd<br>Linden, NJ, 07036<br>+12019123228<br>lrmeneses@gmail.com | Unison Agreement Corp.<br>P.O. Box 2389<br>San Francisco, CA 94126<br>Attn: Asset Administration |

Draft

During the term, you and Investor will each provide the other with prompt notice regarding any changes to the notice addresses above. Notice to you shall also be effective when delivered to any other individual whom you have designated in writing to Investor as authorized to receive notices under this Agreement. In the case of notice by Investor to you of an Exercise Event, notice must be made both by certified mail and (when provided) by e-mail.

**[*Signature Page Follows*]**



©2021, Unison

IN WITNESS, WHEREOF, intending to be legally bound, each of you have executed this **Unison HomeOwner Option Agreement**.

**You:**

Sign: ________________________________________
Luis Meneses

Date: ________________________________________

Draft



©2021, Unison

**Exhibit A**

**PROPERTY DESCRIPTION**

That certain real property situated in the City of Linden, County of Union, State of New Jersey, described as follows:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Linden, in the County of Union, State of New Jersey.

Beginning at an iron bar in the southeasterly line of Palisade Road (50' R.O.W.), said point being distant southwesterly 260.00' from the intersection of the southwesterly line of Summit Terrace (60' R.O.W.) with the southeasterly line of Palisade Road and thence,

1. S. 51 degrees 00 minutes 00 seconds E. 100.00' to a point and thence,

2. S. 39 degrees 00 minutes 00 sec ds W 00' to a point and thence,

3. N. 51 degrees 00 minutes 0 seconds W. 100 0' to an iron bar in the southeasterly line of Palisade Road and thence,

4. Along the same, N. 39 deg ees 00 minut 0 seconds E. 80.00' to the point or place of beginning.

The above described lands are known as Lot 11 Blo 301 as shown on the current Official Tax Maps of the City of Linden.

Premises more commonly known as 229 Palisade Road.

The above description is in accordance with a sur y prepa d b Brunswick st, Inc. dated 9/19/2019 as File No. 19.2224.

APN: 09 00301-0000-00011

[End of legal description]

Draft



©2022, Unison

**UNISON UNISON HOMEOWNER COVENANT AGREEMENT**

**Summary:** This covenant agreement sets forth your and Unison's rights and responsibilities under the Unison Unison HomeOwner Agreement. It requires, for example, that you maintain the condition of the property, make mortgage and property tax payments on time, maintain property insurance and keep the property free of liens not approved by Unison.

This agreement also further describes how and under what circumstances Unison can exercise its option or otherwise act to protect the property. In addition, the agreement describes how the Unison Unison HomeOwner Agreement may terminate under other your circumstances.

(Note: The wording of this summary is not itself a part of any agreement.)

Unison Unison HomeOwner Agreement ID Number: FRX-436170

Draft

**TABLE OF CONTENTS**


| Section | | Page |
|---|---|---|
| 1 | Intent of Agreement | 1 |
| 2 | Owner's Representations | 1 |
| 3 | Occupancy and Use of Property | 3 |
| 4 | Option Exercise Events | 3 |
| | 4.A Permitted Sale of Property | 3 |
| | 4.B End of the Term | 5 |
| | 4.C Death of the Last Surviving Signatory | 6 |
| | 4.D Material and Uncured Event of Default | 7 |
| 5 | Special Termination by You | 8 |
| 6 | Voluntary Release by Investor | 9 |
| 7 | Investor Rights and Remedies | 9 |
| 8 | Maintenance and Inspection of Property | 10 |
| 9 | Possible Adjustments to Value | 10 |
| | 9.A Remodeling Adjustment | 10 |
| | 9.B Deferred Maintenance Adjustment | 12 |
| 10 | Appraisal and Appraisal Expenses | 12 |
| 11 | Debt Limits, Property Obligations and Loans | 13 |
| 12 | Taxes and Assessments | 14 |
| 13 | Protective Advances | 14 |
| 14 | Insurance Coverage | 15 |
| 15 | Distribution of Insurance Proceeds for Losses | 16 |
| 16 | Condemnation of Property | 17 |
| 17 | Multiple Owners | 17 |
| 18 | Revocable Trusts | 17 |
| 19 | Miscellaneous Provisions | 18 |
| 20 | Arbitration | 20 |


Draft

## 1 Intent of Agreement

1.1 This Unison Unison HomeOwner Covenant Agreement ("Covenant") is made between LUIS MENESES. A SINGLE MAN ("you") and Unison Agreement Corp., a Delaware corporation, and its successors and assigns ("Investor").

1.2 The Effective Date of this Agreement is July 7, 2022.

1.3 This Covenant is made together with and incorporates: (1) the Unison Unison HomeOwner Option Agreement ("Option Agreement"); (2) the Unison Unison HomeOwner Security Instrument ("Security Instrument"); and (3) the Unison Unison HomeOwner Recorded Memorandum ("Recorded Memorandum"). The term Unison Unison HomeOwner Agreement or Agreement encompasses all four of these documents.

1.4 All defined terms used in this Covenant and elsewhere in the Unison Unison HomeOwner Agreement are capitalized. Further, for ease of reference, Schedule A to this Covenant provides an alphabetized index displaying where you may find the meaning of every defined term.

1.5 This Covenant sets forth the representations, warranties, duties and covenants of you and Investor during the Term of the Option and whenever reasonable or necessary to protect the rights of the parties.

Draft

## 2 Owner's Representations

2.1 Good and Marketable Title. As of the Effective Date, all of you, individually and collectively, will appear on the record title to the Property as holding fee simple title to one hundred percent (100%) of the Property. You will have good and marketable title to the Property, which will be free of any license, easement, or other encumbrance or restriction against the title to the Property, other than Permitted Encumbrances and Approved Existing Loans, which are defined in the bullets below.

- "Permitted Encumbrances" means all licenses, easements, or other title restrictions to the Property that exist as of the Effective Date and are listed in the property report obtained in connection with the Property Purchase, plus any additional licenses, easements or title restrictions agreed to in writing by Investor after the Effective Date.
- "Approved Existing Loan" means any loan secured by the Property which originated simultaneously with the Unison Unison HomeOwner Agreement or was approved in writing by Investor as of the Effective Date.

2.2 You are one or more individuals with the legal power and full capacity to enter into and to consummate all transactions contemplated by the Unison Unison HomeOwner Agreement. If the Property is to be held in a revocable trust, revocable living trust, *inter vivos* trust, revocable family trust or similar trust established in accordance with the laws of any state ("Revocable Trust"), then you have executed and delivered to Investor the "Revocable Trust Rider" (a rider to the Security Instrument), warranting the identical legal power, right and authority of the trustee(s) and trustor(s).

2.3 You warrant that there is no litigation or other dispute, pending or threatened, against you or the Property that might adversely affect the value of the Property or your ability to perform your obligations under the Unison Unison HomeOwner Agreement.

2.4 You acknowledge that the Unison Unison HomeOwner Agreement is not offered by Investor as a source of short-term funding or for the funding of investment in residential real estate with the intention of near-term resale of a property, or for trading or price speculation in home prices by real property dealers, traders, re-sellers, or otherwise, and instead is offered for the

purpose of accessing existing equity by homeowners who intend to occupy their property until at least the fifth anniversary of the Effective Date. Your intent is consistent with this purpose.

2.5 You warrant that the use and occupancy of the Property are fully compliant with all state, federal and local laws, zoning ordinances, and regulations, including environmental prohibitions.

2.6 You warrant there are no material defects or conditions on or affecting the Property or title to the Property undisclosed to Investor which are now known to or could reasonably have been discovered by you, which could affect the use or value of the Property. You acknowledge that evidence of misrepresentation or non-disclosure as to the condition of the Property by you raises a presumption of bad faith and a breach of the Unison Unison HomeOwner Agreement.

2.7 You understand that granting Investor the Option and entering into the Unison Unison HomeOwner Agreement can have significant tax, financial and estate planning consequences. You acknowledge that Investor has urged you to discuss the Agreement with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the Agreement with respect to your particular situation. You are not relying on any information or representation by Investor, its agents, affiliates, officers, or employees regarding: (a) the value of the Property; and (b) the advisability of you purchasing the Property or entering into the Unison Unison HomeOwner Agreement, including but not limited to tax, legal, financial and estate planning consequences. You warrant you have had the opportunity to seek independent advice regarding such matters.

2.8 With respect to any residents who do or will occupy the Property but who are not signatories to the Agreement ("Non-Owner Occupants"), you and they have executed Exhibit B to this Covenant, which is referred to here as the "Non-Owner Occupant Disclosure and Acknowledgment."

2.9 You have promptly delivered to Investor all reports, disclosures, inspections, estimates and other documents provided to you in connection with the initial purchase of the Property with Investor's payment to you of the Initial Payment (the "Property Purchase"), which pertain to conditions on or affecting the Property or which might otherwise affect the value of the Property. All documentation and information you have provided to Investor fairly and accurately reflects your financial condition and is truthful, complete, and not misleading. All such documentation and information regarding the condition of the Property also is truthful, complete and not misleading to the best of your knowledge.

2.10 You warrant that there has been no material change in your financial condition since your application to Investor.

2.11 You warrant you have a continuing obligation to comply with the representations made in this Section 2 and to notify Investor during the Term if any representation you have made ceases to be materially accurate or true.

## 3 Occupancy and Use of Property

3.1 You will enjoy sole right of occupancy of the Property under the Unison Unison HomeOwner Agreement as an owner and not as a tenant or lessee, whether or not Investor has exercised the Option, subject to limited Investor rights of entry and repair following an Event Of Default.

3.2 You will occupy the Property as your principal residence throughout the Term, unless otherwise agreed to by Investor in writing. Occupying the Property as your principal residence means that you live and sleep in the Property for no less than 180 days out of any 365-day period. Investor will not unreasonably withhold consent to a temporary lapse in occupancy if you make arrangements satisfactory to Investor to care for the Property while you are gone.

Draft

3.3 You will not (i) use the Property in any way other than as a residential property; (ii) permit the use of the Property for any commercial use, except for a "home office" in compliance with applicable U.S. tax regulations; or (iii) rent all of the Property except with Investor's express written consent.

3.4 You may rent part of the Property without Investor's express written consent. In any termination of the Unison Unison HomeOwner Agreement where Investor determines that an existing rental agreement or tenant who is occupying or has rights to occupy the Property is having a negative impact on the Investor Interest, you, at your expense, will be responsible for terminating such rental agreement or removing such tenant from the Property, or otherwise for compensating Investor for the diminution of the Investor Interest.

## 4 Option Exercise Events

### 4.A Permitted Sale of Property

4.A.1 At any time, you may sell the Property through a "Permitted Sale" (defined below in this Section 4.A). At the time of a Permitted Sale, Investor may exercise its Option to purchase an undivided percentage interest in the Property.

4.A.2 As an alternative to Investor exercising its Option at the time of a Permitted Sale, you may elect to terminate the Option and settle the Unison Unison HomeOwner Agreement by tendering to Investor, through escrow for the Permitted Sale, the Investor Interest. Following such termination and settlement, Investor will deliver executed and notarized documents required by escrow holder for the Permitted Sale to effect a full release of the Agreement.

4.A.3 A Permitted Sale means a sale or transfer of the Property to a third-party buyer that adheres to the following requirements or that is otherwise consented to in writing by Investor:

4.A.3.1 You notify Investor in writing of your decision to market, sell or transfer the Property, at least [illegible]5 days prior to the proposed closing of such sale or transfer.

4.A.3.2 You timely provide Investor with copies of: inspection report(s), listing agreements, staging agreements, preliminary title reports, preliminary escrow instructions, all offers to purchase the Property, Appraisals, escrow instructions, pest reports, and any other documents relating to the proposed sale or transfer of the Property.

4.A.3.3 If the third-party buyer does not obtain a standard pest report and standard contractor's inspection report in connection with the Property, you must obtain such reports (or, alternatively, Investor may obtain such reports at your expense), and deliver these to Investor at least 14 days prior to the proposed closing of the sale. These reports will be used by Investor to review the terms of the sale and, along with other reports deemed necessary by Investor, for Investor's determination of a Deferred Maintenance Adjustment, if any.

4.A.3.4 The sale is consummated through an appropriate real property escrow account using the services of an escrow holder.

4.A.3.5 Investor has the right to independently appraise the Property before the closing of the sale or transfer.

Draft

4.A.3.6 The closing date is scheduled so as to allow Investor sufficient time to: (i) obtain Appraisal(s); and (ii) review relevant documents for a Remodeling Adjustment or Deferred Maintenance Adjustment, if any.

4.A.3.7 The sale or transfer is at arm's length, made on commercially reasonable terms and entered into in good faith.

4.A.3.8 In your sole responsibility, you convey title free and clear of any liens, and satisfy any loans and other obligations secured by liens, including senior liens, on the Property.

4.A.3.9 The sale or transfer does not convey title "subject to" the lien created by the Unison Unison HomeOwner Agreement or any other existing lien or payment obligation on the Property.

4.A.4 If you do not choose to terminate the Option and settle the Unison Unison HomeOwner Agreement, then in furtherance of Investor's exercise of its Option:

4.A.4.1 Investor will deliver to you and to escrow holder a calculation of the Investor Interest, including a statement of any "Unpaid Owner Obligations" (defined in Section 13.8) affecting that calculation.

4.A.4.2 You will deed Investor its percentage interest in the Property through escrow for the Permitted Sale;

4.A.4.3 You and Investor, as co-owners of the Property, will deed the Property to the third-party buyer through escrow; and

4.A.4.4 The escrow holder will close the Permitted Sale, transfer title to the third-party buyer, and liquidate Investor's and your respective percentage interests in the Property.

4.A.5 You will pay all costs in connection with the Permitted Sale of the Property, or in connection with Investor's Option exercise that is followed by a Permitted Sale, in order to liquidate Investor's percentage interest, including "Closing Costs" (defined in the next sentence), but not any closing costs owed by the third-party buyer. "Closing Costs" means costs in connection with any sale of the Property, or in connection with any exercise by Investor of the Option exercise that is followed by a sale of the Property, including, without limitation, recording fees and costs, reconveyance fees, escrow fees, title insurance fees, federal, state, local and documentary transfer taxes and sales commissions.

4.A.6 In the event that there are insufficient amounts in escrow to release all liens senior to Investor's lien, to settle the Investor Interest, and to satisfy Closing Costs and any other expenses required in order to deliver clear title to the Property, you will be solely responsible for covering any shortfall.

4.A.7 If the closing date scheduled for a Permitted Sale falls after the Expiration Date, the Term and the Expiration Date will automatically extend for such reasonable period of time as will permit the closing of such Permitted Sale.

4.A.8 In any proposed sale or transfer by you where Investor determines that the proposed sale price differs materially from the then-estimated market value of the Property or an Appraised Value, including in any:

- "Sale-By-Owner Transaction," which means a sale of the Property conducted either without a public listing of it on the open market, or

Draft

where the terms and conditions of the sale have been principally negotiated by you without agency representation, or

- "Intrafamily Transaction," which means a purchase, sale or transfer of the Prop proposed between you and any of your family members by blood or marital relation,

Investor will have the right to take any or all of the following actions: (i) to make an offer in writing to purchase the Property from you on the same terms and conditions as the proposed offer from the other buyer and, if such offer is rejected by you, to obtain a written affidavit under oath from you stating the reasons for the rejection; (ii) to require you and any third-party buyer to execute an affidavit under oath attesting that the relationship between you and the third-party buyer is at arm's length and that the proposed transaction is at a fair market price; and (iii) to require that one or more Appraisals of the Property be conducted in order for the Property value to be established.

4.A.9 Any attempted sale or transfer of the Property that does not comply with the Permitted le requirements is an Event of Default and is deemed to imminently prejudi Inv tor's rights hereunder.

4.A.10 I stor will not b liable to you for any loss relating to any delay or postponement f the closing of a le resulting from Investor's reasonable inquiries and actions.

**4.B End of th Term**

4.B.1 Invest may exerci t ption to purchase an undivided percentage interest in the Property at the e of the Term, which is the day of the Expiration Date.

4.B.2 Investor will open escrow with an crow holder selected by Investor at least 90 days but no more than days befo the Expiration Date.

4.B.3 Investor and you will onduct a h me insp n an Appraisal, at your expense, to determine the Market Va any Defe d Maintenance Adjustment or Remodeling Adjustment. In stor rese es the ri h order more than one home inspection or Appraisal.

4.B.4 Investor will deliver to you and to escrow h der a calculation of the Balance Payment, a statement of your "Unpaid O ner Obligations," if any, and a calculation of the Investor Interest.

4.B.5 Investor may exercise the Option on the Expiration Date. You, however, may elect to terminate the Option and settle the Unison Unison HomeOwner Agreement by tendering to Investor, through escrow, the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the Agreement.

4.B.6 If you do not terminate the Option and settle the Unison Unison HomeOwner Agreement, Investor may exercise its Option and purchase an undivided percentage interest in the Property, and you will deed Investor its percentage interest in the Property; whereupon you and Investor, as co-owners of the Property, will promptly market and sell the Property in order to liquidate your respective percentage interests, and the Term and the Expiration Date will automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

4.B.7 You will pay all Closing Costs owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by the third-party buyer.

Draft

4.B.8 You may sell the Property in a Permitted Sale prior to the close of escrow under this Section 4 provided that such sale closes at least five business days prior to the Expiration Date.

**4.C Death of the Last Surviving Signatory**

4.C.1 Investor may exercise its Option to purchase an undivided percentage interest in the Property at the death of the Last Surviving Signatory. "Last Surviving Signatory" means the last surviving individual who appears as a signatory to the Unison Unison HomeOwner Agreement or any mutually executed written addendum thereto.

4.C.2 Investor has the right to exercise the Option and purchase an undivided percentage interest in the Property as of the death of the Last Surviving Signatory.

4.C.3 You must at all times during the Term, have designated at least one living individual out of your administrators, heirs, or representatives to represent your estate. Your estate will notify Investor immediately in writing of the death of the Last Surviving Signatory.

4.C.4 Upon Investor's receipt of notice of the death of the Last Surviving Signatory, Investor will open escrow with an escrow holder selected by Investor. The closing date selected may be no earlier than 180 days following the date of death of the Last Surviving Signatory unless agreed to by your estate in writing. If Investor determines that your estate has commenced good faith efforts to sell the Property in a Permitted Sale within the 180-day period following the date of death, Investor may extend the closing date for a maximum of two consecutive 90-day periods beyond the 180-day period from death of the Last Surviving Signatory to permit your estate to accomplish the Permitted Sale

4.C.5 Investor and your estate will conduct a home inspection and Appraisal, at your estate's expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

4.C.6 Investor will deliver to your estate and to escrow holder a calculation of the Balance Payment, a statement of your Unpaid Owner Obligations, if any, and a calculation of the Investor Interest.

Draft

4.C.7 Investor may exercise the Option. Your estate, however, may elect to terminate the Option and settle the Unison Unison HomeOwner Agreement by tendering to Investor the Investor Interest. Following such termination and settlement, Investor will deliver executed, notarized documents required by escrow holder to effect a full release of the Agreement.

4.C.8 If your estate does not terminate the Option and settle the Unison Unison HomeOwner Agreement, Investor may exercise its Option and purchase an undivided percentage interest in the Property, and your estate will deed Investor its percentage interest in the Property. Then Investor and your estate, as co-owners of the Property, will promptly market and sell the Property in order to liquidate their respective percentage interests, and the Term will automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

4.C.9 Your estate will pay all Closing Costs owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by the third-party buyer.

4.C.10 Your estate will administer and protect the Property to preserve Investor's rights following the death of the Last Surviving Signatory, and Investor's rights in the Property under the Unison Unison HomeOwner Agreement will have priority over expenditures by your estate which are not reasonably necessary to administer and protect the Property.

4.C.11 Your estate may sell the Property in a Permitted Sale within the time period described in Section 4.C.4 above.

4.C.12 All time periods specified in this Section 4.C will run from the actual date of the death of the Last Surviving Signatory. Failure of your estate or any other individual or entity to notify Investor of the death of the Last Surviving Signatory will not toll or suspend the running of the time periods.

**4.D Material and Uncured Event of Default**

4.D.1 Investor may exercise its Option to purchase an undivided percentage interest upon the occurrence of a material, uncured Event of Default by you.

4.D.2 The occurrence of any of the following will constitute an "Event of Default."

4.D.2.1 <u>Failure to Perform</u>. You fail to perform in accordance with any provision of the Unison Unison HomeOwner Agreement, or you take any action to impede the exercise of the Option or infringe on Investor's rights.

4.D.2.2 <u>Misrepresentation</u>. You make any representation to Investor that is false or misleading, including with respect to the condition or value of the Property or in connection with the amount or kind of consideration given to you in any sale or transfer of the Property; or you fail to correct a representation that has become untrue within a reasonable time after learning of the new information regarding the representation.

4.D.2.3 <u>Delinquencies</u>. You become delinquent on any obligation regarding the Property, including on any loans secured by, or with respect to any taxes owed on, the Property.

4.D.2.4 <u>Occupancy</u>. You cease to occupy the Property as your principal residence in accordance with Section 3.2. Alternatively, Non-Owner Occupants of the Property change and you fail to provide to Investor an updated Non-Owner Occupant Disclosure and Acknowledgement.

4.D.2.5 <u>Unauthorized Transfers</u>. You transfer or attempt to transfer the Property other than in accordance with the Unison Unison HomeOwner Agreement.

4.D.2.6 <u>Insurance</u>. You fail to maintain insurance on the Property as prescribed in the Unison Unison HomeOwner Agreement.

4.D.2.7 <u>Other Adverse Acts</u>. Any other occurrence, action or inaction by you which may have a material adverse effect on the Property, the legal ownership of the Property, the value of the Property, or Investor's rights.

Draft

**5 Special Termination by You**

5.1 Under the terms of the Unison Unison HomeOwner Agreement, you and Investor have agreed that the Option may not be exercised until the occurrence of an Exercise Event. However, Investor agrees that after the fifth anniversary of the Effective Date, you may request what is called a "Special Termination" of the Option by:

5.1.1 Delivering notice to the Investor at least 45 days prior to the proposed Special Termination.

5.1.2 You will provide to Investor copies of all listings for the sale of the Property and all offers for the purchase of the Property, if any.

5.1.3 You and Investor will conduct a home inspection and Appraisal, at your expense, to determine the Market Value and any Deferred Maintenance Adjustment or Remodeling Adjustment. Investor reserves the right to order more than one home inspection or Appraisal.

5.1.4 You will open escrow with an escrow holder selected by Investor.

5.1.5 Investor will deliver to you and to escrow holder a calculation of the "Special Termination Price" which is the greater of: (i) the Investor Interest calculated at the time of the Special Termination; (ii) the Initial Payment plus any of your Unpaid Owner Obligations.

5.1.6 If you receive or have pending a written offer for the purchase of the Property, the Investor Interest will be calculated using a Market Value equal to the greater of the then-current Appraised Value of the Property or the gross amount of such purchase offer ("Solicited Sale Value"). If you fail to disclose a Solicited Sale Value that exceeds the Appraised Value used to calculate the Investor Interest at the time of Special Termination or within 90 days after, you will remain liable to Investor for the loss in Investor Interest.

5.1.7 You will deliver the Special Termination Price into escrow together with all Closing Costs, recording expenses and other expenses in connection with the Special Termination.

5.1.8 On escrow's delivery and Investor's acceptance of the Special Termination Price from you, Investor will deliver executed notarized documents required by escrow holder to effect a full release of the Unison Unison HomeOwner Agreement.

5.1.9 Investor will retain the right to reject any Special Termination where Investor has not had adequate opportunity to review inspections, pest reports, Appraisals, or other documents, or Investor deems your tender of the Special Termination Price insufficient, inadequate, or untimely.

Draft

**6 Voluntary Release by Investor**

6.1 Investor may voluntarily rescind its rights under the Unison Unison HomeOwner Agreement in writing at any time, in which case Investor will effect a full release of the Agreement, and you may keep the Initial Payment and have no further obligation to Investor.

**7 Investor Rights and Remedies**

7.1 In any Event of Default, your rights to cure are those in the Security Instrument and as specified by applicable law.

7.2 In an Event of Default:

7.2.1 Investor may exercise the Option and exercise its rights and remedies under the Security Instrument.

7.2.2 Investor may seek monetary damages against you, including interest, attorney's fees, and costs.

7.2.3 Investor may be irreparably injured and will have the right to specific performance, injunctive relief, or any other equitable relief against you.

7.2.4 Investor may enter the Property to (i) to conduct inspections and Appraisals of the Property; (ii) to prevent waste of the Property; and (iii) for any other purpose reasonable to prevent continuing harm to or diminution in value of the Property.

7.2.5 Investor may make Protective Advances in accordance with Section 13 below.

7.2.6 Investo ay demand for you to promptly remedy any material defect or adverse cond n on he Property.

7.2.7 Investor is req red to pay money pursuant to a preference claim in a bankruptcy proc ding involving you, then Investor is entitled to assert a claim against you for e same amount.

7.3 Investor is e itled to d and im ediate termination of the Agreement, the return of the Initial Payment and any her payme red to you, and the payment of the amount, if any, by which the Investor Interest ceeds the Initial Payment, together with any and all attorney's fees and costs incurred b nvestor in co ection with such termination in an Event of Default related to: (i) fraud, bad faith, or misrepresen ion or nondisclosure by you; or (ii) a transfer or sale, or attempted transfer or sale he Proper by you in violation of the terms of the Unison Unison HomeOwner A eement

7.4 In the event of (i) fraud, bad faith, o i resentati o nondisclosure by you; (ii) any transfer or sale, or attempted transfer o ale, of th roperty b ou in violation of the terms of the Unison Unison HomeOwner Agreement, o ii) any oth prolonged, material and uncured default by you under the terms of the Unison nison Ho Owner Agreement, Investor may reduce the Balance Payment by an amount equal to te ercent (10%) of the Initial Payment.

7.5 In an Event of Default which has resulted in a forecl ure action by a mortgage lender, tax authority or other lien holder (and provided that you have first reasonably exhausted any loss mitigation remedies offered to you by the holder of a senior lien), Investor may offer to you the remedy of an "Orderly Sale," as defined here and immediately below. The Orderly Sale remedy is designed to take advantage of the natural alignment between you and Investor, to prevent the Property from going to foreclosure and becoming a "distressed" property, to protect yours and Investor's interests in the Property, and to prevent a foreclosure event from impacting your credit.

7.6 If you accept Investor's offer of an Orderly Sale, Investor may cure the default through Protective Advances; in exchange you will give Investor the power to exclusively and unilaterally market and sell the Property by, among other things, executing a notarized "Irrevocable Limited Power of Attorney" substantially in the form of Exhibit A to this Covenant.

7.7 The remedies provided in the Agreement are cumulative. A party who asserts a right or seeks a remedy may also assert other rights or seek other remedies.

Draft

## 8 Maintenance and Inspection of Property

8.1 You will maintain the Property in good condition, and no worse than its condition as of the Effective Date, subject to normal wear and tear. You will prevent any waste, deterioration or decrease in value due to the Property's condition. You will periodically perform customary and reasonable repairs.

8.2 You are not entitled to any compensation for ordinary maintenance costs incurred in connection with maintaining the condition and value of the Property.

8.3 During the Term of the Unison Unison HomeOwner Agreement, Investor may:

8.3.1 Conduct reasonable inspections of the interior and exterior of the Property, including inspections conducted with drone photography.

8.3.2 Require you to provide written answers to questions regarding any conditions known to you which may affect the Property or its value.

8.4 You acknowledge that Investor will have no liability to you or to any third party for, and you hold Investor harmless from any loss or liability in connection with any defect or condition on or affecting the Property, whether known or unknown.

Draft

## 9 Possible Adjustments to Value

### 9.A Remodeling Adjustment

9.A.1 You may make modifications to the Property without prior written consent of Investor. All modifications must comply with all applicable laws, including zoning, permitting and the use of licensed tradespeople.

9.A.2 If you believe that any of your modifications materially increased the value of the Property ("Material Modifications") then you may request that a "Remodeling Adjustment" be made to the Ending Agreed Value of the Property when the Unison Unison HomeOwner Agreement ends.

9.A.3 A modification is a Material Modification under this Agreement only if it affects either the value or the useful life of the Property; in contrast to ordinary and necessary maintenance and repairs, which maintain the condition and value of the Property in its general condition. Costs of ordinary and necessary maintenance and repairs to keep the Property in an efficient operating condition, as more particularly outlined in U.S. Treasury Regulation 1.162-4 (as amended from time to time), are not eligible for a Remodeling Adjustment.

9.A.4 A "Remodeling Adjustment" is subject to these requirements:

9.A.4.1 You must request a Remodeling Adjustment in writing at least 45 days before any Exercise Event or any event that requires a determination of the Ending Agreed Value.

9.A.4.2 As part of the request, you must specify the Material Modifications for which a Remodeling Adjustment is sought and provide Investor with photographic and supporting evidence of the Material Modifications in accordance with Section 9.A.5 below.

9.A.4.3 An appraiser will determine if your Material Modifications have increased the Ending Agreed Value of the Property. Specifically, the appraiser will provide two values for the Property: the actual value of the Property as-is (which is called the "Actual Value"), and a hypothetical figure representing what the value of the Property would be if it had not been materially modified (which is called the "Hypothetical Value"). If the Appraisal is conducted in connection with a Permitted Sale, the appraiser will assume that the agreed sale price between you and third-party buyer in the Permitted Sale is the Actual Value of the Property. The difference between the Actual Value and the Hypothetical Value is the value of the Remodeling Adjustment. The appraiser will be instructed to consider the age, depreciation and potential functional obsolescence of Material Modifications, and not to consider the cost of the Material Modifications.

9.A.5 You will maintain, and provide to appraiser and Investor upon any request for a Remodeling Adjustment, photographic and other physical documentation of the Property b fore completion of the Material Modifications, which will be sufficient in scop lar y number and detail to permit the appraiser to compare the Actual Valu o the Hyp thetical Value, in appraiser's discretion.

9.A.6 o Remodeling A ustment will be given to the extent (i) the Material Modifications are etermined by Appraisal to have become functionally obsolete; (ii) any modific ons result in a violation of this Agreement; or (iii) the p tographi d other supporting evidence provided by you is not of sufficient qual upport th pp aiser's calculation.

9.A.7 No Remodelin Adjustment will be made if the Unison Unison HomeOwner Agreement i terminated at any tim prior to the third anniversary of the Effective Date.

9.A.8 If the Appraisal valu on proces scribed a ve termines that the Actual Value minus the Hypothetical Value lds a neg number, Investor may apply any such decrease in value as a " egative R modeling A ustment" when calculating the Ending Agreed Value, at any tim uring the T m. If Investor believes the process described above would lik y result in Negative Remodeling Adjustment, then Investor may obtain such Appraisal.

9.A.9 Provided all of the conditions of this Sect n 9.A are met, Investor will apply a Remodeling Adjustment in its calculation of the Investor Interest by reducing the Ending Agreed Value by the amount of the Remodeling Adjustment.

Draft

**9.B Deferred Maintenance Adjustment**

9.B.1 If Investor determines that either (i) you have breached your duties of maintaining and repairing the Property; or (ii) the Ending Agreed Value is negatively affected as the direct result of a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term, Investor will have the right in consultation with independent appraisers, third party experts and inspectors to make a commercially reasonable estimate of the dollar amount of such deferred maintenance and to apply such dollar amount as a "Deferred Maintenance Adjustment" when calculating the Ending Agreed Value.

9.B.2 Investor may also apply a Deferred Maintenance Adjustment when determining the Ending Agreed Value of the Property where: (i) as of the Effective Date, Investor identified and expressly reserved for a Deferred Maintenance Adjustment significant material defects or conditions in or on the Property which, if not remedied promptly or within a reasonable time, posed clear and serious risks to the

Property improvements or Property value, and you failed to correct such defects or conditions; or (ii) if you knew or had reason to know of such a defect or condition at the time of the Property Purchase or during the Term of the Unison Unison HomeOwner Agreement, but failed or neglected to disclose it to Investor.

**10 Appraisal and Appraisal Expenses**

10.1 An "Appraised Value" is an independent third-party "Appraisal" (as defined in this Section), or valuation, of the Property made in connection with the Unison Unison HomeOwner Agreement. All Appraisals will be conducted by an appraiser approved in advance by Investor and unaffiliated with either you or Investor, and who satisfies the requirements of Fannie Mae, Freddie Mac or FHA and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and related regulations, and any applicable state laws, as of the date of the Appraisal, and in compliance with the Uniform Standards of Professional Appraisal Practice.

10.2 You will cooperate with the appraiser by granting full access to the Property and making available any relev cuments and information in your possession pertaining to the Property.

10.3 If either p concludes that Appraisal contains a material omission or material error of fact, eith party may, no late han 10 days after receipt of the Appraisal, request a reconsi ration of the Appr al, at the party's own cost.

10.4 As allowed by li e law, y will pay all fees and expenses owed to third parties (but excluding Attorneys' Fees) in onnec n with an appraisal or other valuation of the Property ("Appraisal Expenses") as ciated with the first Appraisal obtained in connection with: (i) initial valuation of the P perty prior to ution of the Unison Unison HomeOwner Agreement, unless paid by Investor; (ii) any pr posed or actual sale; (iii) any Option exercise by Investor; (iv) any Special Te inat n; (v) a allocation of insurance or condemnation proceeds; (vi) any determinatio of an En g greed Va vii) any determination of a Remodeling Adjustment or Defer d Maint ance Ad ment ; and (viii) any new loan secured by the Property agreed to in wr g by Inv or a er the Effective Date (an "Approved Subsequent Loan").

10.5 If there is more than one Appraisal of the Property obtai d in connection with any of the events described in Section 10.4 above, the Apprais xpense will be paid by the party who requested the additional Appraisal, or if both partie gree that an additional Appraisal should be obtained, by both parties divided equally. If Appraisal Expenses have not been paid by the party required to bear them, the other party may subtract them out of the party's funds from escrow, as allowed by applicable law.

10.6 All Appraisals must conform to Investor's most current Appraisal requirements.

**11 Debt Limits, Property Obligations and Loans**

11.1 You may not at any time increase the total principal balance of loans secured by liens on the Property (including the unused portion of any committed credit line) to exceed the Maximum Authorized Debt specified in the Unison Unison HomeOwner Option Agreement.

11.2 The Maximum Authorized Debt limitation applies both to Approved Existing Loans and Approved Subsequent Loans.

11.3 You will keep the Property free of any liens, title exceptions, and easements except for: liens securing Approved Existing Loans or Approved Subsequent Loans and Permitted Encumbrances.

Draft

11.4 If there is a default under any loan or other obligation secured by a lien on the Property, you will take immediate action necessary to: (i) cure the default, (ii) terminate any foreclosure or enforcement action, (iii) satisfy the secured obligation, and/or (iv) remove or release such lien from the Property.

11.5 If during the Term of the Unison Unison HomeOwner Agreement, you want an Approved Subsequent Loan, you must:

11.5.1 Provide to Investor all loan documentation related to the proposed loan no later than 3 business days prior to the proposed close of the loan.

11.5.2 Cooperate with Investor to obtain an Appraisal of the Property, with such Appraisal to be completed no later than 3 business days prior to the proposed close of the loan.

11.5.3 Ensure that copies of all loan documents and all documents recorded against the Property are delivered to Investor immediately following the closing of the loan.

11.5.4 Obtain Investor's written consent to the loan. Investor will not unreasonably withhold consent if:

(a) The Appraised Value of the Property is greater than or equal to the Original Agreed Value and the then-current principal balance of all loans secured by liens on the Property plus the amount of the proposed loan is less than or equal to the Maximum Authorized Debt.

(b) The Appraised Value of the Property is less than the Original Agreed Value, the proposed loan is being used solely to refinance existing senior debt secured by the Property, and the amount of the proposed loan is less than or equal to the then-current principal balance of all loans secured by the Property, plus actual and reasonable refinancing costs.

11.6 Investor will subordinate the priority of its rights under the Unison Unison HomeOwner Agreement to the lien of any lender that extends to Owner an Approved Subsequent Loan, provided that: (i) the Approved Subsequent Loan satisfies the requirements of this Section 11; and (ii) any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor.

11.7 Investor will not consent to any lien on the Property that could materially impair Investor's rights, including, reverse mortgage loans, shared appreciation mortgage loans, mortgage loans with negative amortization or prepayment penalties, private or non-institutional loans, unrecorded loans secured by the Property, and certain loans with payment reset or other variable payment features.

11.8 Investor is not liable for any loans obtained by you.

11.9 Investor makes no representations regarding the availability or terms of any loan that you may seek during the Term of the Unison Unison HomeOwner Agreement, and will have no liability to you as a result of the unavailability or unfavorable terms of any such loan.

**12 Taxes and Assessments**

12.1 You will promptly pay all taxes and assessments accruing on the Property and will not apply for any deferrals. You will provide Investor proof of payment upon request.

12.2 You are entitled to the full benefit of any tax advantages arising in relation to the Property, including, without limitation, all available deductions for taxes and mortgage interest paid by

Draft

you. Investor does not provide tax advice and makes no representations as to the tax advantages or disadvantages which may accrue to you in connection with the Property or the Unison Unison HomeOwner Agreement.

## 13 Protective Advances

13.1 If you fail to protect the Property and Investor's rights, Investor may make "Protective Advances," as defined in this Section, as Investor deems appropriate.

13.2 Investor will provide 10 days' written notice to you, to correct your default, such as:

13.2.1 The placement of insurance; the payment of taxes, assessments, levies, liabilities, obligations and other charges of every nature on the Property;

13.2.2 The making of necessary repairs;

13.2.3 The cure of any defaulted loans; or

13.2.4 The removal of a receiver appointed for the Property.

13.3 If, after the 10 days' written notice, you have not cured the default, Investor may make the payment itself. All such payments by Investor (including attorneys' fees incurred in litigation or arbitration with parties other than you) are deemed Protective Advances.

13.4 Prior notice from Investor is not required if the Unison Unison HomeOwner Agreement expressly so provides, or when Investor determines that prompt action is necessary to protect the Property and Investor's rights.

13.5 Investor incurs no liability for its election not to take any action authorized under this Section 13.

13.6 Investor may demand prompt reimbursement for any Protective Advances. You must reimburse Investor no later than 10 days after demand. Protective Advances incur interest at the rate of 1.5% per month, subject to applicable law, from the date of demand until paid in full. These charges are intended to be a reasonable liquidated estimate of those sums which Investor could be obliged to obtain and expend in the event appropriate corrective action(s) are not taken to protect the Property or Investor's rights, which sums and costs are not readily ascertainable, and will be difficult to predict or calculate.

13.7 You consent to Investor's unilateral authority to determine the appropriateness or necessity of any Protective Advances to you.

13.8 "Protective Advances," to the extent they are not reimbursed to Investor by you, become a component of what are called "Unpaid Owner Obligations." "Unpaid Owner Obligations," in total, are the sum of unreimbursed Protective Advances; unpaid interest, fees and other charges associated with Protective Advances; as well as any other amounts expended by Investor to protect its rights or the value of the Property in an Event of Default.

## 14 Insurance Coverage

14.1 You must maintain at your expense:

14.1.1 Insurance on the Property against fire and other hazards included in the special form (HO-3) policy (and any successor forms);

14.1.2 Hazard insurance, including flood hazard, and any other insurance Investor may reasonably require and which is common for similar properties in similar

Draft

locations, in an amount equal to the current replacement cost of the improvements on the Property, which amount will be increased not less frequently than annually as the replacement cost of the improvements increases.

14.1.3 Liability insurance on the Property against such risks and in such amounts as are reasonable for similar properties in similar locations.

14.2 You authorize Investor to communicate with all insurance companies to ensure the maintenance of policies, the coverage, and the reimbursement of losses.

14.3 Investor must be named as an additional named insured under all hazard and liability insurance policies obtained by you related to the Property.

14.4 You may obtain insurance from any insurance company reasonably acceptable to Investor.

14.5 You must provide to Investor copies of all insurance policies related to the Property when the insurance is obtained. You must provide Investor with proof of coverage upon request.

14.6 If you fail to maintain or obtain the insurance coverage required by this Section 14, Investor may obtain such coverage on the Property. Any such expenses paid by Investor are Protective Advances.

## 15 Distribution of Insurance Proceeds for Losses

15.1 Subject to your obligations and the requirements in connection with any senior lien, insurance for losses will be distributed as described in this Section 15.

15.2 You and Investor will cooperate in the pursuit, settlement, and adjustment of any losses under any insurance policies.

15.3 In the event of damage to the Property where restoration or repair is economically feasible, subject to your obligations in connection with senior liens, the proceeds must promptly be applied to restore or repair the Property to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, further subject to:

15.3.1 Investor has the right to approve any restoration or repair plans, including the contractors or subcontractors used and the costs associated with the restoration or repair.

15.3.2 Investor has the right to release insurance proceeds to the individuals or entities performing the repair and restoration work in one or more progress payments as the work is completed.

15.3.3 Unless required by law, Investor is not required to pay you any interest or earnings on insurance proceeds.

15.3.4 You are responsible for ensuring that any repair or restoration work is completed in a cost-effective manner that in no way impairs the structural integrity, habitability or value of the Property.

15.3.5 You are responsible for obtaining any governmental approvals or permits that are required for such repair or restoration work.

15.3.6 Investor has no obligation to pay any amount of the restoration or repair of the Property even if the insurance proceeds are insufficient to complete the restoration or repair. You are responsible for any shortfall.

15.4 If restoration or repair is not economically feasible, all insurance proceeds will be allocated in the following order:

15.4.1 To payment of reasonable expenses incurred by you or Investor in collecting and contesting with the insurers the payments under the relevant insurance policies, including attorney's fees that have been approved by Investor;

15.4.2 To payment of all senior liens that have priority over the Unison Unison HomeOwner Agreement;

15.4.3 To Investor, in an amount equivalent to the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the destruction or damage occurred; and

15.4.4 To you, the balance of the proceeds.

15.5 In the event you fail to maintain insurance in amounts required by Investor, or any insurance claim is denied due t our action or inaction, resulting damages may be difficult to ascertain. In the event of lo o In stor resulting directly from your failure to maintain insurance or obtain a claim u and Inv tor agree that Investor is entitled to what are called "Special damages fo ailure to Insure The Special Damages for Failure to Insure are calculated as the amou of the Investor In est as it would have been calculated had Investor exercised its Option mmediately before t destruction or damage occurred, but without credit of the Balance P yment to you.

Draft

**16 Condemnation of Property**

16.1 If the Property is conde ned in whole art during the Term, all condemnation proceeds will be distributed as follows:

16.1.1 To repay any reaso able costs xpenses d by you or Investor in collecting and contes ng the demnati proceeds, including attorney's fees that have been approved b vestor;

16.1.2 To payments for extinguishing al iens that h e pr ority over the Unison Unison HomeOwner Agreement;

16.1.3 To Investor, to the extent of the Investo Interest;

16.1.4 To you, the balance of the proceeds.

16.2 In the case of a partial condemnation: (i) Investor retains its rights with respect to any Property that has not been condemned; and (ii) after distribution of the proceeds of the partial condemnation, for all remaining calculations to be made under the Unison Unison HomeOwner Agreement, the Balance Payment will be reduced by an amount equal to the condemnation proceeds less any amounts paid under Section 16.1.1 and 16.1.2, multiplied by the Investor Percentage.

**17 Multiple Owners**

17.1 If you are more than one individual:

17.1.1 The Unison Unison HomeOwner Agreement must be signed by each of you;

17.1.2 All of you are jointly and severally liable for liabilities and obligations under the Unison Unison HomeOwner Agreement;

17.1.3 Notice required to be given to you is adequate if given to any of you; and

17.1.4 Investor may treat any notice received from any one of you as notice from all of you.

**18 Revocable Trusts**

18.1 If you are the trustee of a Revocable Trust:

18.1.1 All trustees and all trustors must be disclosed to Investor and must sign the Unison Unison HomeOwner Agreement;

18.1.2 All rights and powers specified for, and all actions required of, you in the Agreement that are exercised by a trustee are deemed approved and exercised by all trustees unanimously;

18.1.3 All truste s and all trustors, in their capacities as individuals, are jointly and severa l ble with you for Owner's liabilities and obligations under the Ag ment;

18.1.4 All representatio and warranties by you in the Agreement are made by all trustees on beha of the Revocable Trust and by all trustees and all trustors in their capacitie s individuals;

18.1.5 N quired to b given to you is adequate if given to any of the trustees; and

18.1.6 Investor may at any notice received from any trustee as notice from all trustees and from y .

**19 Miscellaneous Provisions**

19.1 <u>Notices</u>. You will immediately prov d estor wit wr ten notice of any event that may have a material effect upon the Property the valu f the Pr y, or Investor's ability to exercise any of Investor's rights.

19.1.1 All required notices must be in writing a will be considered given when delivered (1) personally, (2) to the mai g address set forth in the Option by overnight delivery by a nationally recogn zed courier service, or (3) by email to the email address specified for you in the Option.

19.1.2 The following notices are not given by you to Investor until written confirmation of receipt is made by Investor to you: notices of default and notices of sale in connection with secured liens on the Property; notices of delinquency in tax or insurance payments on the Property; notices of your death; and notices of the commencement of legal or other action concerning the Property, or of your bankruptcy proceedings.

19.2 <u>Indemnification</u>. You hereby agree to indemnify and hold Investor harmless from, and against, any and all claims, damages, liabilities, actions and expenses (including, without limitation, attorneys' fees and costs) arising out of or relating to: (i) a breach of any of your covenants, representations or warranties under the Unison Unison HomeOwner Agreement; (ii) any act or omission by you or your agents; or (iii) the Property.

19.3 <u>Right to Disclose Certain Information</u>. Subject to applicable laws, Investor may share certain personal and financial information about the Unison Unison HomeOwner Agreement with affiliates, subsidiaries, investors, assignees and those with which it intends to conduct business. This information includes, without limitation, the address and general location of the

Draft

Property, Appraisal reports and other valuations of the Property, and the financial terms of the Unison Unison HomeOwner Agreement.

19.4 Right to Obtain Certain Information. Subject to applicable laws, Investor may obtain certain personal and financial information as necessary to maintain the Agreement, including credit report histories, or current balances and payoff amounts of loans secured by the Property.

19.5 Relationship. Investor shall not be deemed a partner, joint venturer, trustee, agent, representative, lender or fiduciary with, or of, you. You expressly waive any claims against any of Investor's agents, assignees, affiliates, employees, directors or funding sources.

19.6 Delegation of Duties. Investor may execute any of its duties under the Unison Unison HomeOwner Agreement by or through agents.

19.7 Successors and Assignees. If the Agreement is properly assigned, then you and Investor agree it will bind and benefit your respective heirs, successors, and assigns.

19.7.1 Investor may assign Investor's right and title to, and interest in, the Unison Unison HomeOwner Agreement at any time and to any individual or entity without prior notice to or consent of you.

19.7.2 You agree to cooperate as necessary upon Investor's request to ensure assignee's interest in the Property.

19.7.3 Absent Investor's prior written consent you may not assign or otherwise transfer the Unison Unison HomeOwner Agreement.

Draft

19.8 Survival. The indemnification provisions, obligations to pay any of your Unpaid Obligations, obligations to pay Closing Costs, all covenants, representations and warranties of you, and all other provisions which are required by their terms to be enforceable following expiration or termination, including, without limitation provisions prescribing monetary remedies, fees, costs and expenses owed by you in connection with an Event of Default, will survive for three years after the end of the Unison Unison HomeOwner Agreement.

19.9 Attorneys' Fees. If a dispute arises out of the Unison Unison HomeOwner Agreement, then the prevailing party will be entitled to reasonable attorneys' fees and costs.

19.10 Applicable Law and Venue. The Unison Unison HomeOwner Agreement will be governed by New Jersey law. Any lawsuit or arbitration arising directly or indirectly out of the Agreement will be contested in the venue where the Property is located.

19.11 Correction of Document. The parties agree to correct any error or inaccuracy in the Unison Unison HomeOwner Agreement, to ensure that such documents reflect the true and correct terms upon which the parties agreed to enter into and to replace any missing or misplaced documentation, or to confirm and restate any authorities granted hereunder to the extent such authority is impacted by a change in any law, rule or regulation.

19.12 Severability. Each provision of the Unison Unison HomeOwner Agreement must be interpreted in a way that is valid under applicable law. If any provision is held invalid or unenforceable, such adjudication shall not affect, impair, invalidate, or nullify the remainder of the Agreement, but shall only affect that provision.

19.13 Waivers. A waiver by Investor of a breach of any term in the Unison Unison HomeOwner Agreement by you will not be considered (i) waiver of a further breach of the same term, or (ii) a waiver of a breach of any other term, or (iii) a waiver of Investor's right to declare an immediate or subsequent default.

19.14 Injunction. Notwithstanding anything to the contrary in the Unison Unison HomeOwner Agreement or otherwise, if Investor is stayed or enjoined from enforcing any of Investor's rights under the Unison Unison HomeOwner Agreement, then any deadline or notice period prescribed in that Agreement is automatically stayed for the duration of such stay, injunction or legal prohibition.

19.15 Entire Agreement. The Unison Unison HomeOwner Agreement and its attachments contain the entire understanding between the parties.

19.16 Titles and Summary. The Titles and Summary are inserted in the Agreement for reference purposes only and must not be used to interpret the Agreement.

19.17 Counterparts. The Unison Unison HomeOwner Agreement and its attachments may be executed in counterparts, each of which shall be deemed an original, but all of which together constitute one and the same Agreement.

19.18 Waiver of Jury Trial. To the fullest extent permitted by law, you and Investor hereby voluntarily and irrevocably waive trial by jury in any litigation or proceeding related to the Unison Unison HomeOwner Agreement.

19.19 Covenants To Run With Land. The Option, Covenant, and the other provisions of the Unison Unison HomeOwner Agreement are deemed to be covenants running with the land as reflected in the Recorded Memorandum. The interpretation of the phrase "covenants running with the land" shall be within the meaning of the applicable law of the state where the Property is located so as to give it the broadest possible application.

Draft

## 20 Arbitration

20.1 You and Investor agree that either party may, at its sole election, choose to submit to neutral, binding arbitration pursuant to this Section 20 (the "Arbitration Provision") rather than court action the following controversies (which will be called "Claims"):

> any past, present, or future claim, dispute, or controversy (including matters arising as initial claims, counter claims, cross-claims, third-party claims, or otherwise) whether in contract, tort (intentional or otherwise), constitution, statute, common law, principles of equity, or otherwise, between you and Investor or Investor's employees, directors, agents, successors or assigns, which arises out of or relates to the Unison Unison HomeOwner Agreement, including any dispute regarding an Appraised Value of the Property, Remodeling Adjustment or Deferred Maintenance Adjustment, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)

20.2 IF A DISPUTE IS ARBITRATED, YOU GIVE UP THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST INVESTOR INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND INVESTOR WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

20.3 The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable. The interpretation and scope of this Arbitration Provision, and the arbitrability of any Claim shall be resolved by neutral, binding arbitration and not by a court action. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and enforceable.

20.4 Arbitration shall be initiated with the American Arbitration Association (the "AAA") or the Judicial Arbitration and Mediations Service ("JAMS"). The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or applicable law. Neither you nor Investor waive the right to arbitrate by using self-help remedies (such as non-judicial foreclosure), or by filing a judicial action to related to the Property (whether to recover a deficiency balance, or for individual injunctive relief).

20.5 The arbitration fees will be shared equally by you and Investor. You and Investor shall each pay their own attorneys' fees incurred in connection with such arbitration, except as otherwise provided by law. If a statute gives the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein. Any award by the arbitrator shall be in writing and will be final and binding on all parties. Any court having jurisdiction may enter or confirm judgment on the arbitrator's award.

20.6 This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act ("FAA"). The arbitrator will apply substantive law consistent with the FAA and the applicable statute of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator shall take steps to reasonably protect confidential information during and after the completion of the arbitration.

Draft

(remainder of page intentionally blank)

IN WITNESS, WHEREOF, intending to be legally bound, each of you have executed this Unison Unison HomeOwner Covenant Agreement:

**You:**

Sign: ________________________________________
Luis Meneses

Date: ________________________________________

Draft

## Schedule A to the Covenant: Index of Defined Terms

This Index identifies where you can find the meaning of every defined term in the Unison HomeOwner Agreement.

**"Actual Value"** is defined in this Covenant § 9.A.4.3.

**"Agreement"** is an abbreviation for the Unison HomeOwner Agreement, which itself is defined in the Option Agreement § 1.2, and which you are executing today.

**"Appraisal"** is defined in this Covenant § 10.1.

**"Appraisal Expenses"** is defined in this Covenant § 10.4

**"Appraised Value"** is defined in this Covenant § 10.1.

**"Approved Existing Loan"** is defined in this Covenant § 2.1.

**"Approved Subsequent Loan"** is defined this Covenant § 10.4.

**"Arbitration Provision"** is defined i his Cov ant § 20.1.

**"Balance Payment"** means th ollar amount spe ed in the table at the end of the Option Agreement § 1, and is further described in § 3.1 of at contract.

**"Certification of Non-Owner O upants"** i efined in this Covenant § 2.8.

**"Claim"** is defined in this Covenant § 20.1.

**"Closing Costs"** is defined in this Covenant 4.A5.

**"Covenant"** is an abbreviation for the "Unison Hom wner Covena Agreement" that you are executing today.

**"Deferred Maintenance Adjustment"** is defined in th Coven t § 9.B.1

.

**"Effective Date"** is the date specified in the table at the end of the Option A ement § 1.

**"Effective Sale Price"** is defined in the Table that defines "Market Valu in Schedule B to this Covenant.

**"Ending Agreed Value"** is defined in Schedule B to this Covenant.

**"Event of Default"** is defined in this Covenant § 4.D.2.

**"Exercise Event"** is summarily defined in the Option Agreement § 6, and each particular Exercise Event is defined in this Covenant §§ 4.A, 4.B, 4.C and 4.D, respectively.

**"Expiration Date"** means the date specified in the table at the end of the Option Agreement § 1.

**"Hypothetical Value"** is defined in this Covenant § 9.A.4.3.

**"Initial Payment"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 2.1 of that contract.

**"Intrafamily Transaction"** is defined in this Covenant § 4.A.8.

**"Investor"** is defined in the Option Agreement § 1.1 and in this Covenant § 1.1.

Draft

**"Investor Interest"** is defined in the Option Agreement § 7.

**"Investor Percentage"** means the Percentage specified in the table at the end of the Option Agreement § 1, and is further described in § 3.1 of that contract.

**"Irrevocable Limited Power of Attorney"** is defined in this Covenant § 7.6, and may be found as Exhibit A to this Covenant.

**"Last Surviving Signatory"** is defined in this Covenant § 4.C.1.

**"Market Value"** is defined in the table in Schedule B to this Covenant.

**"Material Modification"** is defined in this Covenant §§ 9.A.2 and 9.A.3.

**"Maximum Authorized Debt"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 9.1 of that contract.

**"Negative Remodeling Adjustment"** is defined in this Covenant § 9.A.8.

**"Non-Owner Occupant"** is defined in this Covenant § 2.8.

**"Non-Owner Occupant Disclosure and Acknowledgment"** is defined in this Covenant § 2.8 and may be found as Exhibit B to this Covenant.

**"Option"** is defined in the Option Agreement § 3.1.

**"Option Agreement"** is an abbreviation for the "Unison HomeOwner Option Agreement" that you are executing today.

**"Orderly Sale"** is defined in this Covenant §§ 7.5—7.6

**"Original Agreed Value"** means the dollar amount specified in the table at the end of the Option Agreement § 1, and is further described in § 5.1 of that contract.

**"Permitted Encumbrance"** is defined in this Covenant § 2.1.

**"Permitted Sale"** is defined in this Covenant § 4.A.

**"Property"** means the Property identified in the table at the end of the Option Agreement § 1, and is further described in Exhibit A to that contract.

**"Property Purchase"** is defined in this Covenant § 2.9.

**"Protective Advances"** is defined in this Covenant § 13.

**"Recorded Memorandum"** is an abbreviation for the "Unison HomeOwner Recorded Memorandum" that you are executing today.

**"Reasonable Value"** is defined in the Table of Market Value at Schedule B to this Covenant, for the "Payment of insurance proceeds" event.

**"Remodeling Adjustment"** is defined this Covenant §§ 9.A.2—9.A.4.

**"Revocable Trust"** is defined in this Covenant § 2.2.

**"Revocable Trust Rider"** is defined in this Covenant § 2.2 and may be found as a rider to the Security Instrument.

**"Sale-By-Owner Transaction"** is defined in this Covenant § 4.A.8.

Draft

**"Security Instrument"** is an abbreviation for the "Unison HomeOwner Security Instrument" that you are executing today.

**"Solicited Sale Value"** is defined in this Covenant § 5.1.6.

**"Special Damages For Failure To Insure"** is defined in this Covenant § 15.5.

**"Special Termination"** is defined in the Option Agreement § 8.1 and further defined in this Covenant § 5.1.

**"Special Termination Price"** is defined in the Option Agreement § 8.1 and again in this Covenant § 5.1.5.

**"Term"** means 30 years, as specified in the table at the end of the Option Agreement § 1; it is further described in § 4.1 of that contract.

**"Unpaid Owner Obligations"** are defined in this Covenant § 13.8.

**"You"** is defined in the Option Agreement § 1.1.

Draft

**Schedule B to the Covenant: "Ending Agreed Value" and "Market Value"**

This Schedule provides the definitions of **"Ending Agreed Value"** and a term used in that definition: **"Market Value."**

**"Ending Agreed Value"** means:

Market Value (determined per the table below)
*minus* any Remodeling Adjustment*
*plus* any Deferred Maintenance Adjustment.

*If there is a Negative Remodeling Adjustment, then the absolute value of that number is added rather than subtracted.

**"Market Value"** is determined according to the following table, which indicates that Market Value depends on the Event that triggers the need for the valuation. The first column of the table identifies the Section of the Covenant where the Event is described.

| **Covenant Section** | **Event** | **Market Value Equals** |
|---|---|---|
| § 4.A | A Permitted Sale *before* the five-year anniversary of the Effective Date | The greater of (i) the Effective Sale Price or (ii) the Original Agreed Value.<br><br>The "Effective Sale Price" is the monetary amount for which the Property is to be sold by you or Investor, as applicable, to a third-party buyer, as set forth by the escrow holder. The Effective Sale Price does not include any deduction for any: (a) Closing Costs; (b) payments to extinguish liens on the Property; (c) outstanding taxes; (d) Appraisal Expenses; and/or (e) amounts payable to Investor. |
| § 4.A | A Permitted Sale *after* that five-year period | The Effective Sale Price |
| § 4.A | A Property sale by you that is not a Permitted Sale, including a Sale-By-Owner, and an Intrafamily Sale | In Investor's discretion, either (i) the Effective Sale Price, or (ii) the Appraised Value. |
| § 4.B | End of the Term of the Agreement | The Appraised Value. |
| § 4.C | Death of the Last Surviving Signatory | |
| § 4.D | Following any material and uncured Event of Default | The greatest of: (i) the Original Agreed Value, (ii) the highest Appraised Value after the date of the first Event of Default, or (iii) the Effective Sale Price. |
| § 5 | Special Termination | The greater of: (i) the Appraised Value at the time of Special Termination, or (ii) the Solicited Sale Value. |

Draft

| Covenant Section | Event | Market Value Equals |
|---|---|---|
| § 14 | Payment of insurance proceeds | The Appraised Value as it existed immediately prior to the destruction or damage.<br><br>Or, if valuing the Property by Appraisal is not possible due to the destruction or damage, the Property value immediately prior to the destruction or damage as determined by some other reasonable process (the "Reasonable Value") based on an expert third-party opinion obtained by Investor. |
| § 16 | Payment of condemnation proceeds | The greater of (i) the Appraised Value as it existed immediately prior to the condemnation; or (ii) the condemnation proceeds minus payments for reasonable costs and expenses and for extinguishing senior liens as described in Covenant § 16.1.<br><br>Or, if valuing the Property by Appraisal is not possible due to the condemnation, the Reasonable Value (defined in the row above) immediately prior to the condemnation. |

Draft

**Prepared by,**
**recording requested by, and when recorded mail to:**
Justin Tanimoto
Unison Agreement Corp.
PO Box 2389
San Francisco, CA 94126

650 California St, Suite 1800
San Francisco, CA 94108

Unison ID Number: FRX-436170
Title File Number: UH-304227
Parcel Identification Number:
09 00301-0000-00011

Draft

## MEMORANDUM OF UNISON HOMEOWNER AGREEMENT

This **MEMORANDUM OF UNISON HOMEOWNER AGREEMENT** (“**Unison HomeOwner Recorded Memorandum**”) is entered into as of July 7, 2022 (“**Effective Date**”) by LUIS MENESES. A SINGLE MAN, whose address is 229 Palisade Rd, Linden, NJ 07036 (individually or collectively “**Owner**”).

Owner hereby declares that Owner has entered into that certain Unison HomeOwner Agreement (“**Unison HomeOwner Agreement**”) with Unison Agreement Corp., a Delaware corporation, and its successors and assignees (“**Benefited Party**”), whose address is 650 California St, Suite 1800, San Francisco, CA 94108, as of the Effective Date, pursuant to which Owner grants and conveys to Benefited Party the option to purchase an undivided percentage interest (“**Option**”) in that certain real property (the “**Property**”) described in attached **SCHEDULE A**, and pursuant to which Owner has made certain covenants and promises to, or for the benefit of, Benefited Party in connection with the Property, all as more particularly described, and on the terms and conditions set forth in the Unison HomeOwner Agreement. The percentage interest shall equal the Investor Percentage as specified in the Unison HomeOwner Option Agreement. The Option is irrevocable by Owner. The term of the Option shall commence on the Effective Date and shall expire at 11:59 p.m., Pacific Time, on the day immediately preceding the thirtieth (30th) anniversary of the Effective Date (“**Expiration Date**”) (subject to certain extensions as set forth in the Unison HomeOwner Agreement). The terms of the Unison HomeOwner Agreement are hereby incorporated into this Unison HomeOwner Recorded Memorandum by this reference.

MEMORANDUM OF COVENANTS RUNNING WITH THE LAND

This Unison HomeOwner Recorded Memorandum identifies the covenants and promises set forth in the Unison HomeOwner Agreement that run with the land and will be binding upon any party who acquires Owner’s interest in the Property so long as the Unison HomeOwner Agreement has not expired or been terminated. The Unison HomeOwner Agreement covenants are deemed to be covenants running with the land within the meaning of the applicable law of the State of New Jersey so as to give it the broadest possible application, and include, without limitation:

a. **Section 8** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain and repair the Property and to ensure that use of the Property complies with all applicable state, federal and local laws and regulations.

b. **Section 14** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain insurance on the Property against certain hazards.

c. **Section 12** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to pay all taxes and assessments accruing on the Property.

**Owner’s Initials:** __________/__________/__________/__________

d. **Section 3** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to occupy the Property as Owner's principal residence and prohibits use of the Property for commercial or other non-residential purposes.

e. **Section 11** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the ability of Owner to increase the amount of debt to third parties secured by liens on the Property beyond the Maximum Authorized Debt specified in the Unison HomeOwner Agreement, and requires Owner to keep the Property free of liens prohibited under the terms of the Unison HomeOwner Agreement or not otherwise approved by Benefited Party.

f. **Section 4A** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the right of Owner to transfer the Property other than as expressly permitted under the terms of the Unison HomeOwner Agreement.

<u>RELEASE</u>

This Unison HomeOwner Recorded Memorandum shall remain in full force and effect until released by a written termination or quitclaim deed executed and notarized by Benefited Party and recorded in the real property records for the county where the Property is located, or until extinguished by operation of law.

In construing this Memorandum of Unison HomeOwner Agreement, where the context so requires, singular includes the plural and all grammatical changes shall be implied to make the provisions hereof apply equally to corporations and to individuals.

[Signatures appear on following page.]

Draft

**Owner's Initials:** __________/__________/__________/__________

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Benefited Party and Owner have each executed this Unison Recorded Memorandum as of the date set forth above.

**BENEFITED PARTY:**

Unison Agreement Corp.,
a Delaware corporation
650 California St Suite 1800, San Francisco, CA 94108

Sign: _________________________ Date: ________
Name: Justin Tanimoto
Title: Authorized Signatory

**OWNER(S):**

Sign: ______________________ __ ______
Luis Meneses

Date: _______________________________ ______

Draft

**Owner Address:**

229 Palisade Rd, Linden, NJ 07036

**BENEFITED PARTY'S ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN FRANCISCO )

On__________________, before me ________________________________________, Notary Public, personally appeared Justin Tanimoto who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

__________________________________________ (seal)

Draft

**<u>OWNERS' ACKNOWLEDGMENT</u>**

Individual Notary Acknowledgment

Pursuant to NJS 46:14-2.1

**STATE OF: NEW JERSEY**

**COUNTY OF: ____________________**

I CERTIFY that on this _________ day of __________________, 20_____ by ______________________________________________________, personally came before me and acknowledged under oath, to my satisfaction that this person (or if more than one, each person):

(a) Is named in and personally signed this document,

(b) Signed, Sealed and Delivered this document as his or her act and deed.

Draft

______________________________
Notary Public (Seal)

## SCHEDULE A

## LEGAL DESCRIPTION

That certain real property situated in the City of Linden, County of Union, State of New Jersey, described as follows:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Linden, in the County of Union, State of New Jersey.

Beginning at an iron bar in the southeasterly line of Palisade Road (50' R.O.W.), said point being distant southwesterly 260.00' from the intersection of the southwesterly line of Summit Terrace (60' R.O.W.) with the southeasterly line of Palisade Road and thence,

1. S. 51 degrees 00 minutes 00 seconds E. 100.00' to a point and thence,

2. S. 39 degrees 00 minutes 00 seconds W 80.00' to a point and thence,

3. N. 51 degrees 00 minutes 00 seconds W. 100.00' to an iron bar in the southeasterly line of Palisade Road and thence,

4. Along the same, N. 39 degrees 00 mi tes seconds E. 80.00' to the point or place of beginning.

The above described lands are kn n as Lot 11 in lock 301 as shown on the current Official Tax Maps of the City of Linden.

Premises more commonly kno as 229 Palisad Road.

The above description is in accordanc h a survey ed by Brunswick West, Inc. dated 9/19/2019 as File No. 19.2224.

APN: 09 00301-0000-00011

[end of gal de riptio

Draft

**Prepared by,**
**recording requested by, and when recorded mail to:**
Justin Tanimoto
Unison Agreement Corp.
PO Box 2389
San Francisco, CA 94126

650 California St, Suite 1800
San Francisco, CA 94108

Unison ID Number: FRX-436170
Title File Number: UH-304227
Parcel Identification Number: 09 00301-0000-00011
Consideration Amount: $78,575

---

Draft

**UNISON HOM OW ER MORTGAGE AND SECURITY AGREEMENT**

This **Unison HomeOwn Mortgage an Security Agreement** ("**Unison Unison HomeOwner Security Instrument**"), is mad s of **July 7, 2022 Effective Date**"), among **LUIS MENESES. A SINGLE MAN**, whose address is 2 Palisade Rd, Linde NJ 07036 (individually or collectively "**Mortgagor**") and **Unison Agreement Corp.**, a elaware corpora n, and its successors and assignees ("**Mortgagee**"), whose address is 650 California Street, ite 1800 n Francisco, California 94108. Capitalized terms used in this Unison Unison HomeOwner Secur strument h ll have the meanings specified in this Unison Unison HomeOwner Security Instrument, or i not def ned herein, in that certain Covenant Agreement (" **Covenant Agreement**"), Option A ement (" **Option Agreement**") and that certain Memorandum Of Agreement (" **Recorded Memoran um**"), which docum nts, together with this Security Instrument, are collectively termed the " Agreement," executed by Mortgag r and Mortgagee concurrently herewith.

1. **Grant**. MORTGAGOR H REBY mo ages, g a , tra sfers and assigns to Mortgagee, and its successors and assignees, all of that prop rty (" **al Prop y**") located at 229 Palisade Rd, Linden, NJ 07036 as described in **SCHEDULE A**, attached h eto and m de a part h of.

Together with all improvements, replacements a additions ow or hereafter erected on the Real Property and all easements, appurtenances and fixtures now or he after a part of the Real Property. (The fixtures, improvements and the Real Property are collectively refe d to as the "**Property**.")

Together with all rents, issues, profits and proceeds, including without limitation insurance and condemnation proceeds, from the Real Property, subject, however, to the right, power and authority given to and conferred upon Mortgagee below to collect and apply such rents, issues and profits.

MORTGAGOR COVENANTS that Mortgagor is lawfully siesed of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for Permitted Encumbrances and the Permitted Senior Lien. Mortgagee warrants and will defend generally the title to the Property against all claims and demands, subject to Permitted Encumbrances and the Permitted Senior Lien.

2. **Secured Obligations.** Mortgagor makes the grant, transfer and assignment set forth in the "Grant" Section above for the purpose of securing:

**a.** Mortgagor's performance and Mortgagee's rights, under the Unison Unison HomeOwner Agreement;

Owner's Initials: _____/_____/_____/____

**b.** the performance and payment of the obligations of Mortgagor under the Unison Unison HomeOwner Agreement including:

**(i)** payment of all **Protective Advances**, including any unpaid interest and other fees and charges associated with such Protective Advances, owed to Mortgagee under the Unison Unison HomeOwner Covenant Agreement;

**(ii)** payment of all **Asset Administration Fees** owed to Mortgagee under the Unison Unison HomeOwner Covenant Agreement;

**(iii)** payment of all insurance proceeds owed to Mortgagee pursuant to the Unison Unison HomeOwner Covenant Agreement;

**(iv)** payment of all condemnation proceeds owed to Mortgagee pursuant to the Unison Unison HomeOwner Covenant Agreement;

**(v)** performance of those obligations to Mortgagee specified in the Unison Unison HomeOwner Agreement pursuant to the Unison Unison HomeOwner Covenant Agreement, including, without limitation payment of the Investor Interest under the Unison Unison HomeOwner Agreement; and

**(vi)** performance of the obligations of Mortgagor under the Unison Unison HomeOwner Covenant Agreement regarding Mortgagee's right to sell the Property following exercise of the **Option** and during **Orderly Sale.**

**c**. damages (subject to liquidation as provided below) arising to, or incurred by, Mortgagee from Mortgagor's failure to act or interference with Mortgagee's rights under the Unison Unison HomeOwner Agreement. Mortgagor and Mortgagee agree and acknowledge that the damages that would arise from Mortgagor's failure to act or interference are uncertain, depend on many factors, and would be extremely difficult to ascertain. Therefore, in a good faith effort to determine a method for reasonably estimating and liquidating the damages which would be incurred by Mortgagee arising from Mortgagor's interference or failure to act, Mortgagor and Mortgagee agree to the **Liquidated Damages** specified in **Section 8** below;

**d.** the performance of the obligations of Mortgagor contained in this Unison Unison HomeOwner Security Instrument or incorporated by reference;

**e.** any expenditures made by Mortgagee pursuant to, or under, this Unison Unison HomeOwner Security Instrument;

**f.** payment of all fees and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel (collectively "**Attorneys' Fees**") incurred by Mortgagee in the enforcement and collection of the obligations listed above and the protection of Mortgagee's rights related thereto, whether such fees are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Attorneys' Fees shall include, without limitation, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Unison Unison HomeOwner Security Instrument, to the interpretation or enforcement of the parties' rights under this Unison Unison HomeOwner Security Instrument, or to the Property;

The foregoing obligations are referred to collectively as the "**Obligations**."

3. **<u>Uniform Commercial Code Security Agreement and Fixture Filing</u>**. This Unison HomeOwner Security Instrument is intended to be, and shall constitute, a security agreement under the

Draft

Uniform Commercial Code as adopted or enacted and thereafter modified under the laws of the State or Commonwealth of New Jersey, (hereafter the "**Code**").

**a.** Grant of Lien. Mortgagor hereby grants to Mortgagee a lien on all present and future: (i) goods including without limitation fixtures, and (ii), general intangibles including without limitation, payment intangibles and contract rights (as those terms are defined in the Code), which arise from, relate to or are used in connection with the use, operation, occupancy or maintenance of the Real Property and the improvements thereon. Such items of Collateral shall constitute part of the Property. Such security interest shall secure the performance and payment of all Obligations of Mortgagor.

**b.** UCC Filing. Mortgagor agrees that Mortgagee may file either this Unison HomeOwner Security Instrument, or a copy of it, or a UCC-1 Financing Statement pursuant to the Code in such filing office or in such locations as are specified in the Code to perfect its lien on that portion of the Property that constitutes personal property.

**c.** Fixture Filing. This Unison HomeOwner Security Instrument constitutes a financing statement filed as a fixture filing pursuant to the Code on all goods which are or may become fixtures on the Real Property or any improvement now or hereafter. The party granting the lien ("Granting Party") is the Mortgagor hereunder and the "Secured Party" is the Granting Party hereunder. The Preamble of this Unison HomeOwner Security Instrument sets forth for the Granting Party and the Secured Party: (i) its respective name, (ii) whether it is an individual or organization, (iii) the type of organization (if applicable), and (iv) its mailing address. The real property to which the collateral is related is identified in Exhibit A to this Unison HomeOwner Security Instrument. Mortgagor holds free and clear legal and equitable title to the Real Property.

**d.** Mortgagor hereby represents, warrants and agrees that for the purposes of this Unison HomeOwner Security Instrument and for the benefit of Mortgagee the term "fixture" shall have the meaning provided in the Code and under other applicable law and shall include, without limitation, all goods attached to or imbedded in the land or any building or other improvement on the land or attached thereto by means of cement, plaster, nails, bolts or screws.

**e.** Mortgagee may file such extensions, renewals, amendments and releases as are appropriate to amend or maintain the status of its security interest.

**f.** Mortgagor shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Mortgagee may reasonably require.

**g.** Mortgagee shall have all rights and duties of a secured party under the Code. On any default hereunder, Mortgagee shall have the remedies of a secured party under the Code and may also invoke the remedies as provided in Section 7 below. In exercising any of these remedies, Mortgagee may proceed against the items of Real Property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Mortgagee's remedies under the Code or the remedies provided in Section 7 below.

4. **Absolute Assignment Of Leases And Rents**. Mortgagor hereby irrevocably, absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to all existing and future leases, subleases and licenses relating to the use, occupancy or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds and earnings now or hereafter payable with respect to the ownership, use or occupancy of the Property (collectively the "**Rents**"):

**a.** Mortgagor hereby gives to, and confers upon, Mortgagee the right, power and authority, during the continuance of this Unison Unison HomeOwner Security Instrument, to collect the Rents, reserving unto Mortgagor the right, prior to any default by Mortgagor in payment of the

Draft

Obligations secured hereby or in performance of any agreement hereunder, to collect and retain such Rents, as they become due and payable.

**b.** Upon any such default, Mortgagee may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations secured hereby, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Attorneys' Fees to the Obligations secured hereby, and in such order as Mortgagee may determine.

**c.** The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application of such rents, issues and profits pursuant to this Unison Unison HomeOwner Security Instrument, shall not cure or waive any default or notice of default under this Unison Unison HomeOwner Security Instrument or invalidate any act done pursuant to such notice.

**d.** Nothing in this section shall permit Mortgagor to lease or rent the Property in contravention of any provision of the Unison Unison HomeOwner Agreement; nor shall anything in this section modify any provision in the Unison Unison HomeOwner Agreement relating to the use, lease or occupancy of the Property.

Draft

5. **<u>Covenants of Mortgagor Regarding the Property</u>**. Mortgagor hereby agrees as follows:

**a.** To appear in and defend any action or proceeding purporting to affect the security of this Unison Unison HomeOwner Security Instrument or the rights or powers of Mortgagee; and to pay all costs and expenses of Mortgagee (including cost of evidence of title and Attorneys' Fees) incurred: **(i)** in any state, federal, appellate, or bankruptcy court, in any action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Unison Unison HomeOwner Security Instrument or to collect the Obligations or to protect Mortgagee's rights under this Unison Unison HomeOwner Security Instrument; and/or **(ii)** in connection with the enforcement of any provisions of this Unison Unison HomeOwner Security Instrument (including in connection with foreclosure upon the collateral granted under this Unison Unison HomeOwner Security Instrument whether or not suit is filed).

**b**. To pay before delinquent all taxes and assessments affecting the Property; and all encumbrances, charges and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Unison Unison HomeOwner Security Instrument, and all costs, fees and expenses of this Unison Unison HomeOwner Security Instrument.

**(i)** If Mortgagor fails to make any payment or to do any act as provided in this Unison Unison HomeOwner Security Instrument, Mortgagee may (but shall not be obligated to) make the payment or do the act in the required manner and to the extent deemed necessary by Mortgagee to protect the security for this Unison Unison HomeOwner Security Instrument, which payments and related expenses (including Attorneys' Fees) shall also be secured by this Unison Unison HomeOwner Security Instrument.

**(ii)** Such performance by Mortgagee shall not require notice to, or demand on, Mortgagor and shall not release Mortgagor from any obligation under this Unison Unison HomeOwner Security Instrument.

**(iii)** Mortgagee shall have the following related rights and powers: **(A)** to enter upon the Property for the foregoing purposes, **(B)** to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Mortgagee under this Unison Unison HomeOwner Security Instrument, **(C)** to pay, purchase, contest or compromise any encumbrance, charge, or lien that in the judgment of Mortgagee appears to be prior or superior to this Unison Unison

HomeOwner Security Instrument, and **(D)** to employ counsel, and to pay such counsel necessary expenses and costs, including Attorneys' Fees.

**c.** To pay immediately upon demand all sums expended by Mortgagee pursuant to this Unison Unison HomeOwner Security Instrument; and to pay interest on any of the foregoing amounts demanded by Mortgagee at a rate not to exceed the maximum rate allowed at the time of such demand.

6. **Power of Attorney**. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact (such agency being coupled with an interest), and as such attorney-in-fact Mortgagee may, after providing notice to Mortgagor pursuant to the Unison Unison HomeOwner Agreement, without the obligation to do so, in Mortgagee's name, or in the name of Mortgagor, prepare, execute and file or record financing statements, continuation statements, applications for registration and like documents necessary to create, perfect or preserve any of Mortgagee's security interests and rights in or to any of the Property, and, upon a default under this Unison Unison HomeOwner Security Instrument, take any other action required of Mortgagor; provided, however, that Mortgagee as such attorney-in-fact shall be accountable only for such funds as are actually received by Mortgagee.

7. **Default and F eclosure**. Upon default by Mortgagor in the performance of or upon breach by Mortgagor of any he hts and obligations that are secured by this Security Instrument as specified above, Mortgag may de re all performance and obligations secured by this Security Instrument immediately e by delivery o Mortgagor of a written declaration of default. If any default shall have occurred a is continuing on e part of the Mortgagor, the Mortgagee may take any or all of the following actio at the same or at d erent times:

**a**. Possessi Mortga ee may enter upon and take possession of the Property; lease and let the Property; an eive all th income, issues and profits thereof which are overdue, due or to become due; and apply the sam after payment of all necessary charges and expenses, on account of the Obligations hereby secured. M gagee is given and granted full power and authority to do any act or thing which the Mortgagor or succes ors or assignees of t Mortgagor who may then own the Property might or could do in connection with the own ip use an maintenance of the Property. This covenant becomes effective either with or without any ction b ught foreclose this Security Instrument and without applying for a receiver of such rents, f any. Sho said r t r an part thereof be assigned without the consent of the holder of this Security Instr ent, then Security Instrument shall at the option of the holder hereof become due and payable mmediat , anythi g rein contained to the contrary notwithstanding.

Draft

**b**. Appointment of Receiver. Mortgagee m have a receiver of the rents, income, issues and profits of the Property appointed without the necessit f proving either the depreciation or the inadequacy of the value of the security or the insolvency of the M rtgagor or any other person who may be legally or equitably liable for the Obligations secured hereby, and the Mortgagor and each such person waive such proof and consent to the appointment of a receiver.

**c**. Fair Rental Payments. If Mortgagor or any subsequent owner is occupying the Property or any part thereof, it is hereby agreed that the said occupants shall pay such reasonable rental monthly in advance as Mortgagee shall demand for the Property or the part so occupied, and for the use of personal property covered by this Security Instrument or any chattel mortgage.

**d.** Acceleration; Remedies. Mortgagee shall give notice to Mortgagor following Mortgagor's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Mortgagor, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the Obligations secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Mortgagor's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Mortgagor to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or

other applicable law. If the default is not cured on or before the date specified in the notice, Mortgagee at its option may require immediate peformance in full of all Obligations secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Mortgagee shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**e.** Remedies at Law or Equity. Mortgagee may take any of the remedies otherwise available to it as a matter of law or equity.

8. **Liquidated Damages**. Liquidated Damages means an amount equal to the sum of:

**a.** the Investor Interest, as calculated according to the Covenant Agreement;

**b.** if Owner failed to make one or more monetary payments, the sum of all monetary obligations (including, without limitation, all Unpaid Owner Obligations) owed to Investor by Owner under the Agreement; and

**c.** any d all amounts, properly chargeable to Owner needed to satisfy Owner's obligations under the Agreem t w respect to Owner's mortgage, tax and insurance obligations on the Property, including late fee einstatem t fees and other penalties.

9. **Lat Performance**. B accepting performance of any Obligation after its due date, Mortgagee does no waive its right eithe o require prompt performance when due of all other Obligations or to declare default f such failure to form.

10. **Mortgage owers**. A ime or from time to time, without liability therefor and without notice, upon written request of Mortgag r and presentation of this Unison Unison HomeOwner Security Instrument, and without aff ing the personal liability of any person for the performance of the Unison Unison HomeOwner Agre ment secured hereb Mortgagee may: **(a)** release any part of the Property; **(b)** consent to the making of any m r plat of he Property; **(c)** join in granting any easement thereon; and **(d)** join in any extension agree ent or y ag ement sub rdinating the lien or charge of this Unison Unison HomeOwner Security Instrum nt.

11. **Defeasance.** If Mortgagor shall ll and tr satisfy al Obligations secured hereby at the time and in the manner provided in this Unison Unis HomeOw Security Instrument and in the Unison Unison HomeOwner Agreement, and Mortgag shall well nd truly abide by and comply with each and every covenant and condition set forth in this Unison U ison HomeOwner Security Instrument and in the Unison Unison HomeOwner Agreement, then thes resents and the lien and interest hereby transferred and assigned shall cease, terminate and be void. ortgagee shall release the Property and renounce any other rights granted to it herein and shall execute, at the request of the Mortgagor, a release of this Unison Unison HomeOwner Security Instrument and any other instrument to that effect deemed necessary or desirable, upon performance being made on the Obligations secured hereby. Mortgagor shall pay any recordation costs. Mortgagee may charge Mortgagor a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

12. **Subordination**. This Unison Unison HomeOwner Security Instrument is subordinate to and junior to that certain Unison Unison HomeOwner Recorded Memorandum which affects the Property and is executed by Mortgagor as "**Owner**" as of the same date as this Unison Unison HomeOwner Security Instrument. Upon any foreclosure of this Unison Unison HomeOwner Security Instrument by Mortgagee, despite such foreclosure, the Unison Unison HomeOwner Recorded Memorandum will remain in full force and effect (until released pursuant to its terms) and binding upon any person who now or hereafter obtains an interest in the Property; and the Unison Unison HomeOwner Agreement will remain in full force and effect and binding upon Mortgagor, and any other person who may agree to be bound by such documents.

Draft

13. **Successors.** This Unison Unison HomeOwner Security Instrument applies to, inures to the benefit of, and binds all parties to this Unison Unison HomeOwner Security Instrument, their heirs, legatees, devisees, administrators, executors, successors, and assignees. The term "**Mortgagee**" shall include any successor or assignee of Mortgagee's rights in the Unison Unison HomeOwner Agreement and in this Unison Unison HomeOwner Security Instrument, whether or not named as Mortgagee in this Unison Unison HomeOwner Security Instrument. In this Unison Unison HomeOwner Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

14. **Joint and Several Liability.** If more than one person signs this Unison Unison HomeOwner Security Instrument as Mortgagor, the obligations of each signatory shall be joint and several.

15. **Multiple Owners**. If there are multiple Mortgagors of the Property:

**a**. this Unison Unison HomeOwner Security Instrument must be signed by each such Mortgagor;

**b**. all rights and powers specified for Mortgagor in this Unison Unison HomeOwner Security Instrument must be approved and exercised unanimously by all such multiple Mortgagors;

**c**. all such multiple Mortgagors shall be jointly and severally liable for all liabilities and obligations specified for Mortgagor under this Unison Unison HomeOwner Security Instrument;

**d**. notice required to be given by, or to, Mortgagor will be deemed adequately given if given by, or to, any of Mortgagors using the contact information set forth in this Unison Unison HomeOwner Security Instrument; and

**e**. Mortgagee may treat any notice received from any one Mortgagor as notice from all Mortgagors.

16. **Revocable Trust.** If all or any portion of the Property is held in a **Revocable Trust** (as defined in Schedule A to the Unison Unison HomeOwner Covenant Agreement):

**a**. all trustees of the Revocable Trust must sign this Unison Unison HomeOwner Security Instrument as Mortgagor in their capacities as trustees of the Revocable Trust, and each trustee of the Revocable Trust who signs this Unison Unison HomeOwner Security Instrument hereby represents and warrants that all trustees of the Revocable Trust have been disclosed to Mortgagee;

**b**. all rights and powers specified for, and all actions required of, Mortgagor in this Unison Unison HomeOwner Security Instrument must be approved and exercised unanimously by all trustees of the Revocable Trust;

**c**. all trustees of the Revocable Trust, in their capacities as trustees, shall be jointly and severally liable with any non-trustee Mortgagor for all liabilities and obligations specified for Mortgagor under this Unison Unison HomeOwner Security Instrument;

**d**. all representations and warranties by Mortgagor in this Unison Unison HomeOwner Security Instrument are made by all trustees of the Revocable Trust on behalf of the Revocable Trust;

**e**. notice required to be given by, or to, any Mortgagor will be deemed adequately given if given by, or to, any of the trustees of the Revocable Trust using the contact information set forth in this Unison Unison HomeOwner Security Instrument; and

Draft

Owner's Initials: _____/_____/_____/____

**f**. Mortgagee may treat any notice received from any one trustee of the Revocable Trust as notice from all trustees of the Revocable Trust and from Mortgagor.

17. **Incorporation by Reference. Schedule A** to this Unison Unison HomeOwner Security Instrument is hereby incorporated by this reference.

18. **No Merger**. So long as any of the obligations under the Unison Unison HomeOwner Agreement remains outstanding and undischarged, unless Mortgagee otherwise consents in writing, the fee estate of Mortgagor in the Property or any part thereof (including the estate of Mortgagee after exercising the Unison Unison HomeOwner Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Mortgagee or in any other Person.

19. **No Claim of Credit for Taxes**. Mortgagor will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Mortgagor will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

[*Signatures appear on the following page.*]

Draft

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH MORTGAGEE, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON UNISON HOMEOWNER SECURITY INSTRUMENT, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND MORTGAGEE AS OF THE EFFECTIVE DATE.

**MORTGAGOR HEREBY DECLARES THAT MORTGAGOR HAS READ THIS Unison Unison HomeOwner SECURITY INSTRUMENT, HAS RECEIVED A COMPLETELY FILLED IN COPY OF IT WITHOUT CHARGE THEREFOR AND HAS SIGNED THIS Unison Unison HomeOwner SECURITY INSTRUMENT AS OF THE EFFECTIVE DATE.**

IN WITNESS WHEREOF, each undersigned Mortgagor has executed this Unison Unison HomeOwner Security Instrument under seal as of the date set forth above.

**MORTGAGEE**

Unison Agreement Corp
a Delaware corporatio
650 California St Su 1800, San Francisc CA 94108

Sign: _______________ _________ D e: ___________
Name: Justin Tanimoto
Title: Authorized Signatory

Draft

**MORTGAGEE ACKNOWLEDGEMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of California
County of San Francisco

On _________________ before me, ___________________________, a notary public personally appeared Justin Tanimoto who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and officia eal.

__________________________________

[*Mortga Signature(s) on the following page*]

Draft

**<u>MORTGAGOR</u>**

Mortgagor Address: 229 Palisade Rd, Linden, NJ 07036

Sign: ________________________________________
Luis Meneses

Date: ________________________________________

Draft

**MORTGAGOR ACKNOWLEDGMENT**

Individual Notary Acknowledgment

Pursuant to NJS 46:14-2.1

**STATE OF: NEW JERSEY**

**COUNTY OF: ___________________**

I CERTIFY that on this _________ day of __________________, 20_____ by _____________________________________________________, personally came before me and acknowledged under oath, to my satisfaction that this person (or if more than one, each person):

(a) Is named in and personally signed this document,

(b) Signed, Sealed and Delivered this document as his or her act and deed.

___________________________

Notary Public (Seal)

Draft

## SCHEDULE A

### LEGAL DESCRIPTION

That certain real property situated in the City of Linden, County of Union, State of NJ, described as follows:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Linden, in the County of Union, State of New Jersey.

Beginning at an iron bar in the southeasterly line of Palisade Road (50' R.O.W.), said point being distant southwesterly 260.00' from the intersection of the southwesterly line of Summit Terrace (60' R.O.W.) with the southeasterly line of Palisade Road and thence,

1. S. 51 degrees 00 minutes 00 seconds E. 100.00' to a point and thence,

2. S. 39 degrees 00 minutes 00 seconds W 80.00' to a point and thence,

3. N. 51 degrees 00 minutes 00 co ds W. 100.00' to an iron bar in the southeasterly line of Palisade Road and thence,

4. Along the same, N degrees 00 minu s 00 seconds E. 80.00' to the point or place of beginning.

The above described nds are known a Lot 11 in Block 301 as shown on the current Official Tax Maps of the City of Linden.

Premises more commonly known as 229 lisade oad.

The above description is in accorda e with a survey pr ared by Brunswick West, Inc. dated 9/19/2019 as File No. 19.2224.

Parcel Identification Number: 09 00301-000 00011

[*end of leg descripti* ]

Draft

Prepared by, recording requested by,
and when recorded mail to:

Justin Tanimoto
Unison Agreement Corp.
650 California St, Suite 1800
San Francisco, CA 94108

File Number: FRX-436170
Consideration Amount: $78,575

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Assignment of Unison HomeOwner Agreement**

Draft

**Unison Agreement Corp.**, a Delaware corporation, whose address is 650 California Street, Suite 1800, San Francisco, CA 94108, as "**Assignor**," hereby assigns for good and valuable consideration to **Unison Midgard Holdings LLC**, a Delaware limited liability company, whose address is 650 California St, Suite 1800, San Francisco, CA 94108, as "**Assignee**," all of Assignor's rights, title, i  erests and obligations to and under: **(i)** that certain Unison HomeOwner Option Agreement of even date herewit  ma  by and between Assignor and LUIS MENESES. A SINGLE MAN, whose address is 229 Palisade Rd, Li  en, NJ 0  36, (individually or collectively, the "Homeowner"); **(ii)** that certain Unison HomeOwner Covenant A  ement of eve  date herewith made by and between Assignor and Homeowner; **(iii)** that certain Memorandum  nison HomeOwn  Agreement made by and between Assignor and Homeowner and recorded prior hereto but  the same date as  his Assignment of Unison HomeOwner Agreement; and **(iv)** that certain Unison HomeOwner M rtgage and Sec  y Instrument made by Homeowner as "**Mortgagor**" in favor of Assignor as "**Mortgagee**" and rec  ded prior h  eto but on the same date as this Assignment of Unison HomeOwner Agreement; which relate to, run with  umber th  eal property described in **Exhibit A** ("**Property**").

IN WITNESS WHEREOF the undersigned As  gnor has exec  d this instrument as of July 7, 2022.

n  n Agree  ent Corp., a Delaware corporation

y: ____________________________________

Name  Justi  Tanimot
Title: A  horized Si  a  ry

650 Cali  rnia Street, Suite 1800
San F  cisco, CA 94108

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

On______________________, before me the undersigned Notary Public, personally appeared Justin Tanimoto who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official s .

Signature

______________________________________

(seal)

Draft

File Number: FRX-436170

**EXHIBIT A**

**LEGAL DESCRIPTION**

That certain real property situated in the City of Linden, County of Union, State of New Jersey, described as follows:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Linden, in the County of Union, State of New Jersey.

Beginning at an iron bar in the southeasterly line of Palisade Road (50' R.O.W.), said point being distant southwesterly 260.00' from the intersection of the southwesterly line of Summit Terrace (60' R.O.W.) with the southeasterly line of Palisade Road and thence,

1. S. 51 degrees 00 minutes 00 seconds E. 100.00' to a point and thence,

2. S. 39 degrees 00 minutes 00 seconds W  0 00' to a point and thence,

3. N. 51 degrees 00 minutes 00 secon  W. 100.0  to an iron bar in the southeasterly line of Palisade Road and thence,

4. Along the same, N. 39 degre  00 minutes 00 se  nds E. 80.00' to the point or place of beginning.

The above described lands are  nown as Lot 11  Block 301 as shown on the current Official Tax Maps of the City of Linden.

Premises more commonly known as 229 Palisade  ad.

The above description is in accordance with  survey prepared by Brunswick West, Inc. dated 9/19/2019 as File No. 19.2224.

Tax ID/PIN/APN/Parcel Number : 09 00301-0000-00011

Property is commonly known as: 229 Palisade Rd, Linden, NJ 070

[End of Legal Description]

Draft

**Prepared by,**
**recording requested by, and**
**when recorded mail to:**

Justin Tanimoto
Unison Agreement Corp.
650 California St, Suite 1800
San Francisco, CA 94108

File Number: FRX-436170
Consideration Amount: $78,575

**SBL #:** 09 00301-0000-00011

**Assignment of Memorandum of Unison HomeOwner Agreement**

**Unison Agreement Corp.**, a Delaware cor ration whose address is 650 California Street, Suite 1800, San Francisco, CA 94108, as "**Assignor,**" hereby assig for od and valuable consideration to **Unison Midgard Holdings LLC**, a Delaware limited liability company hose add s is 650 California St, Suite 1800, San Francisco, CA 94108, as "**Assignee**," all of Assignor's righ title, interests nd obligations to and under that certain Memorandum of Unison HomeOwner Agreement made and between As nor and LUIS MENESES. A SINGLE MAN, WHOSE address is: 229 Palisade Rd, Linden J 07036 (individua or collectively, the "**Homeowner**"), and recorded prior hereto but on the same date as thi Assignment of M morandum of Unison HomeOwner Agreement; which relate to, run with and encumber the real proper described **Exhibit A** ("**Property**").

IN WITNESS WHEREOF the undersigned Assign has exe uted this instrument as of July 7, 2022.

**Unison Agr ment Corp.**, a Delaware corporation

is Agreem t Corp.
50 Calif ia treet Suit 0
S n Franci , CA 94

By: ______________________________

Name: Justin Tan moto

Title: Auth zed Signatory

Draft

ACKNOWLEDGMENT

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

On______________________, before me the undersigned Notary Public, personally appeared Justin Tanimoto who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official s[illegible].

Signature

______________________________________

(seal)

Draft

File Number: FRX-436170

## EXHIBIT A

## LEGAL DESCRIPTION

That certain real property situated in the City of Linden, County of Union, State of New Jersey, described as follows:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Linden, in the County of Union, State of New Jersey.

Beginning at an iron bar in the southeasterly line of Palisade Road (50' R.O.W.), said point being distant southwesterly 260.00' from the intersection of the southwesterly line of Summit Terrace (60' R.O.W.) with the southeasterly line of Palisade Road and thence,

1. S. 51 degrees 00 minutes 00 seconds E 0.00' to a point and thence,

2. S. 39 degrees 00 minutes 00 secon W 80.00 a point and thence,

3. N. 51 degrees 00 minutes 0 seconds W. 100. ' to an iron bar in the southeasterly line of Palisade Road and thence,

4. Along the same, N. 39 degrees 0 minutes second E. 80.00' to the point or place of beginning.

The above described lands are known as Lot 11 i lock 3 1 as shown on the current Official Tax Maps of the City of Linden.

Premises more commonly known as 229 Palisade Road

The above description is in accordance with a survey repared by unsw k est, c. dated 9/19/2019 as File No. 19.2224.

TaxID/PIN/APN/Parcel Number: 09 00301-0000-00011

Property is commonly known as: 229 Palisade Rd, Linden, NJ 07036

[end of legal description]

Draft

**Prepared by,**
**recording requested by, and**
**when recorded mail to:**

Justin Tanimoto
Unison Agreement Corp.
P.O. Box 2389
San Francisco, CA 94126

File Number: FRX-436170
Consideration Amount: $78,575

**SBL #:** 09 00301-0000-00011

**Assignment of Unison HomeOwner Mortgage and Security Instrument**

**Unison Agreement Corp.**, a Delaware cor oration, as "**Assignor**," whose address is 650 California St, Suite 1800, San Francisco, CA 94108, hereby assign o ood and valuable consideration to **Unison Midgard Holdings LLC**, a Delaware limited liability company, a **Assigne** " whose address is 650 California St, Suite 1800, San Francisco, CA 94108, all of Assignor's rights, titl nterests and ligations to and under that certain Unison HomeOwner Mortgage and Security Instrument made b UIS MENESES A SINGLE MAN, whose address is 229 Palisade Rd, Linden, NJ 07036 (individually or collect ly, the "**Mortgago** ), in favor of Assignor as "Mortgagee" and recorded prior hereto but on the same date as th Assignment of As gnment of Unison HomeOwner Mortgage and Security Instrument; To secure payment of indebted ss in the a unt of $78,575; which relate to, run with and encumber the real property described in **<u>Exhibit A</u>** ("**P**

IN WITNESS WHEREOF the undersigned Assi or has executed this instrument as of <u>July 7, 2022</u>.

**Unison Agreement Co p.**, a Delaware corporation

Unison greemen Cor
650 Cali rnia Street uite 18 0
San Francisc C 4108

By: ______________________________
Name: Justin T nimoto
Title: Authorized Sig tory

Draft

ACKNOWLEDGMENT

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

On______________________, before me the undersigned Notary Public, personally appeared Justin Tanimoto who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

_______________________________________

(seal)

Draft

File Number: FRX-436170

**<u>EXHIBIT A</u>**

**LEGAL DESCRIPTION**

That certain real property situated in the City of Linden, County of Union, State of New Jersey, described as follows:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Linden, in the County of Union, State of New Jersey.

Beginning at an iron bar in the southeasterly line of Palisade Road (50' R.O.W.), said point being distant southwesterly 260.00' from the intersection of the southwesterly line of Summit Terrace (60' R.O.W.) with the southeasterly line of Palisade Road and thence,

1. S. 51 degrees 00 minutes 00 seconds E. 100.00' to a point and thence,

2. S. 39 degrees 00 minutes 00 seconds W 80 0' to a point and thence,

3. N. 51 degrees 00 minutes 00 onds W. 100 0' to an iron bar in the southeasterly line of Palisade Road and thence,

4. Along the same, N. 39 degr s 00 minutes 00 conds E. 80.00' to the point or place of beginning.

The above described lands are know 11 in Bl k 301 as shown on the current Official Tax Maps of the City of Linden.

Premises more commonly known as 229 Pal ade Road.

The above description is in accordance with a survey epar d by Br swick West, Inc. dated 9/19/2019 as File No. 19.2224.

Tax ID/PIN/APN/Parcel Number: 09 00301-0000-00011

Property is commonly known as: 229 Palisade Rd, Linden, NJ 07036

[End of Legal Description]

Draft

unison

# CANCELLATION NOTICE

Homeowner(s): Luis Meneses
Property Address: 229 Palisade Rd, Linden, NJ 07036
Unison ID Number: FRX-436170
Agreement Documents Provided: July 7, 2022

You are entering into a **Unison HomeOwner Agreement**, which will result in a lien and security interest on your home. You may cancel this transaction by notifying us in writing by the Cancellation Deadline below, **which is 3 business days from the day you receive your Agreement documents**, following the instructions in this Notice.

**CANCELLATION DEADLINE:** This Cancellation Notice must be *delivered* not later than 11:59 p.m Pacific time on

___July 11, 2022___.

**HOW TO CANCEL:** To be effective, cancellation must be in writing and signed by you on this Cancellation Notice form. The form must be actually delivered at the fax number or email address below by the Cancellation Deadline.

Time is of the essence. Telephonic and other attempted cancellations, cancellations attempted not using this Cancellation Notice form, or cancellations that are delivered after the Cancellation Deadline will not be honored.

**BY FAX: (800) 775-8701**
**Attn: Acquisitions Department**

**BY EMAIL:**
justin.tanimoto@unisonim.com

**SIGN ONLY IF YOU ELECT TO CANCEL**

**I WISH TO CANCEL**

Sign: ______________________________________
Luis Meneses

Date: ______________________________________

**I/WE ACKNOWLEDGE RECEIPT OF CANCELLATION NOTICE**

Sign: ______________________________________
Luis Meneses

Date: ______________________________________

© 2021, **Unison**